# EX. 1

# SECOND ORIGINAL

(4)

THE BALTIC AND INTERNATIONAL MARITIME COUNCIL (BIMCO)
STANDARD BAREBOAT CHARTER
CODE NAME: "BARECON 89"

PART I

| | |
|---|---|
| 1. Shipbroker<br>Simpson Spence & Young<br>Shipbrokers Ltd. London | 2. Place and date<br>London 18/12/97 |
| 3. Owners/Place of business<br>Pillsburg Navigation S.A. Panama<br>c/o Ocean Trade S.A. of Panama<br>Omega Building<br>80 Kifissias Ave, GR-151 25<br>Amarousion,<br>GREECE | 4. Bareboat charterers (Charterers)/Place of business<br>Ocean Reyna Shipholding S.A., of Panama<br>c/o Interpacific Lines Co. Ltd<br>6th Floor, Toranomon, 33 Mori Building<br>3-8-21, Toranomon, Minato-Ku<br>Tokyo<br>JAPAN |
| 5. Vessel's name, Call Sign and Flag (Cl. 9(c))<br>M.V. "OCEAN REYNA" | |
| 6. Type of Vessel<br>MULTI-PURPOSE | 7. GRT/NRT<br>5484 / 2135 |
| 8. When/Where built<br>11/1990 Hakata Shipyard, Japan | 9. Total DWT (abt.) in metric tons on summer freeboard<br>7,033.88 |
| 10. Class (Cl. 9)<br>B.V. | 11. Date of last special survey by the Vessel's classification society<br>17th November 1995 |
| 12. Further particulars of Vessel (also indicate minimum number of months' validity of class certificates agreed acc. to Cl. 14)<br>Draft, Loaded 7.495 MTRS. / LOA: 97.95 MTRS.<br>Beam: 18.20 MTRS.<br>2 Holds / 2 Hatches<br>453,800.95 / 411,085.31 CBFT Grain / Bale | |
| 13. Port or Place of delivery (Cl. 2)<br>Safe Berth or anchorage at safe port Singapore / Japan range 'Back to Back' with delivery of the vessel to owners under Memorandum of Agreement 4th December 1997. | 14. Time for delivery (Cl. 3)<br>6-30th January 1998<br>15. Cancelling date (Cl. 4)<br>30/1/1998<br>16. Port or Place of redelivery (Cl. 14)<br>Safe port, Singapore/Japan range, including China, South Korea, USEC, VSWC, Caribs, Vsg, Red Sea passing Muscat outbound, UK/Cont, (Skaw-Gibralter range) full Mediterranean excluding Black Sea, port in Charterers option. |
| 17. Running days' notice if other than stated in Cl. 3<br>N/A | 18. Frequency of dry-docking if other than stated in Cl. 9(f)<br>30 Months<br>(See clause 9 (F)) |
| 19. Trading Limits (Cl. 5)<br>Within institute warranty limits, (Charterers' option to break same, paying extra insurance), excluding Israel, North Korea, Angola, war or war-like zones. | |
| 20. Charter period<br>Eight (8) Years | 21. Charter hire (Cl. 10)<br>USD 2,500 per day or pro rata from delivery for first six (6) Years. Rate for years 7 and 8 see clause 29. |
| 22. Rate of interest payable acc. to Cl. 10(f) and, if applicable, acc. to PART IV<br>N/A | 23. Currency and method of payment (Cl. 10)<br>N/A |

"BARGECON 89" Standard Bareboat Charter — PART I

| | |
|---|---|
| 24. Place of payment; also state beneficiary and bank account (Cl. 10)<br>To be advised by Owners. | 25. Bank guarantee/bond (sum and place) (Cl. 22) (optional)<br>The charterers will pay during February 1998 the amount of USD 129,500 to owners, and to be released back to the charterers in three equal amounts, at the end of the first, second and third year. |
| 26. Mortgage(s), if any, (state whether Cl. 11(a) or (b) applies; if 11(b) applies state date of Deed(s) of Covenant and name of Mortgagee(s)/Place of business) (Cl. 11)<br>11.B. applies. Copy of Mortgage to be attached. Mortgagees to be advised. | 27. Insurance (marine and war risks) (state value acc. to Cl. 12(f) or, if applicable, acc. to Cl. 13(k)) (also state if Cl. 13 applies)<br>USD |
| 28. Additional insurance cover, if any, for Owners' account limited to (Cl. 12(b) or, if applicable, (Cl. 13(g)) | 29. Additional insurance cover, if any, for Charterers' account limited to (Cl. 12(b) or, if applicable, (Cl. 13(g))<br>USD 1,000,000 |
| 30. Latent defects (only to be filled in if period other than stated in Cl. 2) | 31. War cancellation (indicate countries agreed) (Cl. 24)<br>U.S.A., Japan, United Kingdom, France. |

Brokerage commission and to whom payable (Cl. 25)

5.0 Percent total.
1.25 Percent charterers' address.
1.25 Percent Simpson Spence & Young Shipbrokers Ltd
(Both commission deductable from the hire)
2.5 Percent to Ocean TradeS.A. of Panama

| | |
|---|---|
| 33. Law and arbitration (state 26.1., 26.2., or 26.3. of Cl. 26 as agreed; if 26.3. agreed, also state place of arbitration) (Cl. 26)<br>English Law / Arbitration London | 34. Number of additional clauses covering special provisions, if agreed<br>Three (3) |
| 35. Newbuilding Vessel (indicate with "yes" or "no" whether Part III applies) (optional) | 36. Name and place of Builders (only to be filled in if Part III applies) |
| 37. Vessel's Yard Building No. (only to be filled in if Part III applies) | 38. Date of Building Contract (only to be filled in if Part III applies) |
| 39. Hire Purchase agreement (indicate with "yes" or "no" whether Part IV applies) (optional) | 40. Bareboat Charter Registry (indicate with "yes" or "no" whether Part V applies) (optional) |
| 41. Flag and Country of the Bareboat Charter Registry (only to be filled in if Part V applies) | 42. Country of the Underlying Registry (only to be filled in if Part V applies) |

PREAMBLE — It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall include PART I and PART II. In the event of a conflict of conditions, the provisions of PART I shall prevail over those of PART II to the extent of such conflict but no further. It is further mutually agreed that PART III and/or PART IV and/or PART V shall only apply and shall only form part of this Charter if expressly agreed and stated in the Boxes 35, 39 and 40. If PART III and/or PART IV and/or PART V apply, it is further mutually agreed that in the event of a conflict of conditions, the provisions of PART I and PART II shall prevail over those of PART III and/or PART IV and/or PART V to the extent of such conflict but no further.

| | |
|---|---|
| Signature (Owners)<br>Owners, Pillsburg Navigation S.A. Panama<br>By: [signature] B. Zingas/Attorney-in-Fact | Signature (Charterers)<br>OCEAN REYNA SHIPHOLDING S.A., Panama<br>[signature]<br>SHOICHI NOGUCHI |

PART II
"BARECON 89" Standard Bareboat Charter

1. Definitions

In this Charter, the following terms shall have the meanings hereby assigned to them:

"The Owners" shall mean the person or company registered as Owners of the Vessel.

"The Charterers" shall mean the Bareboat charterers and shall not be construed to mean a time charterer or a voyage charterer.

2. Delivery (not applicable to newbuilding vessels)

~~The Vessel shall be delivered and taken over by the Charterers at the port or~~ place indicated in Box 13, in such ready berth as the Charterers may direct.

The Owners shall before and at the time of delivery exercise due diligence to make the Vessel seaworthy and in every respect ready in hull, machinery and equipment for service under this Charter. The Vessel shall be properly documented at time of delivery.

The delivery to the Charterers of the Vessel and the taking over of the Vessel by the Charterers shall constitute a full performance by the Owners of all the Owners' obligations under Clause 2, and thereafter the Charterers shall not be entitled to make or assert any claim against the Owners on account of any conditions, representations or warranties expressed or implied with respect to the Vessel but the Owners shall be responsible for repairs or renewals occasioned by latent defects in the Vessel, her machinery or appurtenances, existing at the time of delivery under the Charter, provided such defects have manifested themselves within 18 months after delivery unless otherwise ~~provided in Box 30~~.

Back to back with attached Memorandum of Agreement

3. Time for Delivery (not applicable to newbuilding vessels)

~~The Vessel to be delivered not before the date indicated in Box 16 unless with~~ the Charterers' consent.

Unless otherwise agreed in Box 17, the Owners to give the Charterers not less than 30 running days' preliminary and not less than 14 days' definite notice of the date on which the Vessel is expected to be ready for delivery.

The Owners to keep the Charterers closely advised of possible changes in the ~~Vessel's position~~.

As per attached Memorandum of Agreement.

4. Cancelling (not applicable to newbuilding vessels)

~~Should the Vessel not be delivered latest by the cancelling date indicated in~~ Box 15, the Charterers to have the option of cancelling this Charter without prejudice to any claim the Charterers may otherwise have on the Owners under the Charter.

If it appears that the Vessel will be delayed beyond the cancelling date, the Owners shall, as soon as they are in a position to state with reasonable certainty the day on which the Vessel should be ready, give notice thereof to the Charterers asking whether they will exercise their option of cancelling, and the option must then be declared within one hundred and sixty-eight (168) hours of the receipt by the Charterers of such notice. If the Charterers do not then exercise their option of cancelling, the seventh day after the readiness date stated in the Owners' notice shall be regarded as a new ~~cancelling date for the purpose of this Clause~~.

As per attached Memorandum of Agreement.

5. Trading Limits

The Vessel shall be employed in lawful trades for the carriage of suitable lawful merchandise within the trading limits indicated in Box 19.

The Charterers undertake not to employ the Vessel or suffer the Vessel to be employed otherwise than in conformity with the terms of the instruments of insurance (including any warranties expressed or implied therein) without first obtaining the consent to such employment of the insurers and complying with such requirements as to extra premium or otherwise as the insurers may prescribe. If required, the Charterers shall keep the Owners and the Mortgagees advised of the intended employment of the Vessel.

The Charterers also undertake not to employ the Vessel or suffer her employment in any trade or business which is forbidden by the law of any country to which the Vessel may sail or is otherwise illicit or in carrying illicit or prohibited goods or in any manner whatsoever which may render her liable to condemnation, destruction, seizure or confiscation.

Notwithstanding any other provisions contained in this Charter it is agreed that nuclear fuels or radioactive products or waste are specifically excluded from the cargo permitted to be loaded or carried under this Charter. This exclusion does not apply to radio-isotopes used or intended to be used for any industrial, commercial, agricultural, medical or scientific purposes provided the Owners' prior approval has been obtained to loading thereof.

6. Surveys (not applicable to newbuilding vessels)

Survey on Delivery and Redelivery. – The Owners and Charterers shall [appoint a joint/independent surveyor] for the purpose of determining and agreeing in writing the condition of the Vessel at the time of delivery and redelivery hereunder. The Owners shall bear all expenses of the On-Survey including loss of time, if any, and the Charterers shall bear all expenses of the Off-Survey including loss of time, if any, at the rate of hire per day or pro rata, also including in each case the cost of any docking and undocking, if required, in connection herewith.

7. Inspection

Inspection. – The Owners shall have the right at any time to inspect or survey the Vessel [but without interferring with the vessel's operation] or instruct a duly authorised surveyor to carry out such survey on their behalf to ascertain the condition of the Vessel and satisfy themselves that the Vessel is being properly repaired and maintained. Inspection or survey in dry-dock shall be made only when the Vessel shall be in dry-dock for the Charterers' purpose. However, the Owners shall have the right to require the Vessel to be dry-docked for inspection if the Charterers are not docking her at normal classification intervals. The fees for such inspection or survey shall in the event of the Vessel being found to be in the condition provided in Clause 9 of this Charter be payable by the Owners and shall be paid by the Charterers only in the event of the Vessel being found to require repairs or maintenance in order to achieve the condition so provided. All time taken in respect of inspection, survey or repairs shall count as time on hire and shall form part of the Charter period.

The Charterers shall also permit the Owners to inspect the Vessel's log books whenever requested and shall whenever required by the Owners furnish them with full information regarding any casualties or other accidents or damage to the Vessel. For the purpose of this Clause, the Charterers shall keep the Owners advised of the intended employment of the Vessel.

The Owners have the right to place a riding inspector at all times onboard with full access to technical and commercial information

It is agreed that the vessel shall be maintained to the on-hire survey standards fair wear and tear excepted.

In case there is a dispute as to whether the vessel is in the condition provided in Clause 9, then the opinion of an U.K. Class Surveyor shall be conclusive.

8. Inventories and Consumable Oil and Stores

A complete inventory of the Vessel's entire equipment, outfit, appliances and of all consumable stores on board the Vessel shall be made by the Charterers in conjunction with the Owners on delivery and again on redelivery of the Vessel. The Charterers and the Owners, respectively, shall at the time of delivery and redelivery take over and pay for all [unused lubricating oils in tanks and unbroached lubricating oils in drums at the last supplied prices supported by vouchers. No payment will be made for bunkers remaining on board at the last supplied prices supported by vouchers] ~~[illegible]~~

9. Maintenance and Operation

(a) The Vessel shall during the Charter period be in the full possession and at the absolute disposal for all purposes of the Charterers and under their complete control in every respect. The Charterers shall maintain the Vessel, her machinery, boilers, appurtenances and spare parts in a good state of repair, in efficient operating condition and in accordance with good commercial maintenance practice and, except as provided for in Clause 13 (l), they shall keep the Vessel with unexpired classification of the class indicated in Box 10 and with other required certificates in force at all times.

The Charterers to take immediate steps to have the necessary repairs done within a reasonable time failing which the Owners shall have the right of withdrawing the Vessel from the service of the Charterers without noting any protest and without prejudice to any claim the Owners may otherwise have against the Charterers under the Charter.

Unless otherwise agreed, in the event of any improvement, structural changes or expensive new equipment becoming necessary for the continued operation of the Vessel by reason of new class requirements or by compulsory legislation costing more than 5 per cent. of the Vessel's marine insurance value as stated in Box 27, then the extent, if any, to which the rate of hire shall be varied and the ratio in which the cost of compliance shall be shared between the parties concerned in order to achieve a reasonable distribution thereof as between the Owners and the Charterers having regard, inter alia, to the length of the period remaining under the Charter, shall in the absence of agreement, be referred to arbitration according to Clause 26.

The Charterers are required to establish and maintain financial security or responsibility in respect of oil or other pollution damage as required by any government, including Federal, state or municipal or other division or authority thereof, to enable the Vessel, without penalty or charge, lawfully to enter, remain at, or leave any port, place, territorial or contiguous waters of any country, state or municipality in performance of this Charter without any delay. This obligation shall apply whether or not such requirements have been lawfully imposed by such government or division or authority thereof. The Charterers shall make and maintain all arrangements by bond or otherwise as may be necessary to satisfy such requirements at the Charterers' sole expense and the Charterers shall indemnify the Owners against all consequences whatsoever (including loss of time) for any failure or inability to do so.

TOVALOP SCHEME. (Applicable to oil tank vessels only). – The Charterers are required to enter the Vessel under the TOVALOP SCHEME or under any similar compulsory scheme upon delivery under this Charter and to maintain her so during the currency of this Charter.

(b) The Charterers shall at their own expense and by their own procurement man, victual, navigate, operate, supply, fuel and repair the Vessel whenever required during the Charter period and they shall pay all charges and expenses of every kind and nature whatsoever incidental to their use and operation of the Vessel under this Charter, including any foreign general municipality and/or state taxes. The Master, officers and crew of the Vessel shall be the servants of the Charterers for all purposes whatsoever, even if for any reason appointed by the Owners.

Charterers shall comply with the regulations regarding officers and crew in force in the country of the Vessel's flag or any other applicable law.

(c) During the currency of this Charter, the Vessel shall retain her present name as indicated in Box 5 and shall remain under and fly the flag as indicated in Box 5. Provided, however, that the Charterers shall have the liberty to paint the Vessel in their own colours, install and display their funnel insignia and fly their own house flag. Painting and re-painting, instalment and re-instalment to be for the Charterers' account and time used thereby to count as time on hire.

(d) The Charterers shall make no structural changes in the Vessel or changes in the machinery, boilers, appurtenances or spare parts thereof without in each instance first securing the Owners' approval thereof. If the Owners so agree, the Charterers shall, if the Owners so require, restore the Vessel to its former condition before the termination of the Charter.

(e) The Charterers shall have the use of all outfit, equipment, and appliances on board the Vessel at the time of delivery, provided the same or their substantial equivalent shall be returned to the Owners on redelivery in the same good order and condition as when received, ordinary wear and tear excepted. The Charterers shall from time to time during the Charter period replace such items of equipment as shall be so damaged or worn as to be unfit for use. The Charterers are to procure that all repairs to or replacement of any damaged, worn or lost parts or equipment be effected in such manner (both as regards workmanship and quality of materials) as not to diminish the value of the Vessel. The Charterers have the right to fit additional equipment at their expense and risk but the Charterers shall remove such equipment at the end of the period if requested by the Owners.

Any equipment including radio equipment on hire on the Vessel at time of delivery shall be kept and maintained by the Charterers and the Charterers shall assume the obligations and liabilities of the Owners under any lease contracts in connection therewith and shall reimburse the Owners for all expenses incurred in connection therewith, also for any new equipment required in order to comply with radio regulations.

(f) The Charterers shall dry-dock the Vessel and clean and paint her underwater parts whenever the same may be necessary. ~~[illegible]~~

10. Hire

(a) The Charterers shall pay to the Owners for the hire of the Vessel at the [rate times day] ~~[illegible]~~ per calendar month as indicated in Box 21 commencing on and from the date and hour of her delivery to the Charterers and at and after the ~~agreed~~ ~~[illegible]~~ for any part of a month. Hire to continue until the date and hour when the Vessel is redelivered by the Charterers to her Owners.

(b) Payment of Hire, except for the first and last month's Hire, if sub-clause (c) of this Clause is applicable, shall be made in cash without discount every month in advance on the first day of each month in the currency and in the manner indicated in Box 23 and at the place mentioned in Box 24.

...ayment of Hire for the first and last month's Hire if less than a full month ...ll be calculated proportionally according to the number of days in the ...rticular calendar month and advance payment to be effected accordingly.

Should the Vessel be lost or missing, Hire to cease from the date and time ...en she was lost or last heard of. Any Hire paid in advance to be adjusted ...cordingly.

Time shall be of the essence in relation to payment of Hire hereunder. In ...ault of payment beyond a period of seven running days, the Owners shall ...e the right to withdraw the Vessel from the service of the Charterers ...hout noting any protest and without interference by any court or any other ...mality whatsoever, and shall, without prejudice to any other claim the ...ners may otherwise have against the Charterers under the Charter, be ...tled to damages in respect of all costs and losses incurred as a result of ... Charterers' default and the ensuing withdrawal of the Vessel.

...ny delay in payment of Hire shall entitle the Owners to an interest at the ... per annum as agreed in Box 22. If Box 22 has not been filled in the current ...ket rate in the country where the Owners have their Principal Place of ...iness shall apply.

...tgage

~~...~~

~~The Vessel chartered under this Charter is financed by a mortgage~~ ...ording to the Deed(s) of Covenant annexed to this Charter and as stated in ... 26. By their counter-signature on the Deed(s) of Covenant, the ...rterers undertake to have acquainted themselves with all terms, ...itions and provisions of the said Deed(s) of Covenant. The Charterers ...ndertake that they will comply with all such instructions or directions in ...rd to the employment, insurances, repairs and maintenance of the ...el, etc., as laid down in the Deed(s) of Covenant or as may be directed ...m time to time during the currency of the Charter by the Mortgagee(s) in ...formity with the Deed(s) of Covenant.

~~...~~

~~...~~

~~...~~

*Clauses 11 (a) and 11 (b) are alternatives; indicate alternative agreed ...*

*See opposite page

...d Repairs

...uring the Charter period the Vessel shall be kept insured by the ...erers at their expense against marine, war and Protection and Indemnity ...n such form as the Owners shall in writing approve, which approval shall not be unreasonably withheld. Such marine, war and P. and I. ...nces shall be arranged by the Charterers to protect the interests of both ...wners and the Charterers and mortgagees (if any), and the Charterers ...be at liberty to protect under such insurances the interests of any ...ers they may appoint. All insurance policies shall be in the joint names ... Owners and the Charterers as their interests may appear.

...Charterers fail to arrange and keep any of the the insurances provided ...der the provisions of sub-clause (a) above in the manner described ...n, the Owners shall notify the Charterers whereupon the Charterers ...ectify the position within seven running days, failing which Owners ...ave the right to withdraw the Vessel from the service of the Charterers ... prejudice to any claim the Owners may otherwise have against the ...rers.

...harterers shall, subject to the approval of the Owners and the ...writers, effect all insured repairs and shall undertake settlement of all ...n connection with such repairs as well as insured charges, expenses ...bilities (reimbursement to be secured by the Charterers from the ...writers) to the extent of coverage under the insurances herein provided ...

...harterers also to remain responsible for and to effect repairs and ...ent of costs and expenses incurred thereby in respect of all other ... not covered by the insurances and/or not exceeding any possible ...se(s) or deductibles provided for in the insurances.

... used for repairs under the provisions of sub-clause (a) of this Clause ... repairs of latent defects according to Clause 2 above including any ... all count as time on hire and shall form part of the Charter period.

...itions of the above insurances permit additional insurance to be ... parties, such cover shall be limited to the amount for each party ... 26 and Box 29, respectively. The Owners or the Charterers as ... be shall immediately furnish the other party with particulars of ...onal insurance effected, including copies of any cover notes or ...nd the written consent of the insurers of any such required ...e in any case where the consent of such insurers is necessary.

...uld the Vessel become an actual, constructive, compromised or ...total loss under the insurances required under sub-clause (a) of ...12, all insurance payments for such loss shall be paid to the Mort... f any, in the manner described in the Deed(s) of Covenant, who shall ... the moneys between themselves, the Owners and the Charterers ...g to their respective interests. The Charterers undertake to notify the ...and the Mortgagees, if any, of any occurrences in consequence of ...e Vessel is likely to become a Total Loss as defined in this Clause.

... Vessel becomes an actual, constructive, compromised or agreed ... under the insurances arranged by the Charterers in accordance ...clause (a) of this Clause, this Charter shall terminate as of the date of ...

...wners shall upon the request of the Charterers, promptly execute ...uments as may be required to enable the Charterers to abandon the ... insurers and claim a constructive total loss.

... purpose of insurance coverage against marine and war risks under ...sions of sub-clause (a) of this Clause, the value of the Vessel is the ...tated in Box 27.

~~...~~

~~...~~

*...shall be considered deleted).*

...ing the Charter period the Vessel shall be kept insured by the Owners ...pense against marine and war risks under the form of policy or ...tached hereto. The Owners and/or insurers shall not have any right ... for subrogation against the Charterers on account of loss of or any ... the Vessel or her machinery or appurtenances covered by such ... or on account of payments made to discharge claims against or ...of the Vessel or the Owners covered by such insurance. All ...policies shall be in the joint names of the Owners and the ...as their interests may appear.

...to place satisfactory to Owners insurance ...ers and the mortgagees as sole beneficiaries

~~Charterers ... Protection and Indemnity ...~~ form as the Owners shall in writing approve which approval shall not be unreasonably withheld. If the Charterers fail to arrange and keep any of the insurances provided for under the provisions of sub-clause (b) in the manner described therein, the Owners shall notify the Charterers whereupon the Charterers shall rectify the position within seven running days, failing which the Owners shall have the right to withdraw the Vessel from the service of the Charterers without prejudice to any claim the Owners may otherwise have against the Charterers.

(c) In the event that any act or negligence of the Charterers shall vitiate any of the insurance herein provided, the Charterers shall pay to the Owners all losses and indemnify the Owners against all claims and demands which would otherwise have been covered by such insurance.

(d) The Charterers shall, subject to the approval of the Owners or Owners' Underwriters, effect all insured repairs, and the Charterers shall undertake settlement of all miscellaneous expenses in connection with such repairs as well as all insured charges, expenses and liabilities, to the extent of coverage under the insurances provided for under the provisions of sub-clause (a) of this Clause. The Charterers to be secured reimbursement through the Owners' Underwriters for such expenditures upon presentation of accounts.

(e) The Charterers to remain responsible for and to effect repairs and settlement of costs and expenses incurred thereby in respect of all other repairs not covered by the insurances and/or not exceeding any possible franchise(s) or deductibles provided for in the insurances.

(f) All time used for repairs under the provisions of sub-clause (d) and (e) of this Clause and for repairs of latent defects according to Clause 2 above, including any deviation, shall count as time on hire and shall form part of the Charter period.

The Owners shall not be responsible for any expenses as are incident to the use and operation of the Vessel for such time as may be required to make such repairs.

(g) If the conditions of the above insurances permit additional insurance to be placed by the parties such cover shall be limited to the amount for each party set out in Box 26 and Box 29, respectively. The Owners or the Charterers as the case may be shall immediately furnish the other party with particulars of any additional insurance effected, including copies of any cover notes or policies and the written consent of the insurers of any such required insurance in any case where the consent of such insurers is necessary.

(h) Should the Vessel become an actual, constructive, compromised or agreed total loss under the insurances required under sub-clause (a) of this Clause, all insurance payments for such loss shall be paid to the Owners, who shall distribute the moneys between themselves and the Charterers according to their respective interests.

(i) If the Vessel becomes an actual, constructive, compromised or agreed total loss under the insurances arranged by the Owners in accordance with sub-clause (a) of this Clause, this Charter shall terminate as of the date of such loss.

(j) The Charterers shall upon the request of the Owners, promptly execute such documents as may be required to enable the Owners to abandon the Vessel to insurers and claim a constructive total loss.

(k) For the purpose of insurance coverage against marine and war risks under the provisions of sub-clause (a) of this Clause, the value of the Vessel is the sum indicated in Box 27.

(l) Notwithstanding anything contained in Clause 9 (a), it is agreed that under the provisions of Clause 13, if applicable, the Owners shall keep the Vessel ~~with unexpired classification in force at all times during the Charter period.~~

**14. Redelivery**

The Charterers shall at the expiration of the Charter period redeliver the Vessel at a safe and ice-free port or place as indicated in Box 16. The Charterers shall give the Owners not less than 30 running days' preliminary and not less than 14 days' definite notice of expected date, range of ports of redelivery or port or place of redelivery. Any changes thereafter in Vessel's position shall be notified immediately to the Owners.

Should the Vessel be ordered on a voyage by which the Charter period may be exceeded the Charterers to have the use of the Vessel to enable them to complete the voyage, provided it could be reasonably calculated that the voyage would allow redelivery about the time fixed for the termination of the Charter.

The Vessel shall be redelivered to the Owners in the same or as good structure, state, condition and class as that in which she was delivered, fair wear and tear not affecting class excepted.

The Vessel upon redelivery shall have her survey cycles up to date and class certificates ~~...~~ in Box 12. to be "as is" as agreed

**15. Non-Lien and Indemnity**

The Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which might have priority over the title and interest of the Owners in the Vessel.

The Charterers further agree to fasten to the Vessel in a conspicuous place and to keep so fastened during the Charter period a notice reading as follows:-

"This Vessel is the property of (name of Owners). It is under charter to (name of Charterers) and by the terms of the Charter Party neither the Charterers nor the Master have any right, power or authority to create, incur or permit to be imposed on the Vessel any lien whatsoever."

The Charterers shall indemnify and hold the Owners harmless against any lien of whatsoever nature arising upon the Vessel during the Charter period while she is under the control of the Charterers, and against any claims against the Owners arising out of or in relation to the operation of the Vessel by the Charterers. Should the Vessel be arrested by reason of claims or liens arising out of her operation hereunder by the Charterers, the Charterers shall at their own expense take all reasonable steps to secure that within a reasonable time the Vessel is released and at their own expense put up bail to secure release of the Vessel.

**16. Lien**

The Owners to have a lien upon all cargoes and sub-freights belonging to the Charterers and any Bill of Lading freight for all claims under this Charter, and the Charterers to have a lien on the Vessel for all moneys paid in advance and not earned.

**17. Salvage**

All salvage and towage performed by the Vessel shall be for the Charterers' benefit and the cost of repairing damage occasioned thereby shall be borne by the Charterers.

18

19. Wreck Removal

In the event of the Vessel becoming a wreck or obstruction to navigation the Charterers shall indemnify the Owners against any sums whatsoever which the Owners shall become liable to pay and shall pay in consequence of the Vessel becoming a wreck or obstruction to navigation.

19. General Average

General Average, if any, shall be adjusted according to the York-Antwerp Rules 1974 or any subsequent modification thereof current at the time of the casualty.

The Charter Hire not to contribute to General Average.

20. Assignment and Sub-Demise

The Charterers shall not assign this Charter nor sub-demise the Vessel except with the prior consent in writing of the Owners which shall not be unreasonably withheld and subject to such terms and conditions as the Owners shall approve.

21. Bills of Lading

The Charterers are to procure that all Bills of Lading issued for carriage of goods under this Charter shall contain a Paramount Clause incorporating any legislation relating to Carrier's liability for cargo compulsorily applicable in the trade; if no such legislation exists, the Bills of Lading shall incorporate the British Carriage of Goods by Sea Act. The Bills of Lading shall also contain the amended New Jason Clause and the Both-to-Blame Collision Clause.

The Charterers agree to indemnify the Owners against all consequences or liabilities arising from the Master, officers or agents signing Bills of Lading or other documents.

22. Bank Guarantee

The Charterers undertake to furnish, before delivery of the Vessel, a first class bank guarantee or bond in the sum and at the place as indicated in Box 25 as guarantee for full performance of their obligations under this Charter.

*(Optional, only to apply if Box 25 filled in).*

23. Requisition/Acquisition

(a) In the event of the Requisition for Hire of the Vessel by any governmental or other competent authority (hereinafter referred to as "Requisition for Hire") irrespective of the date during the Charter period when "Requisition for Hire" may occur and irrespective of the length thereof and whether or not it be for an indefinite or a limited period of time, and irrespective of whether it may or will remain in force for the remainder of the Charter period, this Charter shall not be deemed thereby or thereupon to be frustrated or otherwise terminated and the Charterers shall continue to pay the stipulated hire in the manner provided by this Charter until the time when the Charter would have terminated pursuant to any of the provisions hereof always provided however that in the event of "Requisition for Hire" any Requisition Hire or compensation received or receivable by the Owners shall be payable to the Charterers during the remainder of the Charter period or the period of the "Requisition for Hire" whichever be the shorter.

The Hire under this Charter shall be payable to the Owners from the same time as the Requisition Hire is payable to the Charterers.

(b) In the event of the Owners being deprived of their ownership in the Vessel by any Compulsory Acquisition of the Vessel or requisition for title by any governmental or other competent authority (hereinafter referred to as "Compulsory Acquisition"), then, irrespective of the date during the Charter period when "Compulsory Acquisition" may occur, this Charter shall be deemed terminated as of the date of such "Compulsory Acquisition". In such event Charter Hire to be considered as earned and to be paid up to the date and time of such "Compulsory Acquisition".

24. War

(a) The Vessel unless the consent of the Owners be first obtained not to be ordered nor continue to any place or on any voyage nor be used on any service which will bring her within a zone which is dangerous as the result of any actual or threatened act of war, war, hostilities, warlike operations, acts of piracy or of hostility or malicious damage against this or any other vessel or its cargo by any person, body or State whatsoever, revolution, civil war, civil commotion or the operation of international law, nor be exposed in any way to any risks or penalties whatsoever consequent upon the imposition of Sanctions, nor carry any goods that may in any way expose her to any risks of seizure, capture, penalties or any other interference of any kind whatsoever by the belligerent or fighting powers or parties or by any Government or Ruler.

(b) The Vessel to have liberty to comply with any orders or directions as to departure, arrival, routes, ports of call, stoppages, destination, delivery or in any other wise whatsoever given by the Government of the nation under whose flag the Vessel sails or any other Government or any person (or body) acting or purporting to act with the authority of such Government or by any committee or person having under the terms of the war risks insurance on the Vessel the right to give any such orders or directions.

(c) In the event of outbreak of war (whether there be a declaration of war or not) between any two or more of the countries as stated in Box 31, both the Owners and the Charterers shall have the right to cancel this Charter, whereupon the Charterers shall redeliver the Vessel to the Owners in accordance with Clause 14, if she has cargo on board after discharge thereof at destination, or if debarred under this Clause from reaching or entering it at a near open and safe port as directed by the Owners, or if she has no cargo on board, at the port at which she then is or if at sea at a near open and safe port as directed by the Owners. In all cases hire shall continue to be paid in accordance with Clause 10 and except as aforesaid all other provisions of this Charter shall apply until redelivery.

[directly affecting performance of this Charter Part

25. Commission

The Owners to pay a commission at the rate indicated in Box 32 to the Brokers named in Box 32 on any Hire paid under the Charter but in no case less than is necessary to cover the actual expenses of the Brokers and a reasonable fee for their work. If the full Hire is not paid owing to breach of Charter by either of the parties the party liable therefor to indemnify the Brokers against their loss of commission.

Should the parties agree to cancel the Charter, the Owners to indemnify the Brokers against any loss of commission but in such case the commission not to exceed the brokerage on one year's Hire.

26. Law and Arbitration

26.1. This Charter shall be governed by English law and any dispute arising out of this Charter shall be referred to arbitration in London, one arbitrator being appointed by each party, in accordance with the Arbitration Acts 1950 and 1979 or any statutory modification or re-enactment thereof for the time being in force. On the receipt by one party of the nomination in writing of the other party's arbitrator, that party shall appoint their arbitrator within fourteen days, failing which the decision of the single Arbitrator appointed shall apply. If two Arbitrators properly appointed shall not agree they shall appoint an umpire whose decision shall be final.

~~26.2. [illegible] be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them shall be final, and for purpose of enforcing any award, this agreement may be made a rule of the Court.~~

~~The arbitrators shall be members of the Society of Maritime Arbitrators, Inc. of New York and the proceedings shall be conducted in accordance with the rules of the Society.~~

~~26.3. Any dispute arising out of this Charter shall be referred to arbitration at the place indicated in Box 33, subject to the law and procedures applicable there.~~

~~26.4. If Box 33 in Part I is not filled in, sub-clause 26.1. of this Clause shall apply.~~

~~[illegible]~~

Additional Clauses:

27. The Charterers to report monthly to the Owners, giving a list of any outstanding operational payments owing in relation to the vessel. Such outstandings are not to exceed U.S.D. 100,000 (One Hundred Thousand Dollars) at any time, except in the case of drydocking or major repairs, when Charterers are entitled to take advantage of yard's standard payment terms (in such a case a copy of the yard's invoice will be forwarded to the Owners).

28. Crewing to be effected by Magsaysay Lines or other reputable Crewing Agency in Charterers' option.

29. The Bareboat rate for the 7th & 8th years is to be fixed annually (about 2 months prior to commencement of the period) and is to be based upon the gross time Charter rate negotiated between I.P.L. and the time Charterers E.C.L. with full disclosure provided by I.P.L. The bareboat rate will be the difference between such time Charter rate and cost of U.S.D. 2,300 daily. With minimum rate $2.150 per day & maximum $2.350 per day

* 11. Mortgage

(b) The vessel chartered under this charter is to be financed by a mortgage as stated in Box 25. The Charterers undertake to sign a Tripartite Agreement of even date with this charter, made between themselves, the Owners and the mortgagee, and by such signature to acquaint themselves with all terms, conditions and provisions of the said Tripartite Agreement. The Charterers undertake that they will comply with all instructions or directions in regard to the employment, insurances, repairs and maintenance of the vessel [illegible]

"BARECON 89" Standard Bareboat Charter

OPTIONAL PART

(4)

## PART III
## PROVISIONS TO APPLY FOR NEWBUILDING VESSELS ONLY

*(Optional, only to apply if expressly agreed and stated in Box 35)*

...ecifications and Building Contract

...The Vessel shall be constructed in accordance with the Building Contract ...reafter called "the Building Contract") as annexed to this Charter, made ...ween the Builders and the Owners and in accordance with the specifications ...l plans annexed thereto, such Building Contract, specifications and plans ...ing been counter-signed as approved by the Charterers.

...No change shall be made in the Building Contract or in the specifications or ...ns of the Vessel as approved by the Charterers as aforesaid, without the ...arterers' consent.

...The Charterers shall have the right to send their representative to the Builders' ...d to inspect the Vessel during the course of her construction to satisfy ...mselves that construction is in accordance with such approved specifications ...plans as referred to under sub-clause (a) of this Clause.

...The Vessel shall be built in accordance with the Building Contract and shall be ...he description set out therein provided nevertheless that the Charterers shall ...bound to accept the Vessel from the Owners on the date of delivery by the ...ders as having been completed and constructed in accordance with the ...ding Contract and the Charterers undertake that after having so accepted the ...sel they will not thereafter raise any claims against the Owners in respect of ...Vessel's performance or specification or defects if any except that in respect ...ny repair or replacement of any defects which appear within the first 12 ...ths from delivery the Owners shall use their best endeavours to recover any ...nditure incurred in remedying such defects from the Builders, but shall only ...ble to the Charterers to the extent the Owners have a valid claim against the ...ders under the guarantee clause of the Building Contract (a copy whereof has ...supplied to the Charterers) provided that the Charterers shall be bound to ...pt such sums as the Owners are able to recover under this clause and shall ...no claim upon the Owners for any difference between the amounts so ...vered and the actual expenditure incurred on repairs or replacements or for ...oss of time incurred thereby.

...ce of Delivery

...to the Vessel having completed her acceptance trials including trials ...uipment in accordance with the Building Contract and specifications ...tion of the Charterers, the Owners shall give and the Charterers ...ery of the Vessel afloat when ready for delivery at the Builders' Yard ...other safe and readily accessible dock, wharf or place as may be agreed ...en the parties hereto and the Builders. Under the Building Contract the ...ers have estimated that the Vessel will be ready for delivery to the Owners as ...n provided but the delivery date for the purpose of this Charter shall be the ...when the Vessel is in fact ready for delivery by the Builders after completion ...ls whether that be before or after as indicated in the Building Contract. ...standing the foregoing, the Charterers shall not be obliged to take delivery ...Vessel until she has been classed and documented as provided in this ...r and free for transfer to the flag she has to fly. Subject as aforesaid the ...rers shall not be entitled to refuse acceptance of delivery of the Vessel and ...and after such acceptance the Charterers shall not be entitled to make any ...against the Owners in respect of any conditions, representations or warranties, whether express or implied, as to the seaworthiness of the Vessel or in respect of delay in delivery or otherwise howsoever.

(b) If for any reason other than a default by the Owners under the Building Contract, the Builders become entitled under that Contract not to deliver the Vessel to the Owners, the Owners shall upon giving to the Charterers written notice of Builders becoming so entitled, be excused from giving delivery of the Vessel to the Charterers and upon receipt of such notice by the Charterers this Charter shall cease to have effect.

(c) If for any reason the Owners become entitled under the Building Contract to reject the Vessel the Owners shall, before exercising such right of rejection, consult the Charterers and thereupon

i) If the Charterers do not wish to take delivery of the Vessel they shall inform the Owners within seven (7) days by notice in writing and upon receipt by the Owners of such notice this Charter shall cease to have effect; or

ii) If the Charterers wish to take delivery of the Vessel they may by notice in writing within seven (7) days require the Owners to negotiate with the Builders as to the terms on which delivery should be taken and/or refrain from exercising their right to rejection and upon receipt of such notice the Owners shall commence such negotiations and/or take delivery of the Vessel from the Builders and deliver her to the Charterers;

iii) In no circumstances shall the Charterers be entitled to reject the Vessel unless the Owners are able to reject the Vessel from the Builders;

iv) If this Charter terminates under sub-clause (b) or (c) of this Clause, the Owners shall thereafter not be liable to the Charterers for any claim under or arising out of this Charter or its termination.

Guarantee Works

If not otherwise agreed, the Owners authorize the Charterers to arrange for the guarantee works to be performed in accordance with the building contract terms, and hire to continue during the period of guarantee works. The Charterers have to advise the Owners about the performance to the extent the Owners may request.

Name of Vessel

The name of the Vessel shall be mutually agreed between the Owners and the Charterers and the Vessel shall be painted in the colours, display the funnel insignia and fly the house flag as required by the Charterers.

Survey on Redelivery

The Owners and the Charterers shall appoint surveyors for the purpose of determining and agreeing in writing the condition of the Vessel at the time of re-delivery.

Without prejudice to Clause 14 (Part II), the Charterers shall bear all survey expenses and all other costs, if any, including the cost of docking and undocking, if required, as well as all repair costs incurred.

The Charterers shall also bear all loss of time spent in connection with any docking and undocking as well as repairs, which shall be paid at the rate of Hire per day or pro rata.

## PART IV
## HIRE/PURCHASE AGREEMENT

*(Optional, only to apply if expressly agreed and stated in Box 39)*

...ration of this Charter and provided the Charterers have fulfilled their ...ons according to Part I and II as well as Part III, if applicable, it is agreed, ...payment of the last month's hire instalment as per Clause 10 the Charterers ...rchased the Vessel with everything belonging to her and the Vessel is fully ...

...yment of the instalment due is delayed for less than 7 running days or for ...beyond the Charterers' control, the right of withdrawal under the terms of ...f Part II shall not be exercised. However, any delay in payment of the ...s shall entitle the Owners to an interest at the rate per annum as ...22. If Box 22 has not been filled in the current market rate in the ...he Owners have their Principal Place of Business shall apply.

...*paragraphs the Owners are referred to as the Sellers and the ...the Buyers.*

...shall be delivered by the Sellers and taken over by the Buyers on ...of the Charter.

...guarantee that the Vessel, at the time of delivery, is free from all ...nces and maritime liens or any debts whatsoever other than those ...anything done or not done by the Buyers or any existing mortgage ...to be paid off by the time of delivery. Should any claims, which have ...rred prior to the time of delivery be made against the Vessel, the Sellers ...dertake to indemnify the Buyers against all consequences of such ...the extent it can be proved that the Sellers are responsible for such ...y taxes, notarial, consular and other charges and expenses connected with the purchase and registration under Buyers' flag, shall be for Buyers' account. Any taxes, consular and other charges and expenses connected with closing of the Sellers' register, shall be for Sellers' account.

In exchange for payment of the last month's hire instalment the Sellers shall furnish the Buyers with a Bill of Sale duly attested and legalized, together with a certificate setting out the registered encumbrances, if any. On delivery of the Vessel the Sellers shall provide for deletion of the Vessel from the Ship's Register and deliver a certificate of deletion to the Buyers.

The Sellers shall, at the time of delivery, hand to the Buyers all classification certificates (for hull, engines, anchors, chains, etc.), as well as all plans which may be in Sellers' possession.

The Wireless Installation and Nautical Instruments, unless on hire, shall be included in the sale without any extra payment.

The Vessel with everything belonging to her shall be at Sellers' risk and expense until she is delivered to the Buyers, subject to the conditions of this Contract and the Vessel with everything belonging to her shall be delivered and taken over as she is at the time of delivery, after which the Sellers shall have no responsibility for possible faults or deficiencies of any description.

The Buyers undertake to pay for the repatriation of the Captain, officers and other personnel if appointed by the Sellers to the port where the Vessel entered the Bareboat Charter as per Clause 2 (Part II) or to pay the equivalent cost for their journey to any other place.

## PART V
## PROVISIONS TO APPLY FOR VESSELS REGISTERED IN A BAREBOAT CHARTER REGISTRY

*(Optional, only to apply if expressly agreed and stated in Box 40)*

...pose of this PART V, the following terms shall have the meanings ...igned to them:

...at Charter Registry" shall mean the registry of the State whose flag ...will fly and in which the Charterers are registered as the bareboat ...during the period of the Bareboat Charter.

...ing Registry" shall mean the registry of the State in which the Owners ...are registered as Owners and to whose jurisdiction and control of the ...vert upon termination of the Bareboat Charter Registration.

...chartered under this Charter is financed by a mortgage and the ...Clause 11 (b) (Part II) shall apply.

Termination of Charter by Default

If the Vessel chartered under this Charter is registered in a Bareboat Charter Registry as stated in Box 41, and if the Owners shall default in the payment of any amounts due under the mortgage(s) specified in Box 26, the Charterers shall, if so required by the mortgagee, direct the Owners to re-register the Vessel in the Underlying Registry as shown in Box 42.

In the event of the Vessel being deleted from the Bareboat Charter Registry as stated in Box 41, due to a default by the Owners in the payment of any amounts due under the mortgage(s), the Charterers shall have the right to terminate this Charter forthwith and without prejudice to any other claim they may have against the Owners under this Charter.

THE BALTIC AND INTERNATIONAL MARITIME COUNCIL (BIMCO)
STANDARD BAREBOAT CHARTER
CODE NAME: "BARECON 89"

PART I

| | |
|---|---|
| 1. Shipbroker<br>Simpson Spence & Young Shipbrokers Ltd, London | 2. Place and date<br>London 18/12/97 |
| 3. Owners/Place of business<br>Sterling Navigation S.A. of Panama<br>c/o Ocean Trade S.A. of Panama<br>Omega Building<br>80 Kiffissias Ave, Gr-151 25<br>Amarousion, GREECE | 4. Bareboat charterers (Charterers)/Place of business<br>IPL Shipholding S.A., of Panama<br>c/o Interpacific Lines Co. Ltd<br>6th Floor, Toranomon, 33 Mori Building<br>3-8-21, Toranomon, Minato-Ku<br>Tokyo<br>JAPAN |
| 5. Vessel's name, Call Sign and Flag (Cl. 9(c))<br>"OCEAN LEO" | |
| 6. Type of Vessel<br>MULTI-PURPOSE RO/RO | 7. GRT/NRT<br>7642 / 2843 |
| 8. When/Where built<br>9/ 1989 - Shin Kurushima Dock of Japan | 9. Total DWT (abt.) in metric tons on summer freeboard<br>8,212 |
| 10. Class (Cl. 9)<br>NK. | 11. Date of last special survey by the Vessel's classification society<br>5/1994 |
| 12. Further particulars of Vessel (also indicate minimum number of months' validity of class certificates agreed acc. to Cl. 14)<br>115.02 M LOA / 19.20 MTR Beam /<br>2 Holds / 2 Hatches<br>645,597.75 / 605,876.50 CBFT Grain Bale. | |
| 13. Port or Place of delivery (Cl. 2)<br>Safe Berth or anchorage at safe port Singapore / Japan range 'Back to Back' with delivery of the vessel to owners under the Memorandum of Agreement 4th December 1997. | 14. Time for delivery (Cl. 3)<br><br>15. Cancelling date (Cl. 4)<br><br>16. Port or Place of redelivery (Cl. 14)<br>Safe port, Singapore/Japan range, including China, South Korea, USEC, USWC, Caribs, USG, Red Sea passing Muscat outbound, UK/cont, (Skaw-Gibralter range) full Mediterranean excluding Black Sea, port in Charterers option |
| 17. Running days' notice if other than stated in Cl. 3<br>N/A | 18. Frequency of dry-docking if other than stated in Cl. 9(f)<br>30 Months<br>(See Clause 9 (F)) |
| 19. Trading Limits (Cl. 5)<br>Within institute warranty limits, (charterers' option to break same, paying extra insurance), excluding Israel, North Korea, Angola, war or war-like zones | |
| 20. Charter period<br>Eight (8) Years, Charterers option declarable 4 months in advance to extend for a further 2 years in direct continuation. | 21. Charter hire (Cl. 10)<br>USD 3,700 per day or pro-rata from delivery for first (8) years. Rate for years 9 + 10 see clause 29. |
| 22. Rate of interest payable acc. to Cl. 10(f) and, if applicable, acc. to PART IV<br>N/A | 23. Currency and method of payment (Cl. 10)<br>N/A |

In 1974 as "Barecon A" and "Barecon B". Revised 1989.

11

(continued) "BARECON 89" Standard Bareboat Charter PART I

| 24. Place of payment; also state beneficiary and bank account (Cl. 10) | 25. Bank guarantee/bond (sum and place) (Cl. 22) (optional) |
| --- | --- |
| To be advised by Owners. | The charterers will pay during February 1998 the amount of USD 129,500 to owners, and to be released back to the charterers in three equal amounts, at the end of the first, second and third year. |
| 26. Mortgage(s), if any, (state whether Cl. 11(a) or (b) applies; if 11(b) applies state date of Deed(s) of Covenant and name of Mortgagee(s)/Place of business) (Cl. 11) | 27. Insurance (marine and war risks) (state value acc. to Cl. 12(f) or, if applicable, acc. to Cl. 13(k)) (also state if Cl. 13 applies) |
| 11.B. applies. Copy of Mortgage to be attached. Mortgagees to be advised. | USD |
| 28. Additional insurance cover, if any, for Owners' account limited to (Cl. 12(b)) or, if applicable, (Cl. 13(g)) | 29. Additional insurance cover, if any, for Charterers' account limited to (Cl. 12(b)) or, if applicable, (Cl. 13(g)) |
| | USD 1,000,000 |
| 30. Latent defects (only to be filled in if period other than stated in Cl. 2) | 31. War cancellation (indicate countries agreed) (Cl. 24) |
| | U.S.A., Japan, United Kingdom, France. |

32. Brokerage commission and to whom payable (Cl. 25)

5.0 Percent total.
1.25 Percent charterers' address.
1.25 Percent Simpson Spence & Young Shipbrokers Ltd
(Both commission deductable from the hire)
2.5 Percent to Ocean TradeS.A. of Panama

| 33. Law and arbitration (state 26.1, 26.2, or 26.3 of Cl. 26 as agreed; if 26.3 agreed, also state place of arbitration) (Cl. 26) | 34. Number of additional clauses covering special provisions, if agreed |
| --- | --- |
| English Law / Arbitration London | Three (3) |
| 35. Newbuilding Vessel (indicate with "yes" or "no" whether Part III applies) (optional) | 36. Name and place of Builders (only to be filled in if Part III applies) |
| | |
| 37. Vessel's Yard Building No. (only to be filled in if Part III applies) | 38. Date of Building Contract (only to be filled in if Part III applies) |
| | |
| 39. Hire Purchase agreement (indicate with "yes" or "no" whether Part IV applies) (optional) | 40. Bareboat Charter Registry (indicate with "yes" or "no" whether Part V applies) (optional) |
| | |
| 41. Flag and Country of the Bareboat Charter Registry (only to be filled in if Part V applies) | 42. Country of the Underlying Registry (only to be filled in if Part V applies) |
| | |

PREAMBLE - It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall include PART I and PART II. In the event of a conflict of conditions, the provisions of PART I shall prevail over those of PART II to the extent of such conflict but no further. It is further mutually agreed that PART III and/or PART IV and/or PART V shall only apply and shall only form part of this Charter if expressly agreed and stated in the Boxes 35, 39 and 40. If PART III and/or PART IV and/or PART V apply, it is further mutually agreed that in the event of a conflict of conditions, the provisions of PART I and PART II shall prevail over those of PART III and/or PART IV and/or PART V to the extent of such conflict but no further.

| Signature (Owners) | Signature (Charterers) |
| --- | --- |
| Owners, Sterling Navigation S.A. of Panama<br>By: [signature]<br>B. Zigas / Attorney-in-Fact | IPL SHIPHOLDING S.A. of Panama<br>[signature]<br>SHOICHI NOGUCHI |

PART II
"BARECON 89" Standard Bareboat Charter

**1. Definitions**

In this Charter, the following terms shall have the meanings hereby assigned to them:

"The Owners" shall mean the person or company registered as Owners of the Vessel.

"The Charterers" shall mean the Bareboat Charterers and shall not be construed to mean a time charterer or a voyage charterer.

**2. Delivery** *(not applicable to newbuilding vessels)*

~~The Vessel shall be delivered and taken over by the Charterers at the port or place indicated in Box 12, in such ready berth as the Charterers may direct. The Owners shall before and at the time of delivery exercise due diligence to make the Vessel seaworthy and in every respect ready in hull, machinery and equipment for service under this Charter. The Vessel shall be properly documented at time of delivery. The delivery to the Charterers of the Vessel and the taking over of the Vessel by the Charterers shall constitute a full performance by the Owners of all the Owners' obligations under Clause 2, and thereafter the Charterers shall not be entitled to make or assert any claim against the Owners on account of any conditions, representations or warranties expressed or implied with respect to the Vessel but the Owners shall be responsible for repairs or renewals occasioned by latent defects in the Vessel, her machinery or appurtenances, existing at the time of delivery under the Charter, provided such defects have manifested themselves within 18 months after delivery unless otherwise provided in Box 22.~~

Back to back with attached Memorandum of Agreement

**3. Time for Delivery** *(not applicable to newbuilding vessels)*

~~The Vessel to be delivered not before the date indicated in Box 14 unless with the Charterers' consent. Unless otherwise agreed in Box 17, the Owners to give the Charterers not less than 30 running days' preliminary and not less than 14 days' definite notice of the date on which the Vessel is expected to be ready for delivery. The Owners to keep the Charterers closely advised of possible changes in the Vessel's position.~~

As per attached Memorandum of Agreement.

**4. Cancelling** *(not applicable to newbuilding vessels)*

~~Should the Vessel not be delivered latest by the cancelling date indicated in Box 15, the Charterers to have the option of cancelling this Charter without prejudice to any claim the Charterers may otherwise have on the Owners under the Charter. If it appears that the Vessel will be delayed beyond the cancelling date, the Owners shall, as soon as they are in a position to state with reasonable certainty the day on which the Vessel should be ready, give notice thereof to the Charterers asking whether they will exercise their option of cancelling, and the option must then be declared within one hundred and sixty-eight (168) hours of the receipt by the Charterers of such notice. If the Charterers do not then exercise their option of cancelling, the seventh day after the readiness date stated in the Owners' notice shall be regarded as a new cancelling date for the purpose of this Clause.~~

As per attached Memorandum of Agreement.

**5. Trading Limits**

The Vessel shall be employed in lawful trades for the carriage of suitable lawful merchandise within the trading limits indicated in Box 19.

The Charterers undertake not to employ the Vessel or suffer the Vessel to be employed otherwise than in conformity with the terms of the instruments of insurance (including any warranties expressed or implied therein) without first obtaining the consent to such employment of the Insurers and complying with such requirements as to extra premium or otherwise as the Insurers may prescribe. If required, the Charterers shall keep the Owners and the Mortgagees advised of the intended employment of the Vessel.

The Charterers also undertake not to employ the Vessel or suffer her employment in any trade or business which is forbidden by the law of any country to which the Vessel may sail or is otherwise illicit or in carrying illicit or prohibited goods or in any manner whatsoever which may render her liable to condemnation, destruction, seizure or confiscation.

Notwithstanding any other provisions contained in this Charter it is agreed that nuclear fuels or radioactive products or waste are specifically excluded from the cargo permitted to be loaded or carried under this Charter. This exclusion does not apply to radio-isotopes used or intended to be used for any industrial, commercial, agricultural, medical or scientific purposes provided the Owners' prior approval has been obtained to loading thereof.

**6. Surveys** *(not applicable to newbuilding vessels)*

Survey on Delivery and Redelivery – The Owners and Charterers shall ~~each appoint surveyors~~ appoint a joint/independent surveyor for the purpose of determining and agreeing in writing the condition of the Vessel at the time of delivery and redelivery hereunder. The Owners shall bear all expenses of the On-Survey including loss of time, if any, and the Charterers shall bear all expenses of the Off-Survey including loss of time, if any, at the rate of hire per day or pro rata, also including in each case the cost of any docking and undocking, if required, in connection herewith.

In case there is a dispute as to whether the vessel is in the condition provided in Clause 9, then the opinion of an U.K. Class Surveyor shall be conclusive.

It is agreed that the vessel shall be maintained to the on-hire survey standards fair wear and tear excepted.

**7. Inspection**

Inspection. – The Owners shall have the right at any time but without interfering with the vessel's operation to inspect or survey the Vessel or instruct a duly authorised surveyor to carry out such survey on their behalf to ascertain the condition of the Vessel and satisfy themselves that the Vessel is being properly repaired and maintained. Inspection or survey in dry-dock shall be made only when the Vessel shall be in dry-dock for the Charterers' purpose. However, the Owners shall have the right to require the Vessel to be dry-docked for inspection if the Charterers are not docking her at normal classification intervals. The fees for such inspection or survey shall in the event of the Vessel being found to be in the condition provided in Clause 9 of this Charter be payable by the Owners and shall be paid by the Charterers only in the event of the Vessel being found to require repairs or maintenance in order to achieve the condition so provided. All time taken in respect of inspection, survey or repairs shall count as time on hire and shall form part of the Charter period.

The Charterers shall also permit the Owners to inspect the Vessel's log books whenever requested and shall whenever required by the Owners furnish them with full information regarding any casualties or other accidents or damage to the Vessel. For the purpose of this Clause, the Charterers shall keep the Owners advised of the intended employment of the Vessel.

The Owners have the right to place a riding inspector at all times onboard with full access to technical and commercial information

**8. Inventories and Consumable Oil and Stores**

A complete inventory of the Vessel's entire equipment, outfit, appliances and of all consumable stores on board the Vessel shall be made by the Charterers in conjunction with the Owners on delivery and again on redelivery of the Vessel. The Charterers and the Owners, respectively, shall at the time of delivery and redelivery take over and pay for all ~~bunkers, lubricating oil, water and unbroached provisions, paints, oils, ropes and other consumable stores in the said Vessel at the then current market prices at the ports of delivery and redelivery, respectively.~~ unused lubricating oils in tanks and unbroached lubricating oil in drums at the last supplied prices supported by vouchers. Payment will be made for bunkers remaining on board at the last supplied prices supported by vouchers.

**9. Maintenance and Operation**

(a) The Vessel shall during the Charter period be in the full possession and at the absolute disposal for all purposes of the Charterers and under their complete control in every respect. The Charterers shall maintain the Vessel, her machinery, boilers, appurtenances and spare parts in a good state of repair, in efficient operating condition and in accordance with good commercial maintenance practice and, except as provided for in Clause 13 (l), they shall keep the Vessel with unexpired classification of the class indicated in Box 10 and with other required certificates in force at all times. The Charterers to take immediate steps to have the necessary repairs done within a reasonable time failing which the Owners shall have the right of withdrawing the Vessel from the service of the Charterers without noting any protest and without prejudice to any claim the Owners may otherwise have against the Charterers under the Charter.

Unless otherwise agreed, in the event of any improvement, structural changes or expensive new equipment becoming necessary for the continued operation of the Vessel by reason of new class requirements or by compulsory legislation costing more than 5 per cent. of the Vessel's marine insurance value as stated in Box 27, then the extent, if any, to which the rate of hire shall be varied and the ratio in which the cost of compliance shall be shared between the parties concerned in order to achieve a reasonable distribution thereof as between the Owners and the Charterers having regard, inter alia, to the length of the period remaining under the Charter, shall in the absence of agreement, be referred to arbitration according to Clause 26.

The Charterers are required to establish and maintain financial security or responsibility in respect of oil or other pollution damage as required by any government, including Federal, state or municipal or other division or authority thereof, to enable the Vessel, without penalty or charge, lawfully to enter, remain at, or leave any port, place, territorial or contiguous waters of any country, state or municipality in performance of this Charter without any delay. This obligation shall apply whether or not such requirements have been lawfully imposed by such government or division or authority thereof. The Charterers shall make and maintain all arrangements by bond or otherwise as may be necessary to satisfy such requirements at the Charterers' sole expense and the Charterers shall indemnify the Owners against all consequences whatsoever (including loss of time) for any failure or inability to do so.

TOVALOP SCHEME. *(Applicable to oil tank vessels only).* – The Charterers are required to enter the Vessel under the TOVALOP SCHEME or under any similar compulsory scheme upon delivery under this Charter and to maintain her so during the currency of this Charter.

(b) The Charterers shall at their own expense and by their own procurement man, victual, navigate, operate, supply, fuel and repair the Vessel whenever required during the Charter period and they shall pay all charges and expenses of every kind and nature whatsoever incidental to their use and operation of the Vessel under this Charter, including any foreign general municipality and/or state taxes. The Master, officers and crew of the Vessel shall be the servants of the Charterers for all purposes whatsoever, even if for any reason appointed by the Owners.

Charterers shall comply with the regulations regarding officers and crew in force in the country of the Vessel's flag or any other applicable law.

(c) During the currency of this Charter, the Vessel shall retain her present name as indicated in Box 5 and shall remain under and fly the flag as indicated in Box 5. Provided, however, that the Charterers shall have the liberty to paint the Vessel in their own colours, install and display their funnel insignia and fly their own house flag. Painting and re-painting, instalment and re-instalment to be for the Charterers' account and time used thereby to count as time on hire.

(d) The Charterers shall make no structural changes in the Vessel or changes in the machinery, boilers, appurtenances or spare parts thereof without in each instance first securing the Owners' approval thereof. If the Owners so agree, the Charterers shall, if the Owners so require, restore the Vessel to its former condition before the termination of the Charter.

(e) The Charterers shall have the use of all outfit, equipment, and appliances on board the Vessel at the time of delivery, provided the same or their substantial equivalent shall be returned to the Owners on redelivery in the same good order and condition as when received, ordinary wear and tear excepted. The Charterers shall from time to time during the Charter period replace such items of equipment as shall be so damaged or worn as to be unfit for use. The Charterers are to procure that all repairs to or replacement of any damaged, worn or lost parts or equipment be effected in such manner (both as regards workmanship and quality of materials) as not to diminish the value of the Vessel. The Charterers have the right to fit additional equipment at their expense and risk but the Charterers shall remove such equipment at the end of the period if requested by the Owners.

Any equipment including radio equipment on hire on the Vessel at time of delivery shall be kept and maintained by the Charterers and the Charterers shall assume the obligations and liabilities of the Owners under any lease contracts in connection therewith and shall reimburse the Owners for all expenses incurred in connection therewith, also for any new equipment required in order to comply with radio regulations.

(f) The Charterers shall dry-dock the Vessel and clean and paint her underwater parts whenever the same may be necessary, ~~but not less than once every eighteen calendar months or as otherwise agreed in Box 13.~~

**10. Hire**

(a) The Charterers shall pay to the Owners for the hire of the Vessel at the ~~lump sum~~ rate times day per calendar month as indicated in Box 21 commencing on and from the date and hour of her delivery to the Charterers and at and after the agreed ~~lump sum~~ for any part of a month. Hire to continue until the date and hour when the Vessel is redelivered by the Charterers to her Owners.

(b) Payment of Hire, except for the first and last month's Hire, if sub-clause (c) of this Clause is applicable, shall be made in cash without discount every month in advance on the first day of each month in the currency and in the manner indicated in Box 23 and at the place mentioned in Box 24.

PART II

"BARECON 89" Standard Bareboat Charter

(c) Payment of Hire for the first and last month's Hire if less than a full month shall be calculated proportionally according to the number of days in the particular calendar month and advance payment to be effected accordingly.

(d) Should the Vessel be lost or missing, Hire to cease from the date and time when she was lost or last heard of. Any Hire paid in advance to be adjusted accordingly.

(e) Time shall be of the essence in relation to payment of Hire hereunder. In default of payment beyond a period of seven running days, the Owners shall have the right to withdraw the Vessel from the service of the Charterers without noting any protest and without interference by any court or any other formality whatsoever, and shall, without prejudice to any other claim the Owners may otherwise have against the Charterers under the Charter, be entitled to damages in respect of all costs and losses incurred as a result of the Charterers' default and the ensuing withdrawal of the Vessel.

(f) Any delay in payment of Hire shall entitle the Owners to an interest at the rate per annum as agreed in Box 22. If Box 22 has not been filled in the current market rate in the country where the Owners have their Principal Place of Business shall apply.

Mortgage

~~(a) [illegible]~~

~~(b) The Vessel chartered under this Charter is financed by a mortgage~~ according to the Deed(s) of Covenant annexed to this Charter and as stated in Box 26. By their counter-signature on the Deed(s) of Covenant, the Charterers undertake to have acquainted themselves with all terms, conditions and provisions of the said Deed(s) of Covenant. The Charterers undertake that they will comply with all such instructions or directions in regard to the employment, insurances, repairs and maintenance of the Vessel, etc., as laid down in the Deed(s) of Covenant or as may be directed from time to time during the currency of the Charter by the Mortgagee(s) in conformity with the Deed(s) of Covenant.

~~[illegible]~~

~~[illegible]~~

~~[illegible] consent of the Charterers.~~

(Optional. Clauses 11 (a) and 11 (b) are alternatives; indicate alternative agreed in Box 26). *See opposite page

Insurance and Repairs

(a) During the Charter period the Vessel shall be kept insured by the Charterers at their expense against marine, war and Protection and Indemnity risks in such form as the Owners shall in writing approve, which approval shall not be unreasonably withheld. Such marine, war and P. and I. insurances shall be arranged by the Charterers to protect the interests of both the Owners and the Charterers and mortgagees (if any), and the Charterers shall be at liberty to protect under such insurances the interests of any managers they may appoint. All insurance policies shall be in the joint names of the Owners and the Charterers as their interests may appear.

If the Charterers fail to arrange and keep any of the the insurances provided for under the provisions of sub-clause (a) above in the manner described therein, the Owners shall notify the Charterers whereupon the Charterers shall rectify the position within seven running days, failing which Owners shall have the right to withdraw the Vessel from the service of the Charterers without prejudice to any claim the Owners may otherwise have against the Charterers.

The Charterers shall, subject to the approval of the Owners and the Underwriters, effect all insured repairs and shall undertake settlement of all costs in connection with such repairs as well as insured charges, expenses and liabilities (reimbursement to be secured by the Charterers from the Underwriters) to the extent of coverage under the insurances herein provided for.

The Charterers also to remain responsible for and to effect repairs and settlement of costs and expenses incurred thereby in respect of all other repairs not covered by the insurances and/or not exceeding any possible franchise(s) or deductibles provided for in the insurances.

[illegible] time used for repairs under the provisions of sub-clause (a) of this Clause and for repairs of latent defects according to Clause 2 above including any [illegible]tion shall count as time on hire and shall form part of the Charter period.

[illegible] the conditions of the above insurances permit additional insurance to be placed by the parties, such cover shall be limited to the amount for each party set out in Box 28 and Box 29, respectively. The Owners or the Charterers as the case may be shall immediately furnish the other party with particulars of any additional insurance effected, including copies of any cover notes or policies and the written consent of the insurers of any such required insurance in any case where the consent of such insurers is necessary.

(e) Should the Vessel become an actual, constructive, compromised or agreed total loss under the insurances required under sub-clause (a) of Clause 12, all insurance payments for such loss shall be paid to the Mortgagee, if any, in the manner described in the Deed(s) of Covenant, who shall distribute the moneys between themselves, the Owners and the Charterers according to their respective interests. The Charterers undertake to notify the Owners and the Mortgagee, if any, of any occurrences in consequence of which the Vessel is likely to become a Total Loss as defined in this Clause.

(f) If the Vessel becomes an actual, constructive, compromised or agreed total loss under the insurances arranged by the Charterers in accordance with sub-clause (a) of this Clause, this Charter shall terminate as of the date of such loss.

(g) The Owners shall upon the request of the Charterers, promptly execute such documents as may be required to enable the Charterers to abandon the Vessel to insurers and claim a constructive total loss.

(h) For the purpose of insurance coverage against marine and war risks under the provisions of sub-clause (a) of this Clause, the value of the Vessel is the sum indicated in Box 27.

~~Insurance, Repairs and Classification~~

~~[illegible]~~

~~(Optional, only to apply if expressly agreed and stated in Box 27, in which event Clause 12 shall be considered deleted).~~

~~(a) During the Charter period the Vessel shall be kept insured by the Owners at their expense against marine and war risks under the form of policy or policies attached hereto. The Owners and/or insurers shall not have any right of recovery or subrogation against the Charterers on account of loss of or any damage to the Vessel or her machinery or appurtenances covered by such insurance, or on account of payments made to discharge claims against or liabilities of the Vessel or the Owners covered by such insurance. All insurance policies shall be in the joint names of the Owners and the Charterers as their interests may appear.~~

~~(b) [illegible]~~ Charterers to place satisfactory to Owners; insurance with Owners and the mortgagees as sole beneficiaries

~~(b) [illegible] Protection and Indemnity risks in such form as the Owners shall in writing approve which approval shall not be unreasonably withheld.~~ If the Charterers fail to arrange and keep any of the insurances provided for under the provisions of sub-clause (b) in the manner described therein, the Owners shall notify the Charterers whereupon the Charterers shall rectify the position within seven running days, failing which the Owners shall have the right to withdraw the Vessel from the service of the Charterers without prejudice to any claim the Owners may otherwise have against the Charterers.

(c) In the event that any act or negligence of the Charterers shall vitiate any of the insurance herein provided, the Charterers shall pay to the Owners all losses and indemnify the Owners against all claims and demands which would otherwise have been covered by such insurance.

(d) The Charterers shall, subject to the approval of the Owners or Owners' Underwriters, effect all insured repairs, and the Charterers shall undertake settlement of all miscellaneous expenses in connection with such repairs as well as all insured charges, expenses and liabilities, to the extent of coverage under the insurances provided for under the provisions of sub-clause (a) of this Clause. The Charterers to be secured reimbursement through the Owners' Underwriters for such expenditures upon presentation of accounts.

(e) The Charterers to remain responsible for and to effect repairs and settlement of costs and expenses incurred thereby in respect of all other repairs not covered by the insurances and/or not exceeding any possible franchise(s) or deductibles provided for in the insurances.

(f) All time used for repairs under the provisions of sub-clause (d) and (e) of this Clause and for repairs of latent defects according to Clause 2 above, including any deviation, shall count as time on hire and shall form part of the Charter period.

The Owners shall not be responsible for any expenses as are incident to the use and operation of the Vessel for such time as may be required to make such repairs.

(g) If the conditions of the above insurances permit additional insurance to be placed by the parties such cover shall be limited to the amount for each party set out in Box 28 and Box 29, respectively. The Owners or the Charterers as the case may be shall immediately furnish the other party with particulars of any additional insurance effected, including copies of any cover notes or policies and the written consent of the insurers of any such required insurance in any case where the consent of such insurers is necessary.

(h) Should the Vessel become an actual, constructive, compromised or agreed total loss under the insurances required under sub-clause (a) of this Clause, all insurance payments for such loss shall be paid to the Owners, who shall distribute the moneys between themselves and the Charterers according to their respective interests.

(i) If the Vessel becomes an actual, constructive, compromised or agreed total loss under the insurances arranged by the Owners in accordance with sub-clause (a) of this Clause, this Charter shall terminate as of the date of such loss.

(j) The Charterers shall upon the request of the Owners, promptly execute such documents as may be required to enable the Owners to abandon the Vessel to insurers and claim a constructive total loss.

(k) For the purpose of insurance coverage against marine and war risks under the provisions of sub-clause (a) of this Clause, the value of the Vessel is the sum indicated in Box 27.

(l) Notwithstanding anything contained in Clause 9 (a), it is agreed that under the provisions of Clause 13, if applicable, the Owners shall keep the Vessel ~~with unexpired classification [illegible] during the Charter period~~

14. Redelivery

The Charterers shall at the expiration of the Charter period redeliver the Vessel at a safe and ice-free port or place as indicated in Box 15. The Charterers shall give the Owners not less than 30 running days' preliminary and not less than 14 days' definite notice of expected date, range of ports of redelivery or port or place of redelivery. Any changes thereafter in Vessel's position shall be notified immediately to the Owners.

Should the Vessel be ordered on a voyage by which the Charter period may be exceeded the Charterers to have the use of the Vessel to enable them to complete the voyage, provided it could be reasonably calculated that the voyage would allow redelivery about the time fixed for the termination of the Charter.

The Vessel shall be redelivered to the Owners in the same or as good structure, state, condition and class as that in which she was delivered, fair wear and tear not affecting class excepted.

The Vessel upon redelivery shall have her survey cycles up to date and class certificates ~~[illegible]~~ in Box 12. to be "as is" as agreed

15. Non-Lien and Indemnity

The Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which might have priority over the title and interest of the Owners in the Vessel.

The Charterers further agree to fasten to the Vessel in a conspicuous place and to keep so fastened during the Charter period a notice reading as follows:-

"This Vessel is the property of (name of Owners). It is under charter to (name of Charterers) and by the terms of the Charter Party neither the Charterers nor the Master have any right, power or authority to create, incur or permit to be imposed on the Vessel any lien whatsoever."

The Charterers shall indemnify and hold the Owners harmless against any lien of whatsoever nature arising upon the Vessel during the Charter period while she is under the control of the Charterers, and against any claims against the Owners arising out of or in relation to the operation of the Vessel by the Charterers. Should the Vessel be arrested by reason of claims or liens arising out of her operation hereunder by the Charterers, the Charterers shall at their own expense take all reasonable steps to secure that within a reasonable time the Vessel is released and at their own expense put up bail to secure release of the Vessel.

16. Lien

The Owners to have a lien upon all cargoes and sub-freights belonging to the Charterers and any Bill of Lading freight for all claims under this Charter, and the Charterers to have a lien on the Vessel for all moneys paid in advance and not earned.

17. Salvage

All salvage and towage performed by the Vessel shall be for the Charterers' benefit and the cost of repairing damage occasioned thereby shall be borne by the Charterers.

1. Wreck Removal

In the event of the Vessel becoming a wreck or obstruction to navigation the Charterers shall indemnify the Owners against any sums whatsoever which the Owners shall become liable to pay and shall pay in consequence of the Vessel becoming a wreck or obstruction to navigation.

2. General Average

General Average, if any, shall be adjusted according to the York-Antwerp Rules 1974 or any subsequent modification thereof current at the time of the casualty.

The Charter Hire not to contribute to General Average.

2. Assignment and Sub-Demise

The Charterers shall not assign this Charter nor sub-demise the Vessel except with the prior consent in writing of the Owners which shall not be unreasonably withheld and subject to such terms and conditions as the Owners shall approve.

. Bills of Lading

The Charterers are to procure that all Bills of Lading issued for carriage of goods under this Charter shall contain a Paramount Clause incorporating any legislation relating to Carrier's liability for cargo compulsorily applicable in the trade; if no such legislation exists, the Bills of Lading shall incorporate the British Carriage of Goods by Sea Act. The Bills of Lading shall also contain the amended New Jason Clause and the Both-to-Blame Collision Clause.

The Charterers agree to indemnify the Owners against all consequences or liabilities arising from the Master, officers or agents signing Bills of Lading or other documents.

Guarantee

[C]harterers undertake to furnish, before delivery of the Vessel, a first class guarantee or bond in the sum and at the place as indicated in Box 25 as [guar]antee for full performance of their obligations under this Charter.
*(Optional, only to apply if Box 25 filled in).*

Requisition/Acquisition

(a) In the event of the Requisition for Hire of the Vessel by any governmental or other competent authority (hereinafter referred to as "Requisition for Hire") irrespective of the date during the Charter period when "Requisition for Hire" may occur and irrespective of the length thereof and whether or not it be for an indefinite or a limited period of time, and irrespective of whether it may or will remain in force for the remainder of the Charter period, this Charter shall not be deemed thereby or thereupon to be frustrated or otherwise terminated and the Charterers shall continue to pay the stipulated hire in the manner provided by this Charter until the time when the Charter would have terminated pursuant to any of the provisions hereof always provided however that in the event of "Requisition for Hire" any Requisition Hire or compensation received or receivable by the Owners shall be payable to the Charterers during the remainder of the Charter period or the period of the "Requisition for Hire" whichever be the shorter.

The hire under this Charter shall be payable to the Owners from the same time as the Requisition Hire is payable to the Charterers.

(b) In the event of the Owners being deprived of their ownership in the Vessel by any Compulsory Acquisition of the Vessel or requisition for title by any governmental or other competent authority (hereinafter referred to as "Compulsory Acquisition"), then, irrespective of the date during the Charter period when "Compulsory Acquisition" may occur, this Charter shall be deemed terminated as of the date of such "Compulsory Acquisition". In such event Charter Hire to be considered as earned and to be paid up to the date and time of such "Compulsory Acquisition".

24. War

(a) The Vessel unless the consent of the Owners be first obtained not to be ordered nor continue to any place or on any voyage nor be used on any service which will bring her within a zone which is dangerous as the result of any actual or threatened act of war, war, hostilities, warlike operations, acts of piracy or of hostility or malicious damage against this or any other vessel or its cargo by any person, body or State whatsoever, revolution, civil war, civil commotion or the operation of international law, nor be exposed in any way to any risks or penalties whatsoever consequent upon the imposition of Sanctions, nor carry any goods that may in any way expose her to any risks of seizure, capture, penalties or any other interference of any kind whatsoever by the belligerent or fighting powers or parties or by any Government or Ruler.

(b) The Vessel to have liberty to comply with any orders or directions as to departure, arrival, routes, ports of call, stoppages, destination, delivery or in any other wise whatsoever given by the Government of the nation under whose flag the Vessel sails or any other Government or any person (or body) acting or purporting to act with the authority of such Government or by any committee or person having under the terms of the war risks insurance on the Vessel the right to give any such orders or directions.

(c) In the event of outbreak of war (whether there be a declaration of war or not) between any two or more of the countries as stated in Box 31, both the Owners and the Charterers shall have the right to cancel this Charter, whereupon the Charterers shall redeliver the Vessel to the Owners in accordance with Clause 14, if she has cargo on board after discharge thereof at destination, or if debarred under this Clause from reaching or entering it at a near open and safe port as directed by the Owners, or if she has no cargo on board, at the port at which she then is or if at sea at a near open and safe port as directed by the Owners. In all cases hire shall continue to be paid in accordance with Clause 10 and except as aforesaid all other provisions of this Charter shall apply until redelivery.

directly affecting performance of this Charter Party.

25. Commission

The Owners to pay a commission at the rate indicated in Box 32 to the Brokers named in Box 32 on any Hire paid under the Charter but in no case less than is necessary to cover the actual expenses of the Brokers and a reasonable fee for their work. If the full Hire is not paid owing to breach of Charter by either of the parties the party liable therefor to indemnify the Brokers against their loss of commission.

Should the parties agree to cancel the Charter, the Owners to indemnify the Brokers against any loss of commission but in such case the commission not to exceed the brokerage on one year's Hire.

26. Law and Arbitration

26.1. This Charter shall be governed by English law and any dispute arising out of this Charter shall be referred to arbitration in London, one arbitrator being appointed by each party, in accordance with the Arbitration Acts 1950 and 1979 or any statutory modification or re-enactment thereof for the time being in force. On the receipt by one party of the nomination in writing of the other party's arbitrator, that party shall appoint their arbitrator within fourteen days, failing which the decision of the single Arbitrator appointed shall apply. If two Arbitrators properly appointed shall not agree they shall appoint an umpire whose decision shall be final.

~~26.2. Should any dispute arise out of this Charter, the matter in dispute shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them shall be final, and for purpose of enforcing any award, this agreement may be made a rule of the Court.~~

~~The arbitrators shall be members of the Society of Maritime Arbitrators, Inc. of New York and the proceedings shall be conducted in accordance with the rules of the Society.~~

~~26.3. Any dispute arising out of this Charter shall be referred to arbitration at the place indicated in Box 33, subject to the law and procedures applicable there.~~

~~26.4. If Box 33 in Part I is not filled in, sub-clause 26.1. of this Clause shall apply.~~

~~26.5. 26.2 and 26.3 are alternatives; indicate alternative agreed in Box 33.~~

Additional Clauses:

27. The Charterers to report monthly to the Owners, giving a list of any outstanding operational payments owing in relation to the vessel. Such outstandings are not to exceed U.S. $100,000 (One Hundred Thousand Dollars) at any time, except in the case of drydocking or major repairs, when Charterers are entitled to take advantage of yard's standard payment terms (in such a case a copy of the yard's invoice will be forwarded to the Owners).

28. Crewing to be effected by Magsaysay Lines or other reputable Crewing Agency in Charterers' option.

29. The Charterers have the option, declarable latest 4 months in advance, to extend for a further 2 years in direct continuation, one month more or less in Charteers option. For the optional period minimum US$ 3,400 maximum US$ 3,900 daily. The rate for each year of the optional period is to be based on the gross time charter rate negotiated between IPL and the time charterers, ECL, with full disclosure provided by IPL. The BB rate will be the difference between such time charter rate and operating costs of US$ 2,400 daily. For example, if for the 9th year at time charter rate of US$ 6,000 daily is agreed, then the BB rate shall be US$ 3,600 daily. (This is always subject to the minimum/maximum figures above)

11. Mortgage

(b) The vessel chartered under this charter is to be financed by a mortgage as stated in Box 26. The Charterers undetake to sign a Tripartite Agreement of even date with this charter, made between themselves, the Ownes and the mortgagee, and by such signature to acquaint themselves with all terms, conditions and provisions of the said Tripartite Agreement. The Charterers undertake that they will comply with all instructions or directions in regard to the employment, insurancesa, repairs and maintenance of the vessel etc. as laid down in the Tripartite Agreement or as may be directed from time to time during the currency of the

15

OPTIONAL PART

"BARECON 89" Standard Bareboat Charter

# PART III

## PROVISIONS TO APPLY FOR NEWBUILDING VESSELS ONLY

*(Optional, only to apply if expressly agreed and stated in Box 35)*

**...fications and Building Contract**

...e Vessel shall be constructed in accordance with the Building Contract ...ther called "the Building Contract") as annexed to this Charter, made ...en the Builders and the Owners and in accordance with the specifications ...lans annexed thereto, such Building Contract, specifications and plans ...g been counter-signed as approved by the Charterers.

...change shall be made in the Building Contract or in the specifications or ...of the Vessel as approved by the Charterers as aforesaid, without the ...erers' consent.

...e Charterers shall have the right to send their representative to the Builders' ...to inspect the Vessel during the course of her construction to satisfy ...elves that construction is in accordance with such approved specifications ...lans as referred to under sub-clause (a) of this Clause.

...e Vessel shall be built in accordance with the Building Contract and shall be ...description set out therein provided nevertheless that the Charterers shall ...und to accept the Vessel from the Owners on the date of delivery by the ...rs as having been completed and constructed in accordance with the ...ng Contract and the Charterers undertake that after having so accepted the ...l they will not thereafter raise any claims against the Owners in respect of ...ssel's performance or specification or defects if any except that in respect ...r repair or replacement of any defects which appear within the first 12 ...s from delivery the Owners shall use their best endeavours to recover any ...es incurred in remedying such defects from the Builders, but shall only ...the Charterers to the extent the Owners have a valid claim against the ...r the guarantee clause of the Building Contract (a copy whereof has ...d to the Charterers) provided that the Charterers shall be bound to ...ounts as the Owners are able to recover under this clause and shall ...no ...ses upon the Owners for any difference between the amounts so ...red and the actual expenditure incurred on repairs or replacements or for ...f time incurred thereby.

**...and Place of Delivery**

...ject to the Vessel having completed her acceptance trials including trials ...o equipment in accordance with the Building Contract and specifications ...satisfaction of the Charterers, the Owners shall give and the Charterers ...ke delivery of the Vessel afloat when ready for delivery at the Builders' Yard ...e other safe and readily accessible dock, wharf or place as may be agreed ...n the parties hereto and the Builders. Under the Building Contract the ...s have estimated that the Vessel will be ready for delivery to the Owners as ...provided but the delivery date for the purpose of this Charter shall be the ...hen the Vessel is in fact ready for delivery by the Builders after completion ...s whether that be before or after as indicated in the Building Contract. ...standing the foregoing, the Charterers shall not be obliged to take delivery ...Vessel until she has been classed and documented as provided in this ...r and free for transfer to the flag she has to fly. Subject as aforesaid the ...rers shall not be entitled to refuse acceptance of delivery of the Vessel and ...nd after such acceptance the Charterers shall not be entitled to make any ...against the Owners in respect of any conditions, representations or warranties, whether express or implied, as to the seaworthiness of the Vessel or in respect of delay in delivery or otherwise howsoever.

(b) If for any reason other than a default by the Owners under the Building Contract, the Builders become entitled under that Contract not to deliver the Vessel to the Owners, the Owners shall upon giving to the Charterers written notice of Builders becoming so entitled, be excused from giving delivery of the Vessel to the Charterers and upon receipt of such notice by the Charterers this Charter shall cease to have effect.

(c) If for any reason the Owners become entitled under the Building Contract to reject the Vessel the Owners shall, before exercising such right of rejection, consult the Charterers and thereupon

i) If the Charterers do not wish to take delivery of the Vessel they shall inform the Owners within seven (7) days by notice in writing and upon receipt by the Owners of such notice this Charter shall cease to have effect; or

ii) If the Charterers wish to take delivery of the Vessel they may by notice in writing within seven (7) days require the Owners to negotiate with the Builders as to the terms on which delivery should be taken and/or refrain from exercising their right to rejection and upon receipt of such notice the Owners shall commence such negotiations and/or take delivery of the Vessel from the Builders and deliver her to the Charterers;

iii) In no circumstances shall the Charterers be entitled to reject the Vessel unless the Owners are able to reject the Vessel from the Builders;

iv) If this Charter terminates under sub-clause (b) or (c) of this Clause, the Owners shall thereafter not be liable to the Charterers for any claim under or arising out of this Charter or its termination.

**Guarantee Works**

If not otherwise agreed, the Owners authorize the Charterers to arrange for the guarantee works to be performed in accordance with the building contract terms, and hire to continue during the period of guarantee works. The Charterers have to advise the Owners about the performance to the extent the Owners may request.

**Name of Vessel**

The name of the Vessel shall be mutually agreed between the Owners and the Charterers and the Vessel shall be painted in the colours, display the funnel insignia and fly the house flag as required by the Charterers.

**Survey on Redelivery**

The Owners and the Charterers shall appoint surveyors for the purpose of determining and agreeing in writing the condition of the Vessel at the time of re-delivery.

Without prejudice to Clause 14 (Part II), the Charterers shall bear all survey expenses and all other costs, if any, including the cost of docking and undocking, if required, as well as all repair costs incurred.

The Charterers shall also bear all loss of time spent in connection with any docking and undocking as well as repairs, which shall be paid at the rate of Hire per day or pro rata.

# PART IV

## HIRE/PURCHASE AGREEMENT

*(Optional, only to apply if expressly agreed and stated in Box 39)*

...on of this Charter and provided the Charterers have fulfilled their ...cording to Part I and II as well as Part III, if applicable, it is agreed, ...t of the last month's hire instalment as per Clause 10 the Charterers ...d the Vessel with everything belonging to her and the Vessel is fully ...

...ment of the instalment due is delayed for less than 7 running days or for ...beyond the Charterers' control, the right of withdrawal under the terms of ...of Part II shall not be exercised. However, any delay in payment of the ...due shall entitle the Owners to an interest at the rate per annum as in Box 22. If Box 22 has not been filled in the current market rate in the ...where the Owners have their Principal Place of Business shall apply.

...following paragraphs the Owners are referred to as the Sellers and the ...rers as the Buyers.

...sel shall be delivered by the Sellers and taken over by the Buyers on ...n of the Charter.

...lers guarantee that the Vessel, at the time of delivery, is free from all ...rances and maritime liens or any debts whatsoever other than those ...from anything done or not done by the Buyers or any existing mortgage ...ed to be paid off by the time of delivery. Should any claims, which have ...urred prior to the time of delivery be made against the Vessel, the Sellers ...undertake to indemnify the Buyers against all consequences of such ...the extent it can be proved that the Sellers are responsible for such ...ny taxes, notarial, consular and other charges and expenses connected with the purchase and registration under Buyers' flag, shall be for Buyers' account. Any taxes, consular and other charges and expenses connected with closing of the Sellers' register, shall be for Sellers' account.

In exchange for payment of the last month's hire instalment the Sellers shall furnish the Buyers with a Bill of Sale duly attested and legalized, together with a certificate setting out the registered encumbrances, if any. On delivery of the Vessel the Sellers shall provide for deletion of the Vessel from the Ship's Register and deliver a certificate of deletion to the Buyers.

The Sellers shall, at the time of delivery, hand to the Buyers all classification certificates (for hull, engines, anchors, chains, etc.), as well as all plans which may be in Sellers' possession.

The Wireless Installation and Nautical Instruments, unless on hire, shall be included in the sale without any extra payment.

The Vessel with everything belonging to her shall be at Sellers' risk and expense until she is delivered to the Buyers, subject to the conditions of this Contract and the Vessel with everything belonging to her shall be delivered and taken over as she is at the time of delivery, after which the Sellers shall have no responsibility for possible faults or deficiencies of any description.

The Buyers undertake to pay for the repatriation of the Captain, officers and other personnel if appointed by the Sellers to the port where the Vessel entered the Bareboat Charter as per Clause 2 (Part II) or to pay the equivalent cost for their journey to any other place.

# PART V

## PROVISIONS TO APPLY FOR VESSELS REGISTERED IN A BAREBOAT CHARTER REGISTRY

*(Optional, only to apply if expressly agreed and stated in Box 40)*

...ns

...purpose of this PART V, the following terms shall have the meanings ...assigned to them:

..."Bareboat Charter Registry" shall mean the registry of the State whose flag ...fly and in which the Charterers are registered as the bareboat ...s during the period of the Bareboat Charter.

..."...ing Registry" shall mean the registry of the State in which the Owners ...are registered as Owners and to which jurisdiction and control of the ...revert upon termination of the Bareboat Charter Registration.

...chartered under this Charter is financed by a mortgage and the Vessel chartered under this Charter is registered in a Bareboat Charter Registry as stated in Box 41, and if the Owners shall default in the payment of any amounts due under the mortgage(s) specified in Box 26, the Charterers shall, if so required by the mortgagee, direct the Owners to re-register the Vessel in the Underlying Registry as shown in Box 42.

**Termination of Charter by Default**

In the event of the Vessel being deleted from the Bareboat Charter Registry as stated in Box 41, due to a default by the Owners in the payment of any amounts due under the mortgage(s), the Charterers shall have the right to terminate this Charter forthwith and without prejudice to any other claim they may have against the Owners under this Charter.

Received 11/06/2003 04:53PM 14:56 on RightFAX line 11 for OARCHIVE WORKSRV6 printed INC3FAA7FF44729 on 11/06/2003 05:1 * Pg 22/26
06/11/03 THU 20:01 FAX 022

SIMPSON, SPENCE & YOUNG SHIPBROKERS LTD.
LONDON

STANDARD BAREBOAT CHARTER
CODE NAME: "BARECON 89"

2. Place and date
London, 14th April 1997

3. Owners/Place of business

Panaport Shipping S. A., Panama
c/o Drytank S. A.
13 Skouze Street
Piraeus 185 35
Greece

4. Bareboat charterers (Charterers)/Place of business

Ocean Cool Shipholding S.A., of Panama
c/o INTERPACIFIC LINES CO., LTD.,
6th Floor, Toranomon 33 Mori Building,
3-8-21, Toranomon, Minato-Ku
Tokyo
Japan

5. Vessel's name, Call Sign and Flag (Cl. 9(c))

m.v. "KOWHAI"

6. Type of Vessel
Reefer Vessel

7. GRT/NRT
6,545 / 3,204

8. When/Where built
April 1989, Takamatsu City, Kowaga Pref.
Japan

9. Total DWT (abt) in metric tons on summer freeboard
7,168 MT

10. Class (Cl. 9)
Nippon Kaiji Kyokai, NS*, MNS*, (RMC* (-25 Deg C))

11. Date of last special survey by the Vessel's classification society
May 1994

12. Further particulars of Vessel (also indicate minimum number of months' validity of class certificates agreed acc. to Cl. 14)

Draft, Loaded: 7.16 metres / LOA : 146.02 metres / Beam : 18.50 metres
4 Holds/4 Hatches
333,081 Cbft Bale

13. Port or Place of delivery (Cl. 2)
Safe port in the Far East upon completion of the New Zealand round voyage commencing at South Korea expected to be Manila/Philippines around end May/early June 'back to back' with delivery of the vessel to Owners, under Memorandum of Agreement, dated 14th April 1997.

14. Time for delivery (Cl. 3)
1st May-15th June 1997

15. Cancelling date (Cl. 4)
15th June 1997

16. Port or Place of redelivery (Cl. 14)
Safe port, Singapore/Japan, including China and South Korea, USEC, USWC, Caribs, USG, Red Sea passing Muscat outbound, UK/Cont, (Skaw/Gibraltar range), full Mediterranean excluding Black Sea. Port in Charterers' option.

17. Running days' notice if other than stated in Cl. 3
N/A

18. Frequency of dry-docking if other than stated in Cl. 9(f)
30 months.
(See also Clause 9 (f))

19. Trading Limits (Cl. 5)

Within Institute Warranty Limits (Charterers' option to break same, paying extra insurance), including Israel, North Korea, Angola, war or war-like zones.

20. Charter period
Seven (7) years

21. Charter hire (Cl. 10)
U.S. $4,350 per day or pro rata from delivery for the first 5 years. Rate for years 6 & 7, see Clause 29.

22. Rate of interest payable acc. to Cl. 10(f) and, if applicable, acc. to PART IV
N/A

23. Currency and method of payment (Cl. 10)
N/A

First issued by The Baltic and International Maritime Council (BIMCO), Copenhagen in 1974 as "Barecon 'A'" and "Barecon 'B'". Revised and amalgamated 1989.

Adopted by the Documentary Committee of The Japan Shipping Exchange, Inc., Tokyo

Copyright, published by The Baltic and International Maritime Council (BIMCO), Copenhagen, September 1989

SECOND ORIGINAL

(continued)

Received 11/06/03 04:53PM 14:56 on RightFAX line 11 for OARCHIVE WORKSRV6 printed INC3FAA7FF44729 on 11/06/2003 05:1 * Pg 23/26
06/11/03 THU 20:01 FAX 023

To be advised by Owners.

The Charterers will pay during May 1997 the amount of USD 175,000 (United States Dollars One Hundred and Seventy Five Thousand) which will be held in an Escrow account with the First National Bank of Maryland, Baltimore USA, in an interest bearing account and to be released back to the Charterers in three equal amounts at the end of the first ... third year.

25. Mortgage(s), if any, (state whether Cl. 11(a) or (b) applies; if 11(b) applies state date of Deed(s) of Covenant and name of Mortgagee(s)/Place of business) (Cl. 11)

11(b) applies. Copy of mortgage to be attached.

First National Bank of Maryland, Baltimore, U.S.A.

27. Insurance (marine and war risks) (state value acc. to Cl. 12(f) or, if applicable, acc. to Cl. 13(k)) (also state if Cl. 13 applies)

USD 14,000,000

28. Additional insurance cover, if any, for Owners' account limited to (Cl. 12(b)) or, if applicable (Cl. 13(g))

29. Additional insurance cover, if any, for Charterers' account limited to (Cl. 12(b)) or, if applicable, (Cl. 13(g))

USD 1,000,000

30. Latent defects (only to be filled in if period other than stated in Cl. 2)

N/A

31. War cancellation (indicate countries agreed) (Cl. 24)

U.S.A., Japan, United Kingdom, France.

32. Brokerage commission and to whom payable (Cl. 25)

1.75 Percent Total
1.25 Percent address commission
0.50 percent to Simpson Spence & Young Shipbrokers Ltd., London
(Both commissions deductible from the hire)

33. Law and arbitration (state 26.1, 26.2, or 26.3 of Cl. 26 as agreed; if 26.3 agreed also state place of arbitration) (Cl. 26)

English Law / Arbitration London

34. Number of additional clauses covering special provisions, if agreed

Three (3)

35. Newbuilding Vessel (indicate with "yes" or "no" whether Part III applies) (optional)

36. Name and place of Builders (only to be filled in if Part III applies)

37. Vessel's Yard Building No. (only to be filled in if Part III applies)

38. Date of Building Contract (only to be filled in if Part III applies)

39. Hire/Purchase agreement (indicate with "yes" or "no" whether Part IV applies) (optional)

40. Bareboat Charter Registry (indicate with "yes" or "no" whether Part V applies) (optional)

41. Flag and Country of the Bareboat Charter Registry (only to be filled in if Part V applies)

42. Country of the Underlying Registry (only to be filled in if Part V applies)

PREAMBLE. – It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall include PART I and PART II. In the event of a conflict of conditions, the provisions of PART I shall prevail over those of PART II to the extent of such conflict but no further. It is further mutually agreed that PART III and/or PART IV and/or PART V shall only apply and shall only form part of this Charter if expressly agreed and stated in the Boxes 35, 39 and 40. If PART III and/or PART IV and/or PART V apply, it is further mutually agreed that in the event of a conflict of conditions, the provisions of PART I and PART II shall prevail over those of PART III and/or PART IV and/or PART V to the extent of such conflict but no further.

Signature (Owners)

CHRISTOPHER S. THOMAS
ATTORNEY-IN-FACT

Signature (Charterers)

Ocean Cool Shipholding S.A.

By: Shoichi Noguchi
Title: Director

Printed and sold by Fr. G. Knudtzons Bogtrykkeri A/S, 55 Toldbodgade, DK-1253 Copenhagen K, Telefax +45 33 93 11 84
by authority of The Baltic and International Maritime Council (BIMCO), Copenhagen

Received 11/06/2003 04:53PM 14:56 on RightFAX line 11 for OARCHIVE WORKSRV6 printed INC3FAA7FF44729 on 11/06/2003 05:1 * Pg 24/26
06/11/03 THU 20:02 FAX 024

1. Definitions

In this Charter, the following terms shall have the meanings hereby assigned to them:

"The Owners" shall mean the person or company registered as Owners of the Vessel.

"The Charterers" shall mean the Bareboat Charterers and shall not be construed to mean a time charterer or a voyage charterer.

2. Delivery (not applicable to newbuilding vessels)

place indicated in Box 13, in such ready berth as the Charterers may direct.

The Owners shall before and at the time of delivery exercise due diligence to make the Vessel seaworthy and in every respect ready in hull, machinery and equipment for service under this Charter. The Vessel shall be properly documented at time of delivery.

The delivery to the Charterers of the Vessel and the taking over of the Vessel by the Charterers shall constitute a full performance by the Owners of all the Owners' obligations under Clause 2, and thereafter the Charterers shall not be entitled to make or assert any claim against the Owners on account of any conditions, representations or warranties expressed or implied with respect to the Vessel but the Owners shall be responsible for repairs or renewals occasioned by latent defects in the Vessel, her machinery or appurtenances, existing at the time of delivery under the Charter, provided such defects have manifested themselves within 18 months after delivery, unless otherwise

Back to back with attached Memorandum of Agreement

3. Time for Delivery (not applicable to newbuilding vessels)

the Charterers' consent.

Unless otherwise agreed in Box 17, the Owners to give the Charterers not less than 30 running days' preliminary and not less than 14 days' definite notice of the date on which the Vessel is expected to be ready for delivery.

The Owners to keep the Charterers closely advised of possible changes in the Vessel's position.

As per attached Memorandum of Agreement

4. Cancelling (not applicable to newbuilding vessels)

Box 15, the Charterers to have the option of cancelling this Charter without prejudice to any claim the Charterers may otherwise have on the Owners under the Charter.

If it appears that the Vessel will be delayed beyond the cancelling date, the Owners shall, as soon as they are in a position to state with reasonable certainty the day on which the Vessel should be ready, give notice thereof to the Charterers asking whether they will exercise their option of cancelling, and the option must then be declared within one hundred and sixty-eight (168) hours of the receipt by the Charterers of such notice. If the Charterers do not then exercise their option of cancelling, the seventh day after the readiness date stated in the Owners' notice shall be regarded as a new cancelling date for the purpose of this Clause.

As per attached Memorandum of Agreement

5. Trading Limits

The Vessel shall be employed in lawful trades for the carriage of suitable lawful merchandise within the trading limits indicated in Box 20.

The Charterers undertake not to employ the Vessel or suffer the Vessel to be employed otherwise than in conformity with the terms of the instruments of insurance (including any warranties expressed or implied therein) without first obtaining the consent to such employment of the Insurers and complying with such requirements as to extra premium or otherwise as the Insurers may prescribe. If required, the Charterers shall keep the Owners and the Mortgagees advised of the intended employment of the Vessel.

The Charterers also undertake not to employ the Vessel or suffer her employment in any trade or business which is forbidden by the law of any country to which the Vessel may sail or is otherwise illicit or in carrying illicit or prohibited goods or in any manner whatsoever which may render her liable to condemnation, destruction, seizure or confiscation.

Notwithstanding any other provisions contained in this Charter it is agreed that nuclear fuels or radioactive products or waste are specifically excluded from the cargo permitted to be loaded or carried under this Charter. This exclusion does not apply to radio-isotopes used or intended to be used for any industrial, commercial, agricultural, medical or scientific purposes provided the Owners' prior approval has been obtained to loading thereof.

appoint a joint/independent surveyor

6. Surveys (not applicable to newbuilding vessels)

Survey on Delivery and Redelivery. – The Owners and Charterers shall for the purpose of determining and agreeing in writing the condition of the Vessel at the time of delivery and redelivery hereunder. The Owners shall bear all expenses of the On-Survey including loss of time, if any, and the Charterers shall bear all expenses of the Off-Survey including loss of time, if any, at the rate of hire per day or pro rata, also including in each case the cost of any docking and undocking, if required, in connection herewith.

7. Inspection

but without interferring with the vessel's operation

Inspection. – The Owners shall have the right at any time to inspect or survey the Vessel or instruct a duly authorised surveyor to carry out such survey on their behalf to ascertain the condition of the Vessel and satisfy themselves that the Vessel is being properly repaired and maintained. Inspection or survey in dry-dock shall be made only when the Vessel shall be in dry-dock for the Charterers' purpose. However, the Owners shall have the right to require the Vessel to be dry-docked for inspection if the Charterers are not docking her at normal classification intervals. The fees for such inspection or survey shall in the event of the Vessel being found to be in the condition provided in Clause 9 of this Charter be payable by the Owners and shall be paid by the Charterers only in the event of the Vessel being found to require repairs or maintenance in order to achieve the condition so provided. All time taken in respect of inspection, survey or repairs shall count as time on hire and shall form part of the Charter period.

The Charterers shall also permit the Owners to inspect the Vessel's log books whenever requested and shall whenever required by the Owners furnish them with full information regarding any casualties or other accidents or damage to the Vessel. For the purpose of this Clause, the Charterers shall keep the Owners advised of the intended employment of the Vessel.

The Owners have the right to place a riding inspector at all times onboard with full access to technical and commercial information pertaining to Owners.

maintained to the on-hire survey standard, fair wear and tear excepted.

the opinion of an U.K. Class Surveyor shall be conclusive

Used by vouchers
... remaining on board at the last supplied prices

8. Inventories and Consumable Oil and Stores

A complete inventory of the Vessel's entire equipment, outfit, appliances and of all consumable stores on board the Vessel shall be made by the Charterers in conjunction with the Owners on delivery and again on redelivery of the Vessel. The Charterers and the Owners, respectively, shall at the time of delivery and redelivery take over and pay for all

9. Maintenance and Operation

(a) The Vessel shall during the Charter period be in the full possession and at the absolute disposal for all purposes of the Charterers and under their complete control in every respect. The Charterers shall maintain the Vessel, her machinery, boilers, appurtenances and spare parts in a good state of repair, in efficient operating condition and in accordance with good commercial maintenance practice and, except as provided for in Clause 13 (l), they shall keep the Vessel with unexpired classification of the class indicated in Box 10 and with other required certificates in force at all times.

The Charterers to take immediate steps to have the necessary repairs done within a reasonable time failing which the Owners shall have the right of withdrawing the Vessel from the service of the Charterers without noting any protest and without prejudice to any claim the Owners may otherwise have against the Charterers under the Charter.

Unless otherwise agreed, in the event of any improvement, structural changes or expensive new equipment becoming necessary for the continued operation of the Vessel by reason of new class requirements or by compulsory legislation costing more than 5 per cent. of the Vessel's marine insurance value as stated in Box 27, then the extent, if any, to which the rate of hire shall be varied and the ratio in which the cost of compliance shall be shared between the parties concerned in order to achieve a reasonable distribution thereof as between the Owners and the Charterers having regard, inter alia, to the length of the period remaining under the Charter, shall in the absence of agreement, be referred to arbitration according to Clause 26.

The Charterers are required to establish and maintain financial security or responsibility in respect of oil or other pollution damage as required by any government, including Federal, state or municipal or other division or authority thereof, to enable the Vessel, without penalty or charge, lawfully to enter, remain at, or leave any port, place, territorial or contiguous waters of any country, state or municipality in performance of this Charter without any delay. This obligation shall apply whether or not such requirements have been lawfully imposed by such government or division or authority thereof.

The Charterers shall make and maintain all arrangements by bond or otherwise as may be necessary to satisfy such requirements at the Charterers' sole expense and the Charterers shall indemnify the Owners against all consequences whatsoever (including loss of time) for any failure or inability to do so.

TOVALOP SCHEME. (Applicable to all tank vessels only). – The Charterers are required to enter the Vessel under the TOVALOP SCHEME or under any similar compulsory scheme upon delivery under this Charter and to maintain her so during the currency of this Charter.

(b) The Charterers shall at their own expense and by their own procurement man, victual, navigate, operate, supply, fuel and repair the Vessel whenever required during the Charter period and they shall pay all charges and expenses of every kind and nature whatsoever incidental to their use and operation of the Vessel under this Charter, including any foreign general municipality and/or state taxes. The Master, officers and crew of the Vessel shall be the servants of the Charterers for all purposes whatsoever, even if for any reason appointed by the Owners.

Charterers shall comply with the regulations regarding officers and crew in force in the country of the Vessel's flag or any other applicable law.

(c) During the currency of this Charter, the Vessel shall retain her present name as indicated in Box 5 and shall remain under and fly the flag as indicated in Box 5. Provided, however, that the Charterers shall have the liberty to paint the Vessel in their own colours, install and display their funnel insignia and fly their own house flag. Painting and re-painting, instalment and re-instalment to be for the Charterers' account and time used thereby to count as time on hire.

(d) The Charterers shall make no structural changes in the Vessel or changes in the machinery, boilers, appurtenances or spare parts thereof without in each instance first securing the Owners' approval thereof. If the Owners so agree, the Charterers shall, if the Owners so require, restore the Vessel to its former condition before the termination of the Charter.

(e) The Charterers shall have the use of all outfit, equipment, and appliances on board the Vessel at the time of delivery, provided the same or their substantial equivalent shall be returned to the Owners on redelivery in the same good order and condition as when received, ordinary wear and tear excepted. The Charterers shall from time to time during the Charter period replace such items of equipment as shall be so damaged or worn as to be unfit for use. The Charterers are to procure that all repairs to or replacement of any damaged, worn or lost parts or equipment be effected in such manner (both as regards workmanship and quality of materials) as not to diminish the value of the Vessel. The Charterers have the right to fit additional equipment at their expense and risk but the Charterers shall remove such equipment at the end of the period if requested by the Owners.

Any equipment including radio equipment on hire on the Vessel at time of delivery shall be kept and maintained by the Charterers and the Charterers shall assume the obligations and liabilities of the Owners under any lease contracts in connection therewith and shall reimburse the Owners for all expenses incurred in connection therewith, also for any new equipment required in order to comply with radio regulations.

(f) The Charterers shall dry-dock the Vessel and clean and paint her underwater parts whenever the same may be necessary.

10. Hire

rate times day

(a) The Charterers shall pay to the Owners for the hire of the Vessel at the per calendar month as indicated in Box 21 commencing on and from the date and hour of her delivery to the Charterers and at and after the agreed for any part of a month. Hire to continue until the date and hour when the Vessel is redelivered by the Charterers to her Owners.

(b) Payment of Hire, except for the first and last month's Hire, if sub-clause (c) of this Clause is applicable, shall be made in cash without discount every month in advance on the first day of each month in the currency and in the manner indicated in Box 23 and at the place mentioned in Box 24.

Received 11/06/2003 04:53PM 14:56 on RightFAX line 11 for OARCHIVE WORKSRV6 printed INC3FAA7FF44729 on 11/06/2003 05:1 * Pg 25/26
06/11/03 THU 20:03 FAX 025

26/27

PART II
"BARECON 89" Standard Bareboat Charter

(c) Payment of Hire for the first and last month's Hire if less than a full month shall be calculated proportionally according to the number of days in the particular calendar month and advance payment to be effected accordingly.

(d) Should the Vessel be lost or missing, Hire to cease from the date and time when she was lost or last heard of. Any Hire paid in advance to be adjusted accordingly.

(e) Time shall be of the essence in relation to payment of Hire hereunder. In default of payment beyond a period of seven running days, the Owners shall have the right to withdraw the Vessel from the service of the Charterers without noting any protest and without interference by any court or any other formality whatsoever, and shall, without prejudice to any other claim the Owners may otherwise have against the Charterers under the Charter, be entitled to damages in respect of all costs and losses incurred as a result of the Charterers' default and the ensuing withdrawal of the Vessel.

(f) Any delay in payment of Hire shall entitle the Owners to an interest at the rate per annum as agreed in Box 22. If Box 22 has not been filled in the current market rate in the country where the Owners have their Principal Place of Business shall apply.

Mortgage

(a) ~~[illegible]~~

(b) ~~The Vessel chartered under this Charter is financed by a mortgage~~ according to the Deed(s) of Covenant annexed to this Charter and as stated in Box 26. By their counter-signature on the Deed(s) of Covenant, the Charterers undertake to have acquainted themselves with all terms, conditions and provisions of the said Deed(s) of Covenant. The Charterers undertake that they will comply with all such instructions or directions in regard to the employment, insurances, repairs and maintenance of the Vessel, etc., as laid down in the Deed(s) of Covenant or as may be directed from time to time during the currency of the Charter by the Mortgagee(s) in ~~conformity with the Deed(s) of Covenant.~~

(c) ~~[illegible]~~

~~[illegible]~~

*) Clauses 11 (a) and 11 (b) are alternatives; indicate alternative agreed in Box 26. *See opposite page

Insurance and Repairs

(a) During the Charter period the Vessel shall be kept insured by the Charterers at their expense against marine, war and Protection and Indemnity risks in such form as the Owners shall in writing approve, which approval shall not be unreasonably withheld. Such marine, war and P. and I. insurances shall be arranged by the Charterers to protect the interests of both the Owners and the Charterers and mortgagees (if any), and the Charterers shall be at liberty to protect under such insurances the interests of any managers they may appoint. All insurance policies shall be in the joint names of the Owners and the Charterers as their interests may appear.

If the Charterers fail to arrange and keep any of the the insurances provided for under the provisions of sub-clause (a) above in the manner described therein, the Owners shall notify the Charterers whereupon the Charterers shall rectify the position within seven running days, failing which Owners shall have the right to withdraw the Vessel from the service of the Charterers without prejudice to any claim the Owners may otherwise have against the Charterers.

The Charterers shall, subject to the approval of the Owners and the Underwriters, effect all insured repairs and shall undertake settlement of all costs in connection with such repairs as well as insured charges, expenses and liabilities (reimbursement to be secured by the Charterers from the Underwriters) to the extent of coverage under the insurances herein provided for.

The Charterers also to remain responsible for and to effect repairs and settlement of costs and expenses incurred thereby in respect of all other repairs not covered by the insurances and/or not exceeding any possible franchise(s) or deductibles provided for in the insurances.

All time used for repairs under the provisions of sub-clause (a) of this Clause and for repairs of latent defects according to Clause 2 above including any deviation shall count as time on hire and shall form part of the Charter period.

If the conditions of the above insurances permit additional insurance to be placed by the parties, such cover shall be limited to the amount for each party set out in Box 28 and Box 29, respectively. The Owners or the Charterers as the case may be shall immediately furnish the other party with particulars of any additional insurance effected, including copies of any cover notes or policies and the written consent of the insurers of any such required insurance in any case where the consent of such insurers is necessary.

Should the Vessel become an actual, constructive, compromised or agreed total loss under the insurances required under sub-clause (a) of this Clause, all insurance payments for such loss shall be paid to the Mortgagee, if any, in the manner described in the Deed(s) of Covenant, who shall distribute the moneys between themselves, the Owners and the Charterers according to their respective interests. The Charterers undertake to notify the Owners and the Mortgagee, if any, of any occurrences in consequence of which the Vessel is likely to become a Total Loss as defined in this Clause.

If the Vessel becomes an actual, constructive, compromised or agreed total loss under the insurances arranged by the Charterers in accordance with sub-clause (a) of this Clause, this Charter shall terminate as of the date of such loss.

The Owners shall upon the request of the Charterers, promptly execute such documents as may be required to enable the Charterers to abandon the Vessel to insurers and claim a constructive total loss.

For the purpose of insurance coverage against marine and war risks under the provisions of sub-clause (a) of this Clause, the value of the Vessel is the sum indicated in Box 27.

~~Insurance, Repairs and Classification~~

~~[illegible]~~ Box 12 shall be considered deleted.

~~During the Charter period the Vessel shall be kept insured by the Owners at their expense against marine and war risks under the form of policy or policies attached hereto. The Owners and/or insurers shall not have any right of recovery or subrogation against the Charterers on account of loss of or any damage to the Vessel or her machinery or appurtenances covered by such insurance, or on account of payments made to discharge claims against or liabilities of the Vessel or the Owners covered by such insurance. All insurance policies shall be in the joint names of the Owners and the Charterers as their interests may appear.~~

orers to place satisfactory to Owners, insurance
Owners and the

~~Charterers at their expense against Protection and Indemnity risks in such~~ form as the Owners shall in writing approve which approval shall not be unreasonably withheld. If the Charterers fail to arrange and keep any of the insurances provided for under the provisions of sub-clause (b) in the manner described therein, the Owners shall notify the Charterers whereupon the Charterers shall rectify the position within seven running days, failing which the Owners shall have the right to withdraw the Vessel from the service of the Charterers without prejudice to any claim the Owners may otherwise have against the Charterers.

(c) In the event that any act or negligence of the Charterers shall vitiate any of the insurance herein provided, the Charterers shall pay to the Owners all losses and indemnify the Owners against all claims and demands which would otherwise have been covered by such insurance.

(d) The Charterers shall, subject to the approval of the Owners or Owners' Underwriters, effect all insured repairs, and the Charterers shall undertake settlement of all miscellaneous expenses in connection with such repairs as well as all insured charges, expenses and liabilities, to the extent of coverage under the insurances provided for under the provisions of sub-clause (a) of this Clause. The Charterers to be secured reimbursement through the Owners' Underwriters for such expenditures upon presentation of accounts.

(e) The Charterers to remain responsible for and to effect repairs and settlement of costs and expenses incurred thereby in respect of all other repairs not covered by the insurances and/or not exceeding any possible franchise(s) or deductibles provided for in the insurances.

(f) All time used for repairs under the provisions of sub-clause (d) and (e) of this Clause and for repairs of latent defects according to Clause 2 above, including any deviation, shall count as time on hire and shall form part of the Charter period.

The Owners shall not be responsible for any expenses as are incident to the use and operation of the Vessel for such time as may be required to make such repairs.

(g) If the conditions of the above insurances permit additional insurance to be placed by the parties such cover shall be limited to the amount for each party set out in Box 28 and Box 29, respectively. The Owners or the Charterers as the case may be shall immediately furnish the other party with particulars of any additional insurance effected, including copies of any cover notes or policies and the written consent of the insurers of any such required insurance in any case where the consent of such insurers is necessary.

(h) Should the Vessel become an actual, constructive, compromised or agreed total loss under the insurances required under sub-clause (a) of this Clause, all insurance payments for such loss shall be paid to the Owners, who shall distribute the moneys between themselves and the Charterers according to their respective interests.

(i) If the Vessel becomes an actual, constructive, compromised or agreed total loss under the insurances arranged by the Owners in accordance with sub-clause (a) of this Clause, this Charter shall terminate as of the date of such loss.

(j) The Charterers shall upon the request of the Owners, promptly execute such documents as may be required to enable the Owners to abandon the Vessel to insurers and claim a constructive total loss.

(k) For the purpose of insurance coverage against marine and war risks under the provisions of sub-clause (a) of this Clause, the value of the Vessel is the sum indicated in Box 27.

(l) Notwithstanding anything contained in Clause 9 (a), it is agreed that under the provisions of Clause 12, if applicable, the Owners shall keep the Vessel ~~with unexpired classification in force at all times during the Charter period.~~

14. Redelivery

The Charterers shall at the expiration of the Charter period redeliver the Vessel at a safe and ice-free port or place as indicated in Box 16. The Charterers shall give the Owners not less than 30 running days' preliminary and not less than 14 days' definite notice of expected date, range of ports of redelivery or port or place of redelivery. Any changes thereafter in Vessel's position shall be notified immediately to the Owners.

Should the Vessel be ordered on a voyage by which the Charter period may be exceeded the Charterers to have the use of the Vessel to enable them to complete the voyage, provided it could be reasonably calculated that the voyage would allow redelivery about the time fixed for the termination of the Charter.

The Vessel shall be redelivered to the Owners in the same or as good structure, state, condition and class as that in which she was delivered, fair wear and tear not affecting class excepted.

The Vessel upon redelivery shall have her survey cycles up to date and class certificates ~~valid for at least the number of months agreed~~ in Box 17.

15. Non-Use and Indemnity

to be "as is" as agreed

The Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which might have priority over the title and interest of the Owners in the Vessel.

The Charterers further agree to fasten in the Vessel in a conspicuous place and to keep so fastened during the Charter period a notice reading as follows:

"This Vessel is the property of (name of Owners). It is under charter to (name of Charterers) and by the terms of the Charter Party neither the Charterers nor the Master have any right, power or authority to create, incur or permit to be imposed on the Vessel any lien whatsoever."

The Charterers shall indemnify and hold the Owners harmless against any lien of whatsoever nature arising upon the Vessel during the Charter period while she is under the control of the Charterers, and against any claims against the Owners arising out of or in relation to the operation of the Vessel by the Charterers. Should the Vessel be arrested by reason of claims or liens arising out of her operation hereunder by the Charterers, the Charterers shall at their own expense take all reasonable steps to secure that within a reasonable time the Vessel is released and at their own expense put up bail to secure release of the Vessel.

16. Lien

The Owners to have a lien upon all cargoes and sub-freights belonging to the Charterers and any Bill of Lading freight for all claims under this Charter, and the Charterers to have a lien on the Vessel for all moneys paid in advance and not earned.

17. Salvage

All salvage and towage performed by the Vessel shall be for the Charterers' benefit and the cost of repairing damage occasioned thereby shall be borne by the Charterers.

... Charterers shall indemnify the Owners against any sums whatsoever which the Owners shall become liable to pay and shall pay in consequence of the Vessel becoming a wreck or obstruction to navigation.

27/97

19. General Average

General Average, if any, shall be adjusted according to the York-Antwerp Rules 1974 or any subsequent modification thereof current at the time of the casualty.

The Charter Hire not to contribute to General Average.

20. Assignment and Sub-Demise

The Charterers shall not assign this Charter nor sub-demise the Vessel except with the prior consent in writing of the Owners which shall not be unreasonably withheld and subject to such terms and conditions as the Owners shall approve.

21. Bills of Lading

The Charterers are to procure that all Bills of Lading issued for carriage of goods under this Charter shall contain a Paramount Clause incorporating any legislation relating to Carrier's liability for cargo compulsorily applicable in the trade; if no such legislation exists, the Bills of Lading shall incorporate the British Carriage of Goods by Sea Act. The Bills of Lading shall also contain the amended New Jason Clause and the Both-to-Blame Collision Clause.

The Charterers agree to indemnify the Owners against all consequences or liabilities arising from the Master, officers or agents signing Bills of Lading or other documents.

22. Bank Guarantee

The Charterers undertake to furnish, before delivery of the Vessel, a first class bank guarantee or bond in the sum and at the place as indicated in Box 25 as guarantee for full performance of their obligations under this Charter.
*(Optional, only to apply if Box 25 filled in).*

23. Requisition/Acquisition

(a) In the event of the Requisition for Hire of the Vessel by any governmental or other competent authority (hereinafter referred to as "Requisition for Hire") irrespective of the date during the Charter period when "Requisition for Hire" may occur and irrespective of the length thereof and whether or not it be for an indefinite or a limited period of time, and irrespective of whether it may or will remain in force for the remainder of the Charter period, this Charter shall not be deemed thereby or thereupon to be frustrated or otherwise terminated and the Charterers shall continue to pay the stipulated hire in the manner provided by this Charter until the time when the Charter would have terminated pursuant to any of the provisions hereof always provided however that in the event of "Requisition for Hire" any Requisition Hire or compensation received or receivable by the Owners shall be payable to the Charterers during the remainder of the Charter period or the period of the "Requisition for Hire" whichever be the shorter.

The Hire under this Charter shall be payable to the Owners from the same time as the Requisition Hire is payable to the Charterers.

(b) In the event of the Owners being deprived of their ownership in the Vessel by any Compulsory Acquisition of the Vessel or requisition for title by any governmental or other competent authority (hereinafter referred to as "Compulsory Acquisition"), then, irrespective of the date during the Charter period when "Compulsory Acquisition" may occur, this Charter shall be deemed terminated as of the date of such "Compulsory Acquisition". In such event Charter Hire to be considered as earned and to be paid up to the date and time of such "Compulsory Acquisition".

(a) The Vessel unless the consent of the Owners be first obtained not to be ordered nor continue to any place or on any voyage nor be used on any service which will bring her within a zone which is dangerous as the result of any actual or threatened act of war, war, hostilities, warlike operations, acts of piracy or of hostility or malicious damage against this or any other vessel or its cargo by any person, body or State whatsoever, revolution, civil war, civil commotion or the operation of international law, nor be exposed in any way to any risks or penalties whatsoever consequent upon the imposition of Sanctions, nor carry any goods that may in any way expose her to any risks of seizure, capture, penalties or any other interference of any kind whatsoever by the belligerent or fighting powers or parties or by any Government or Ruler.

(b) The Vessel to have liberty to comply with any orders or directions as to departure, arrival, routes, ports of call, stoppages, destination, delivery or in any other wise whatsoever given by the Government of the nation under whose flag the Vessel sails or any other Government or any person (or body) acting or purporting to act with the authority of such Government or by any committee or person having under the terms of the war risks insurance on the Vessel the right to give any such orders or directions.

(c) In the event of outbreak of war (whether there be a declaration of war or not) between any two or more of the countries as stated in Box 31, both the Owners and the Charterers shall have the right to cancel this Charter, whereupon the Charterers shall redeliver the Vessel to the Owners in accordance with Clause 14, if she has cargo on board after discharge thereof at destination, or if debarred under this Clause from reaching or entering it at a near open and safe port as directed by the Owners, or if she has no cargo on board, at the port at which she then is or if at sea at a near open and safe port as directed by the Owners. In all cases hire shall continue to be paid in accordance with Clause 10 and except as aforesaid all other provisions of this Charter shall apply until redelivery.

directly affecting performance of this Charter Par

25. Commission

The Owners to pay a commission at the rate indicated in Box 32 to the Brokers named in Box 32 on any Hire paid under the Charter but in no case less than is necessary to cover the actual expenses of the Brokers and a reasonable fee for their work. If the full Hire is not paid owing to breach of Charter by either of the parties the party liable therefor to indemnify the Brokers against their loss of commission.

Should the parties agree to cancel the Charter, the Owners to indemnify the Brokers against any loss of commission but in such case the commission not to exceed the brokerage on one year's Hire.

26. Law and Arbitration

*) 26.1. This Charter shall be governed by English law and any dispute arising out of this Charter shall be referred to arbitration in London, one arbitrator being appointed by each party, in accordance with the Arbitration Acts 1950 and 1979 or any statutory modification or re-enactment thereof for the time being in force. On the receipt by one party of the nomination in writing of the other party's arbitrator, that party shall appoint their arbitrator within fourteen days, failing which the decision of the single Arbitrator appointed shall apply. If two Arbitrators properly appointed shall not agree they shall appoint an umpire whose decision shall be final.

*) ~~26.2. Should any dispute arise out of this Charter, the matter in dispute shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them shall be final, and for purpose of enforcing any award, this agreement may be made a rule of the Court.~~

~~The arbitrators shall be members of the Society of Maritime Arbitrators, Inc. of New York and the proceedings shall be conducted in accordance with the rules of the Society.~~

*) ~~26.3. Any dispute arising out of this Charter shall be referred to arbitration at the place indicated in Box 33, subject to the law and procedures applicable there.~~

~~26.4. If Box 33 in Part I is not filled in, sub-clause 26.1. of this Clause shall apply.~~

*) ~~26.2 and 26.3 are alternatives; indicate alternative agreed in Box 33.~~

Additional Clauses:

27. The Charterers to report monthly to the Owners, giving a list of any outstanding operational payments owing in relation to the vessel. Such outstandings are not to exceed U.S. $100,000 (One Hundred Thousand Dollars) at any time, except in the case of drydocking or major repairs, when Charterers are entitled to take advantage of yard's standard payment terms (in such a case a copy of the yard's invoice will be forwarded to the Owners).

28. Crewing to be effected by Magsaysay Lines or other reputable Crewing Agency in Charterers' option.

29. The Bareboat rate for the 6th & 7th years will be determined by a market timecharter rate, established by three independent Brokers - SST; Klaveness or Oslo and Ernest Russ of Hamburg. The Bareboat rate will be the agreed timecharter rate, less running costs of USD 3,605 for 6th year and USD 3,710 for the 7th year.

* 11. Mortgage

(b) The vessel chartered under this charter is to be financed by a mortgage as stated in Box 26. The Charterers undertake to sign a Tripartite Agreement of even date with this charter, made between themselves, the Owners and the mortgagee, and by such signature to acquaint themselves with all terms, conditions and provisions of the said Tripartite Agreement. The Charterers undertake that they will comply with all instructions or directions in regard to the employment, insurances, repairs and maintenance of the vessel etc., as laid down in the Tripartite Agreement or as may be directed from time to time during the currency of the charter by the mortgagee in conformity with the terms of the Tripartite Agreement.