

## OPTIONS AGREEMENT

**BETWEEN**

A) MARITIME FINANCIAL HOLDINGS SERVICES CORP. of Liberia ("MFHSC")

**AND**

B) KEYMAX MARITIME CO., LTD. ("Keymax"), of 6F Toranomon 33 Mori Building, 3-8-21 Toranomon, Minato-Ku, Tokyo, a Japanese Company.

WHEREAS Ocean Trade S.A., a Liberian Company, ("Ocean Trade") is the owner of three Panamanian flag vessels, "Ocean Reyna", "Ocean Leo" and "Kowhai", (the Ocean Trade Owned Vessels) on long term Bareboat Charters (the "Bareboat Charters") to Japanese Charterers (the "Original Charterers") and the Original Charterers have sub-chartered out these vessels, in their own name as Owners, under period time-charters (the "Time-Charters") to other Japanese Charterers (Eastern Car Liner Ltd., for "Ocean Leo" and "Ocean Reyna" and Nissui Shipping Corp. (now renamed Tokyo Reefer Chartering) for "Kowhai") (the "Time-Charterers"); and

WHEREAS Keymax is willing to take over, in place of the Original Charterers, as Owners of the Ocean Trade Owned Vessels in the Time-charters and offer to Ocean Trade exactly back-to-back time-charter parties on the same basis as the Time-Charters without any deductions and agree that all receivables due to the Original Charterers, if any, to be paid to Ocean Trade, provided approval is obtained from the Time-Charterers, but in all case pursuant to immediate arrangements made only with the Original Charterers, and provided the Ocean Trade Owners agree to accept liability for payment of a settled amount fraction of Outstanding Debts and Docking Costs to Keymax as described below; and

WHEREAS Ocean Trade (which is the beneficial Owner of the Ocean Trade Owners) and Ocean Trade is willing to accommodate Keymax in their above wishes; and

WHEREAS MFHSC is joint and equal shareholder with MARYPORT NAVIGATION CORP. of Liberia ("MNC") in Ocean Trade; and

WHEREAS MNC has granted an option to MFHSC to purchase its interest in Ocean Trade and to negotiate a settlement agreement between the Original Charterers and Ocean Trade, which MFHSC has successfully completed in the form of the Settlement Agreement of even date;

IN THE PREMISES and against the mutual consideration agreed to be exchanged by the parties to this agreement, IT IS HEREBY AGREED THAT:

1. i) Recognising that MFHSC has lost substantial amounts during earlier trading of the Ocean Trade Owned Vessels, while MNC will receive a cash payment from MFHSC for its interest, Keymax will give MFHSC the following purchase options and they undertake to supply MFHSC with the proper consent

50

of the registered owners of the relevant vessels within 30 days from the date of this Agreement signing:

a) **M.V. "Ocean Daisy"**
At a price equating to the outstanding bank debt remaining on the vessel under the Loan Agreement with Orix Corporation or its subsidiary plus US$100,000, and less any dividends received by Keymax plus an amount relating to the Second Mortgage in favour of Sumitomo Mitsui Banking Corporation (SMBC) as presented in Appendix 1.

b) **M.V. "Ocean Sampaguita"**
At a price equating to the outstanding bank debt remaining on the vessel under the Loan Agreement with Orix Corporation or its subsidiary plus US$150,000, and less any dividends received by Keymax as presented in Appendix 1.

c) **M.V. "Ocean Ellie"**
At a price equating to the outstanding bank debt remaining on the vessel under the Loan Agreement with the SMBC or its subsidiary plus US$650,000 and less any dividends received by Keymax as presented in Appendix 1.

d) **M.V. "Ocean Phoenix" and "Ocean Harmony"**
At a price equating to the outstanding bank debt remaining on the vessel under the Loan Agreement with SMBC or its subsidiary plus an amount equivalent to the penalty to be paid for early termination of the Loan Agreement as presented in Appendix 1.

e) **M.V. Southern Odyssey**
At a price equating to the best available option from the registered owners of this vessel plus $55,000

The above options (or any of them) may be exercised at any time during the 4-year period commencing from the date of this Agreement (except for "Ocean Sampaguita", and "Ocean Phoenix" and "Ocean Harmony" for which see ii) below) upon receipt of written notice of the exercise of such purchase option(s) by MFHSC, Keymax will arrange delivery of the vessel(s) as promptly as possible, on normal and straightforward Japanese sale terms or on bareboat-hire purchase charter-party terms, to be mutually agreed, with transfer of the attached time-charters. In case of time-charter transfer, Keymax will maintain technical management and time-charters will be executed on 'back-to-back' basis.

ii) In the case of "Ocean Daisy", "Ocean Sampaguita", "Ocean Phoenix" and "Ocean Harmony" the option may be exercised respectively only in the 21, 12, 36 and 36 month period commencing from the date of this Agreement, and for the 12 month period thereafter Keymax will give MFHSC first refusal to buy such vessels at whatever price and on whatever terms they can obtain from a third bona fide party buyer on the open market. The option of the "Ocean Ellie" cannot be exercised for the first 12 months.

2) This Agreement shall be governed by English law and all disputes or claims, if any, arising out of it or in connection with it shall be resolved exclusively by

arbitration. The parties agree and irrevocably also submit any and all such disputes to London Arbitration in the U.K. The London Maritime Arbitration Association Rules shall govern any and all arbitration proceedings.

3) For purposes of notices and legal proceedings (a) Ocean Trade S.A. and related to it parties irrevocably appoint Simpson Spence & Young Shipbrokers Ltd., London, as their agent in London and (b) Keymax hereby irrevocably appoint Simpson Spence & Young Shipbrokers Ltd., London, as their London agent.

Both parties may nominate a substitute agent for service in London; however such appointment shall become effective only five (5) business days after written notice to the other parties.

This 31st day of December 2001

| For and on behalf of: | For and on behalf of: |
|---|---|
| A. Maritime Financial Holdings Services Corp. | B. Keymax Maritime Co., Ltd. |
| ____________________ | ____________________ |
| By : | By : |
| Title : Director | Title: Director |

52



## SETTLEMENT AGREEMENT

**BETWEEN**

A) The parties of the first part:

a) PILLSBURG NAVIGATION S.A. of Panama, owners of the Panamanian flag vessel "OCEAN REYNA".

b) STERLING NAVIGATION S.A. of Panama, owners of the Panamanian flag vessel "OCEAN LEO".

c) PANAPORT SHIPPING S.A. of Panama, owners of the Panamanian flag vessel "KOWHAI".

(each one and all of these owners hereinafter called the "Ocean Trade Owners" and each and all above vessels hereinafter called "Ocean Trade Owned Vessels")

d) OCEAN TRADE S.A. of Liberia ("Ocean Trade")

**AND**

B) KEYMAX MARITIME CO., LTD. ("Keymax"), of 6F Toranomon 33 Mori Building, 3-8-21 Toranomon, Minato-Ku, Tokyo, a Japanese Company.

WHEREAS the Ocean Trade Owners currently have the Ocean Trade Owned Vessels on long term Bareboat Charters (the "Bareboat Charters") to Japanese Charterers (the "Original Charterers") and the Original Charterers have sub-chartered out these vessels, in their own name as Owners, under period time-charters (the "Time-Charters") to other Japanese Charterers (Eastern Car Liner Ltd., for "Ocean Leo" and "Ocean Reyna" and Nissui Shipping Corp. (now renamed Tokyo Reefer Chartering) for "Kowhai") (the "Time-Charterers"); and

WHEREAS the Original Charterers have incurred outstanding debts to Keymax and its associated company, MK Shipmanagement Co., Ltd., of the same address, relating to unpaid management costs for these vessels, in the case of "Ocean Reyna" US$140,894.80, "Ocean Leo" US$426,543.33 and "Kowhai" US$325,239.35 and Ocean Trade is willing to accept liability for a fraction of such outstanding debts under certain terms and conditions as described below (the "Outstanding Debts"); and

WHEREAS the Original Charterers also owe an outstanding amount of about US$534,000 to various dockyards for docking and associated costs (the "Docking Costs") related to the Ocean Trade Owned Vessels; and

WHEREAS Keymax is willing to take over, in place of the Original Charterers, as Owners of the Ocean Trade Owned Vessels in the Time-charters and offer to Ocean Trade exactly back-to-back time-charter parties on the same basis as the Time-Charters without any deductions and agree that all receivables due to the Original Charterers, if any, to be paid to the Ocean Trade Owners, provided approval is obtained from the Time-Charterers, but in all case pursuant to immediate arrangements made only with the Original Charterers, and provided the Ocean Trade Owners agree to accept liability for payment of a settled amount fraction of Outstanding Debts and Docking Costs to Keymax as described below; and

53

WHEREAS Ocean Trade (which is the beneficial Owner of the Ocean Trade Owners) and the Ocean Trade Owners are willing to accommodate Keymax in their above wishes;

IN THE PREMISES and against the mutual consideration agreed to be exchanged by the parties to this agreement, IT IS HEREBY AGREED THAT:

1) Keymax will take all necessary actions together with the Original Charterers to obtain the agreement of the Time-Charterers to Keymax taking over from the Original Charterers as owners in the Time-Charters and sign, only after Ocean Trade's written approval, proper Time-Charter Parties addenda but in all cases and irrespectively of such addenda signed they undertake to:

2) Commencing immediately after signing this Agreement by fax, collect hires under the Time-Charters in their own account; deduct operational expenses, according to the attached budgets, and the figure referred to in Para. 4 below, and pay the remaining balance to a bank account or accounts to be nominated by the Ocean Trade Owners. All details of the accounts where Time-Charter hire will be received will be disclosed to Ocean Trade simultaneously with signing this Agreement.

3) If the takeover envisaged in Para. 1 above cannot proceed for any reason, then Keymax will arrange with Original Charterers that hire payments under the Time-Charters will be made to a bank account controlled by Keymax, whereafter Keymax will deduct management costs, according to the attached budgets and management agreements, and pay immediately upon receipt the remaining balance to a bank account or accounts to be nominated by the Ocean Trade Owners. If any monthly payments are not made to Ocean Trade Owners or Ocean Trade strictly as per provisions of this Agreement then the balance of Outstanding Debt will be deemed eliminated whilst Ocean Trade shall maintain rights of full recovery of any missing payments and/or funds from Keymax or any other accountable party. Keymax also undertakes not to make or negotiate any amendments, accept deductions or termination of the Time-Charters from the text of the current Time-Charters as hereby attached with all their addenda (Appendix 1). Ocean Trade will pay any brokerage commissions disclosed in the Time-Charters payable to non-affiliated companies of Keymax.

4) If either arrangement (as per Para. 2 or Para. 3 above) comes into effect, the Ocean Trade Owners will also repay to Keymax, as a full settlement:

   (a) 56% (US$500,000) of the Outstanding Debts, in 12 equal monthly payments of US$12,500, commencing in December 2001, followed by 42 equal monthly payments of US$8,333, commencing in December 2002; and

   (b) 100% of the Docking Costs of US$534,000, in 16 equal monthly payments of US$33,375 commencing in December 2001.

   Repayment of the Outstanding Debts and Docking Costs should be amortised by the time of redelivery of the last of the Ocean Trade Owned Vessels from the Time-Charters, but if any balance remains due to Keymax at the time of redelivery of the last vessel, the same shall be settled in cash at that time.

54

5) The technical management of the vessels will remain with Keymax throughout the remaining period of the Time-Charters, as per attached Management Agreements (Appendix 2) between Keymax and the Ocean Trade Owners. Ocean Trade will have the option to terminate the Management Agreements at any time, upon giving reasonable notice, in which case they shall pay the remaining amount of the settled Outstanding Debts and Docking Costs prior to termination of management of the final vessel.

6) This Agreement is to become effective and binding upon its signature by the parties to it. All provisions in it for action by third or related parties to be implemented as soon as possible, but hire payments will start with payments due after December 27th, 2001, and repayment of the Outstanding Debts and Docking Costs will start in December 2001.

7) This Agreement shall be governed by English law and all disputes or claims, if any, arising out of it or in connection with it shall be resolved exclusively by arbitration. The parties agree and irrevocably also submit any and all such disputes to London Arbitration in the U.K. The London Maritime Arbitration Association Rules shall govern any and all arbitration proceedings.

8) For purposes of notices and legal proceedings (a) Ocean Trade S.A. and related to it parties irrevocably appoint Simpson Spence & Young Shipbrokers Ltd., London, as their agent in London and (b) Keymax hereby irrevocably appoint Simpson Spence & Young Shipbrokers Ltd., London, as their London agent.

Both parties may nominate a substitute agent for service in London; however such appointment shall become effective only five (5) business days after written notice to the other parties.

This 31st day of December 2001

For and on behalf of:

1. PILLSBURG NAVIGATION S.A
2. STERLING NAVIGATION S.A.
3. PANAPORT SHIPPING S.A.

____________________
By :
Title : Director

For and on behalf of:

4. OCEAN TRADE S.A.

____________________
By :
Title: Director

B. For and on behalf of
KEYMAX MARITIME CO., LTD.

____________________
By :
Title: Director

55

**Tony Fordyce**

**From:** "mfsc" <mfsc@alas.gr>
**To:** <t_fordyce@imk.co.jp>
**Sent:** Saturday, 20 April 2002 11:26 PM
**Subject:** Various

Tony/Babis

Unfortunately, maybe because we are dealing with many things,we are only making slow progress I am afraid maybe because of lack of focus not by your side and my side but mainly from IPL.

So please let's number the outstanding things to do and keep the same numbering system until we finish them.

1. Signed documents (Keymax/Ocean Trade)
I have still not received in my Piraeus office the signed documents. Can you send me air-bill number or it was send regular mail?

2.Class records, survey reports of 3 OT vessels.
When will they be sent?

3. Keymax Agreement
Can we amend this so as to stretch repayment of the outstandings from July 1st for 60 equal payments or until sale/termination of management agreement? You previously advised that Keymax could consider this, so please confirm.

4. All vessels
We are dealing with the 3 OT vessels, the 6 option vessels plus 2 more S. Odyssey sisters (please advise the names) and the 4 (maybe only 2?) additional Keymax vessels. Ideally, we can take delivery of all these vessels with us being responsible for arranging bank finance or with us becoming bareboat-Charterers and having purchase options for the outstanding debt and a purchase obligation at the end.

Please help me to develop a 15 vessels' operational/technical term sheets and a full data base for all these vessels which will include: opex, DD/SS positions, class records, recent surveys with pictures, main details of the time charters and copies of charter parties and loan agreements with translations. I know it is a lot and I want it in digital form. However, if we finish it once then we do not have to do it again.

5. Schedule
Decide on which vessels we can do over the next 4 months (May-August) and which ones over the last 4 months of the year.

Decide which ones we can do with BBHP and which ones we need to purchase with our own bank finance. You have to tell me this because the existing Japanese financing is generally better than the alternative western financing and we can pay better cash to Keymax when we use Japanese finance than if we take on our own bank debt. As I understand it now, we will buy for cash O. Sampaguita, S. Odyssey and her sisters, and O. Daisy.

You mention it may be possible to do BBHP on these vessels as well. Please explain. Of course we would be interested in BBHP but still we will have operations with Keymax and we will need time-charter. Then we should go on a vessel-by-vessel basis and write the basic terms of the deal, to see if we agree, taking into consideration



the option agreements and the discussions with Saburo. You can start preparing 12 deal term sheets even on a rough form and I can complete them.

6. Period charters
We wish to have time-charter on all vessels at least for 3 years. You know better the Charterers and we can develop again 15 time-charter term sheets to summarise the terms of the current time-charters. Either we buy with our bank finance or existing banks debt wrapped to BBHP; we have the same debt obligation and Keymax wishes to see that there is a steady income to pay their opex. We need to go for best time-charter coverage. We have done some discussions for Sampaguita, S. Odyssey and sisters, Harmony/Phoenix, and Mermaid Dream. Please summarize everything discussed or tentatively possible on these 12 term sheets.

7.Kowhai
2 years time charter. Awaiting Charterers' best.

8. Ocean Reyna, Ocean Leo
I understand that IPL will do their best to get our proposed terms but that there is no guarantee. In some points they may get it and some others they may not. It is important to try hard this week before Economou comes to Tokyo on May 7-10 and we can then show him that the deal has been done. Otherwise we will never finish. For me it is more important to get cleans deal with long duration charters than to worry about a few extra dollars in the first year. Please notice that we have firm deals with min/max rates for many years and we need to live with these Charterers for many years, so I need to review all terms of final agreement before our final approval. Of course IPL can fix something close to what we asked. TIME IS OF THE ESSENCE; we must move very quickly now.

9.Commissions
If you are happy with what Iwai is offering you we can proceed.

a) I agree to 2.5% commission on 5 vessels with a time charter income not exceeding $630/day. Since it is impossible to have higher commission than that without making it too obvious, and MFSC needs 0.5%, the only solution I can see is that we must apply 2.5% commission over 7 vessels (adding O. Sampaguita and S. Odyssey) and paying out of such commission 0.5% to MFSC i.e. IPL makes 2% on income of $31,500- which is $630/day .These are all ex-IPL vessels so it makes sense to add commission.

b) As discussed when I was in Tokyo, MFSC has many expenses and until the deals finalise, will have no income. We pay for banks and lawyers' fees to process financing, travel expenses and we have heavy focus on these deals. We are looking forward to be funded by the $30,000 for April and May which would have been our compensation for helping IPL. IPL receives $4,500/month in your commission and if the ECL/Kowhai deals are made in May even if their commencement date maybe July-September.we can start the 2.5% net commission immediately. IPL needs to have an incentive to complete these negotiations. IPL was generously supported so far.

I therefore suggest, in the spirit of the good working relationship we have, that MFSC will receive $20,000 monthly and IPL $10,000 of each of these 2 x $30,000

payments. Please bear in mind that Economou wants to pay absolutely nothing for these 2 payments (he has a copy of the IPL and Keymax settlement agreements, but he has not seen the Options agreement). Most likely he will end up charging my account for any of these payments and I still have open accounts with him, so he can simply collect from my account.

10. Japanese-German Management JVC . I will keep you posted.

Tony, it is a lot of work but if we organize it properly we can finish it quite quickly.

Best regards
Babis

640 ... 94 9119

**Tony Fordyce**

From: "mfsc" <mfsc@aias.gr>
To: "Tony Fordyce" <t_fordyce@imk.co.jp>
Sent: Tuesday, 7 May 2002 6:56 PM
Subject: RE: General

Tony/Babis

1.Economou visit: He knows the following:

a) The settlement signed between OT- IPL and Keymax for the 3 vessels including the amendment to $28,000 for 12 months from May 2002 and equal thereafter. He knows about the 2 x $30,000 in May/June and $20,000 in July , $15,000 in August to IPL (he does not know about the payments back to Ocean Trade).These payments are to assist IPL until it starts receiving the 3% comm on the 3 new charters. They are all tied together i.e. Keymax did not agree to accept reduced payments unless IPL received these payments.

b) For Nissui/TFC he knows rates and periods but he said that he may talk to Seatrade directly because he does not like it. Please try to prevent him from doing it.

c) For ECL he knows that I asked for $100/d more than what Iwai-san said can be done and that I asked to make the option periods fixed, but with lower min and max caps, and that I gave them the background of Drytank and Ionian/OceanTrade and we are waiting to hear soon.

d) For the options (O. Phoenix etc) I told him that although we talked and drafted options documents last December we never finished them since there are complications with the lenders but he can buy any ship charter- free (charters are not easily transferred to Greek owners) that he likes, if he makes an offer at market level and this is above bank debt to the satisfaction of Keymax.

We have an agreement now to buy him out for $2m cash, $0.8m in Keymax debt and $11.5m in bank debt which we will arrange with ABN AMRO; this is because ING and ALLFIRST are not considering any changes in the current amortization schedule which will require $50,000/mo funding with the new charters which he has to pay because of his personal guarantee. Our amortization is matching the new charter rates. Anyway we are paying him a very rich price, since these 3 OT vessels are not worth even their bank debt. Hopefully with the ECL/Nissui charters in hand within May, by the end of June Economou, Allfirst and ING will be history.

**2. Keymax 4 vessels package**

Await your documents. The main benefit of the BBHP structure is that the deal is not affe the short term fluctuation of the Yen/USD, because my investors focus on cashflow inste

**3. Payments this month**

We should wait until next week to see the progress on the charters negotiations since the IPL $30,000 payment is subject to such charter conclusion.

Can you let me know how much income we expect to receive this month?

**4. Management partner**

I had a series of preliminary discussions with a number of German/Cypriot managers. I will shortly visit Cyprus and see a few of them in person. It occurred to me that it maybe is better to develop relations with 2-3 of them until we see how they perform, charge and what business they give back. What is the rough volume of business Keymax can currently give i.e. approximate number of superintendents visits, port calls, repairs etc in the non Far East area, and at what prices would you consider them competitive. After I visit Cyprus I will send a full package with brochures, services offered and my comments/proposals so that Saburo can review it and organize a trip to visit them and conclude a satisfactory deal.

Best regards/Babis

 CARDIN... MARINE INC.

OMEGA BUILDING
80, Kifissias Avenue,
GR-151 25 Amaroussion, GREECE
Phone: (01) 80.90.580
Fax: (01) 80.90.585
Telex: 215975 DRYB GR

To: Keymax Management Ltd.
Attention: Mr. N. Kayahara
Mr. S. Iwai

June 10th, 2002

Inter Pacific Lines Co. Ltd.
Attention: Mr. G. Iwai
Mr. T. Fordyce

RE: OCEAN REYNA / OCEAN LEO / KOWHAI

Firstly we wish to address certain paragraphs of the Master Agreement governing the relationship between Keymax and ourselves as agents for owners of the Ocean Trade vessels namely:

A. "WHEREAS the Original Charterers also owe an outstanding amount of about US$534,000 to various dockyards for docking and associated costs (the "Docking Costs") related to the Ocean Trade Owned Vessels;"

B. 1) Keymax will endeavour to procure the Original Charterers to obtain the agreement of the Time-Charterers to Keymax taking over from the Original Charterers as owners in the Time-Charters.

2) If the takeover envisaged in Para. 1 above can proceed, then Keymax will collect hi... under the Time-Charters in their own account, deduct operational expenses, according to the attached budgets, and the figure referred to in Para. 4 below, and pay the remaining balance to a bank account or accounts to be nominated by the Ocean Trade Owners.

3) If the takeover envisaged in Para. 1 above cannot proceed for any reason, then Keymax will procure that hire payments under the Time-Charters will be made to a bank account controlled by Keymax, whereafter Keymax will deduct management costs, according to the attached budgets and management agreements, and pay the remaining balance to a bank account or accounts to be nominated by the Ocean Trade Owners. <u>If any payments are made to any party other than the Ocean Trade Owners or Ocean Trade, the balance of Outstanding Debt will be forfeited.</u>

CARDIFF MARINE INC.

We also wish to bring to your attention certain other paragraphs governing the relationship between IPL and ourselves as agents for owners of the Ocean Trade vessels namely:

C. If the agreement of the Time-Charterers cannot be obtained, hire payments under the Time-Charters will instead be paid to a bank account under the control of the Managers without any deductions, and IPL consents to such change.

D. Ocean Trade will pay to IPL the sum of US$ 300,000 in total over a period of 6 (six) months to cover a portion of IPL's corporate overheads.

As you know you have been deducting the amounts due to yourselves which to date have totaled US$ 211,500 thus having reduced the total obligation to US$ 822,500 .Moreover you have deducted for IPL's account a total of US$ 270,000, thus leaving a balance of US$30,000 which will be deducted from the next payment.

We therefore wish you to confirm that you have made arrangements to collect hire under the Time-Charters in your account. If this has not been done, please arrange to do so immediately. IPL have agreed for you to do so and they have been paid US$300,000.-.

There are two major issues we wish to bring to your attention namely:

1. You have agreed that the Docking Costs of US$534,000 include associated costs. We therefore cannot accept any deductions for off-hires of the Kowhai amounting in total usd 121,438.40 as made in the January and May statements. Firstly this was not mentioned nor covered under the Agreement and secondly it referred to the period prior to January 1st, 2002. Additionally, IPL have received US$300,000. What is the reason of them receiving this money? They are the sole responsible party that got us into this mess.

2. We certainly cannot agree to any deduction from hire on account of Currency Adjustments for the period prior to January 1st, 2002. Any such adjustments should be borne by IPL. After all, we have had numerous deductions from hire until such date for one reason or another which deductions had total US$2,300,000. Enough is enough.

3. We can also not agree to deductions of usd 35,839.52 referring to address commission for Kowhai for the months of January and May 2002.

The agreement is quire clear: "Keymax will offer back-to-back time-charter parties <u>without any deductions</u>".

61

CARDIFF MARINE INC.

We wish to normalize our relationships enabling us to continue these charters to the end and we urge you to spend a little time to put this relationship in proper order so as to avoid spending more time in the future.

We once more wish to assure you of a friendly and smooth future cooperation.

Best Regards

GEORGE ECONOMOU

**Tony Fordyce**

**From:** "mfsc" <mfsc@aias.gr>
**To:** <t_fordyce@imk.co.jp>
**Sent:** Wednesday, June 12, 2002 2:33 AM
**Subject:** Economou response et als

Tony/Babis

1.I think you should respond to Economou 2 days later from when received not to show yielding to pressure and only from IPL, not from Keymax.

2.For your information I never gave to Cardiff signed copy of the Keymax/IPL agreement, but I told him that we have a gentleman's agreement on the lines of the draft he is quoting in his letter. That gives an extra leverage for you and me to run this deal. But leave Keymax out of all commercial discussions with Economou. He will try to implicate them and make threats against them so he doesnot pay the outstandings. Keymax in the June statement needs to list all outstandings on a vessel-by-vessel basis (split the balance of $800,000 roughly by 3 ,add the Leo dd and state the ECL invoice for yen adjustment). You can send me a draft before you send it to Cardiff. It is important to establish the liability of the individual owners towards the managers.

3.As mentioned today, although not the best solution ,we need to coordinate around the alternative that MFSC buys the Reyna & Kowhai while Economou keeps the Leo maybe for one more year until he convinces ING to change amortization schedule at which point we can buy it. In such case there will be much more leverage for IPL/Keymax to collect all outstandings while the charters remain at the name of IPL.There is no guarantee that he will keep any agreement if he controls the cashflow.

4.We should thus complete the c/p's for Kowhai and Reyna (with comm clauses stating that comm are paid by charterers) and say to ECL that the Leo charter will be settled later.

5.Can you find out and let me know what is the current ownership of ECL? Is NIssan still majority owner? We found in the corporate records (see attached )that MOSK is now major owner. What do you know about this?

Awaiting your drafts of all Master Agreements and Saburo's comments on the SMBC fixed interest rate loan swap buy out.

Best regards
Babis

**Tony Fordyce**

**From:** "mfsc" <mfsc@aias.gr>
**To:** "Tony Fordyce" <t_fordyce@imk.co.jp>
**Sent:** Wednesday, June 19, 2002 3:14 AM
**Subject:** RE: Economou fax

Tony/Babis

The response is ok. If you would like to consider the following changes,it maybe helpful.

I spoke to Economou extentively, I will meet with him tomorrow and by the end of the week the picture will be much cleaner.

From my side, I introduced the full disclosure and mutual assistance approach with IPI,keymax and you. Economou I believe that he wants to collect $2m on top of the $11.2m loans and the $1.15m liabilities to Keymax and ECL ie $14.35m making it impossible for me or anyone to do this 3 vessels deal. You know better but the market value of the package is around $11m.
I have now an understanding with him to buy 2 vessels ie Kowhai/Reyna for $8.6m which includes $500,000 in Keymax liabilities, $7.1m loans and $1m to him.
As you can appreciate the liabilities of Leo are higher ($220,000 dd, $170,000 ECL and 1/3rd of balance of $750,000 in August 2002 ,on all 3 vessels for a total of $650,000) and with a loan of $4.1m I would need to pay him $5,75m ($4.1+0.65+1 ) if he is going to receive another $1m on this vessel. With a market value of $3m I can bearly arrange for a $2,5m loan requiring $2.6m cash to make him happy. So we have an impass on that vessel.
For me to close with ABNAMRO I would need the ECL charter on the Reyna. Today he changed the story and he wants to get direct charters on both Leo and Reyna since he is afraid that left alone with IPL he may be unable to do anything. Beyond Economou bullying tactics he realizes that there is nothing he can do.

Since I cannot buy him for the $3m of the option amount, he can now buy me out for $75,000 by end of July. During that time I remain shareholder. Of course this has very little value since the company has a negative worth of $3.35m he doesnot even wants to buy me out. He has a loan of $3m which is to what is referring but shares we are 50/50%. It is for me more powerful bargaining chip that I have a buyer and a bank that he knows they can deliver $8.6m for the Kowhai and Reyna against a market price of $7m(?).

I suggest the following strategy:
We stick with whatever we agreeing saying that all these points have been negotiated and there can be no solution with IPL going bankrupt. Since IPL has no money it needs to be financed with the 3% comm and the 2 last payments of July/August.. Keymax stays totally out of it. It performs as manager of vessels and accountant. We complete the ECL charters with Economou's written approvals for $4,275/ 5,200 for Reyna/Leo bvut without any yen clause and the back yen adjustment offset by rate reductions rebates as Economou indicated ,starting in September while in July-August we try to reduce payables ( we go back to $45,000/month payment and start deducting in July the 1/12th of the Leo drydocking) . You make clear to him that any changes of the charters will include owners quick repayment of outstandings to Keymax and payment of commissions by charterers directly to IPL.

If we work closely together as we have done so far we can limit Economou to Leo and hopefully in one year when liabilities have been reduced we can buy this vessel as well. But you need to keep your cards close to your chest with him.

Let me know your thoughts.

In the meantime I would like to progress project B so that we can secure extra revenues for all parties involved while we eliminate the capital risks for Keymax .

Best regards
Babis

64

[mfsc]



CARDIFF MARINE INC.

OMEGA BUILDING
80, Kifissias Avenue,
GR-151 25 Amaroussion, GREECE
Phone: (010) 80.90.400
Fax: (010) 80.90.405
Telex: 215976 CARD GR, 215977CARD GR, 215978CARD GR, 215979 CARD GR
e-mail: cardiff@hol.gr

July 24th,2002

To : Messrs G. Iwai and Tony Fordyce
Inter Pacific Lines Co. Ltd.
cc : Mr Saburo Iwai
Keymax Management Ltd
cc : Mr B. Ziogas
From : A. Ioannidis

Re : Mv "Ocean Leo" –"Ocean Reyna" and "Kowhai"

Please note that as of today, Mr B.Ziogas has no interest whatsoever in any of the three above vessels . Furthermore, Mr B.Ziogas has no interest in any past outstandings between our companies with respect to these or other vessels already sold.

Consequently, in future you should only communicate with this office, as we are representing exclusively the owners .

In due course, we shall be sending you further memos outlining how we view that our cooperation should proceed thereof, but meantime please rest assured that it is our principals' strong wish that in future our relationship be based on good will and cooperation and we look forward to working with you closely towards a successful/profitable conclusion of this venture.

Best regards,

A. Ioannidis
General Manager

PS This letter is being copied to Mr Ziogas but there should be no further correspondence with Mr Ziogas on any matter relating to our relationship with respect to these vessels, either by us or yourselves.

Messrs
MARYPORT NAVIGATION CORP.
Liberia
c/o
Mr. Paul Herring
Solicitor
INCE & CO.
11, Byward Street
London EC3R SEN
England

Dear Sirs,

**Re: Memorandum of Agreement and Record dated 19th October 2001 (the Master Agreement) as amended on 22nd March 2002**

We refer to the Master Agreement; under paragraph A(d) thereof Maritime Financial Holdings Services Corp. of Liberia ("MFHSC") and Dr. Charalambos Ziogas ("Dr. Ziogas") of Greece were given an option to buy out all interest of Maryport Navigation Corp. of Liberia ("Maryport") in OCEAN TRADE S.A. of Liberia (and its subsidiaries and assets) under the terms defined therein up until 30th June 2002. Thereafter Maryport was given the option to buy out all interest of MFHSC and of Dr. Ziogas, if any, in OCEAN TRADE S.A. of Liberia.

We the undersigned declare and acknowledge that to 1st July 2002 we have been unable to exercise our option to arrange for the buy out of the interest of Maryport in OCEAN TRADE S.A.

In order ensure an early collection by ourselves of the balance of the agreed buy out monetary consideration of USD 75,000 as per provisions of paragr. B of the Master Agreement we invited and called upon Maryport to exercise its option to buy out all our interest, if any, in OCEAN TRADE S.A. We have already collected USD 10,000 as an advance payment on or about 22nd March 2002.

We waived the requirement of the Master Agreement for a written notice from Maryport to us and asked it to proceed under paragr. B of the Master Agreement for the purchase of all our interest (whether past, present or future) in OCEAN TRADE S.A. and effectively in each and all of its subsidiaries through a payment of USD Sixty Five Thousand ($65,000) in full and final irrevocable, fair and reasonable settlement of all our rights and claims against Maryport its subsidiaries, shareholders or associated companies or persons under the Master Agreement. Hereby we acknowledge receipt of above amount of USD 65,000.

Accordingly, we acknowledge and declare that following receipt of above payment we maintain no interest whatsoever whether as investors, shareholders, directors, managers or otherwise howsoever in OCEAN TRADE S.A., its subsidiaries, associated companies, persons, current or former Directors and officers, attorneys or agents, present, former or future assets and claims whatsoever.

Under the Master Agreement Maryport apart from above payment to ourselves had also to make a payment of USD 2,576,059 plus contractual interest to DECARCO INTERNATIONAL COMPANY LIMITED in order to acquire all 100% of the shares in OCEAN TRADE S.A. of Liberia and its subsidiaries; we understand that this payment has also been effected.

Otherwise we acknowledge that all terms and conditions of the Master Agreement dated 19th Ocober 2001 and its Addendum Nr. 1 remain valid, unamended and applicable and in full force and effect, including the provisions on English law to govern the overall relationship and London Arbitration, which apply also to this present written declaration release and acknowledgement.

This 24th day of July 2002.

Dr. Charalambos Ziogas
a) for himself personally and
b) for MARITIME FINANCIAL HOLDINGS SERVICES CORP.

In the presence of:

Ms Efthymia Zioga

407G.180602

Subject: Fw: General
Date: Fri, 26 Jul 2002 10:36:10 +0900
From: "Tony Fordyce" <t_fordyce@imk.co.jp>
To: "Saburo Iwai" <s_iwai@imk.co.jp>

>From Babis (my message to him yesterday is below):

Sent: Thursday, July 25, 2002 6:50 PM
Subject: RE: General

> *Tony/Babis*
>
> *Thanks for your mail, to which I can reply as follows:*
>
> *1. As Keymax correctly points out it has no direct relationship with* Cardiff
> *and it is important for them to maintain this to collect their* outstandings. The reason
> *for this advantageous setup is my good work and foresight to keep the* agreement
> *signed with Ocean Trade out of the hands of Cardiff. Thus there will be no*
> *problems in maintaining the current situation.*
>
> *2. Since the agreements signed between Pegasus and Keymax are ongoing*
> *in nature and the benefits incurred by Keymax as explained in 1 above are*
> *substantial (because I hold the Keymax-Ocean Trade agreement in my hands*
> *only) it is fair, legal and beneficial for Keymax to maintain the current*
> *situation. I don't have other source of income until the other deals close* and
> *beyond the imminent closing it is an important principal that if I put a* deal
> *together, I continue receiving fees irrespectively of ownership. If in the*
> *future I sell some of the new vessels to new investors and Keymax* continues
> *receiving fees why I shouldn't receive fees? Anyway for the next 2 months* I
> *can Tony $2,000 from these fees to make up for his lack of income from IPL.* If
> *Pegasus fees are reduced I can't do that. There should be no risk of* Economou
> *finding out since there was the same risk before and there is higher risk* if he finds
> *out about the Keymax-OT agreement. In conclusion I am not willing to* change
> *the current fees structure.*
>
> *Of course if Keymax's situation becomes worse after Economou's* involvement, I
> *will agree to reduce or eliminate my commission in order to compensate* them.

> *3. Sharrow Bay.*
> *I guess first you/Keymax should find out about the current charterers, as* you suggest,
> *to see if Keymax will be interested in a 3 years charter.*
> *We will pay in cash the MOA price at the closing but have a mechanism in* place
> *to securely get the address commission back immediately.Since I can get*
> *$5.75m valuation I would like same MOA price or, maybe, $5.5m minimum.*
>
> *4. Aldebaran*
> *I am awaiting SSY news and your opex. Can you please advise?*
>
> *5-9 Noted and awaiting your news,*

68

>
> *-----Original Message-----*
> *From: Tony Fordyce [mailto:t_fordyce@imk.co.jp]*
> *Sent: Thursday, July 25, 2002 11:20 AM*
> *To: mfsc*
> *Subject: General*
>

>
> *Babis/Tony*
>
> *Thanks for your messages, which have discussed with Saburo. We can reply* as
> *follows:*
>
> *1. Economou situation*
> *This came as quite a surprise to Keymax. However, they are prepared to* carry
> *on with our various discussions on the understanding that you will be able*
> *to assist them if there are any problems with Economou. In any case, they*
> *will not talk to him directly, since they do not have any official*
> *relationship with Cardiff. I have told them that I will do my best, with*
> *your help if necessary, to maintain the current situation.*
>
> *2. Pegasus commission on the 3 Ocean Trade vessels*
> *One point they have made, however, is that since you are now no longer*
> *involved in ownership of these vessels, there is no real reason to pay* part of
> *their management fee to Pegasus, so they are proposing that this be*
> *terminated. They have pointed out that you will be involved in the*
> *management of maybe 8 or 9 other vessels with both management and charter*
> *commissions, and feel that this will be very ample compensation. They are*
> *also slightly concerned that if Economou were to find out about these*
> *payments the situation could be extremely awkward.*
>
> *3. Sharrow Bay*
> *I have asked the Sellers if they could agree to an MOA price of US$5.75*
> *mill, with the excess repaid at the time of closing (I presume that you* will
> *pay the full amount - or will you only pay the actual purchase price??),* and
> *am waiting their reply. After a bit of background checking, it seems that*
> *since the vessel is singledeck in one hold and tween in the other* (although
> *without tween deck hatch covers), her loading options are a bit limited.*
> *Anyway, I am checking if the current period charterers would be interested*
> *to extend the charter, in which case it would be easier for Keymax to take*
> *the vessel on charter on a back-to-back basis. If so, and assuming the* rate
> *is reasonable, then I think that Keymax could do US$3,300 daily for 3* years
> *with 50/50 profit-sharing. If not, then they will have to look around for*
> *alternative employment. If Sharrow Bay doesn't work out, we should be able*
> *to find alternative tonnage.*
>
> *4. Aldebaran*
> *Await your news of developments with SSY. Meantime I have asked Keymax for*
> *opex.*
>
> *5. Schedules for inspection*
> *Please see attached.*
>
> *6. Opex budgets and actual expenses*
> *Please see summary of costs for 2001 for all vessels except O.Daisy (which* is
> *managed in HK). This should give you a good idea of budget against actual* expenses.

> *7. Chip carrier*
> *This has gone a bit quiet from the Owners' side. Will let you know as soon*
> *as there is any further news. Meantime we are actively looking for other*
> *vessels as additions or replacements.*
>
> *8. Collateral accounts*
> *We are in full agreement and are working on this.*
>
> *9. Ocean Ellie financing*
> *We are also pushing this and will let you know as soon as there are any*
> *figures.*
>
> *Regards*
>

69

 CARDIFF MARINE INC.

OMEGA BUILDING
80, Kifissias Avenue,
GR-151 25 Amaroussion, GREECE
Phone: (010) 80.90.400
Fax: (010) 80.90.405
Telex: 215976 CARD GR, 215977CARD GR, 215978CARD GR, 215979 CARD GR
e-mail: cardiff@hol.gr

August 5th ,2002

To : Mr Tony Fordyce
Inter Pacific Lines Co. Ltd.
cc : Mr Saburo Iwai
Keymax Management Ltd
From : A. Ioannidis

Re : Mv "Ocean Leo" –"Ocean Reyna" and "Kowhai"

We acknowledge with thanks receipt of your message of August 5th and please note the following:

1.- As known to yourselves, Owners do not recognize any agreement made by Mr Babis Ziogas, which was not specifically also approved by ourselves. Anyway, we would appreciate receiving copy of the Agreement you referred to and on whose basis – as per your statement - all deductions etc have been made for the last 7 months.

2.- Having made the above point ,owners we are here to review any logical proposals and reach a mutually acceptable/profitable solution but we should state at this stage that your today's reply is not conducive to such a cooperation, in so far as you seem not to have seriously considered our previous message of July 31st and instead you have dismissed rather easily most of our comments.

3.- Addressing now the specific points raised in our message of July 31st and your today's reply :
In your today's message, you state categorically that for the last 7 months you have acted in line with the Agreement made abt 7 months ago with Mr B.Ziogas. Without prejudice to our position , stated in above paragraph 1, about our not accepting unilaterally agreements made by Mr B.Ziogas without our explicit approval, we wish to point out the following discrepancies in your message :

a) IPL's deductions:
The additional $ 35,000 for July and August 2002 were only decided upon by yourselves much later than 7 months ago.

b) The commission structure:
The commission structure started to change in an upward trend in April 2002 and there have not been two months since then when the commission structure has remained the same but commissions have been increasing every month , reaching exorbitant values last July . Therefore, this is not a matter that could have been agreed 7 months ago. We repeat clearly that the commission structure first introduced in the

08/05 '02 MON 17:23 FAX
001

CARDIFF MARINE INC.

Concluding , we would like to stress that the points raised in our previous message of July 31st and also in the above paragraphs reflect the owners' position and should not be taken lightly by your goodselves . Owners wish to cooperate and look forward to the successful completion of the time charters – in particular of the "Ocean Leo" and "Ocean Reyna", but owners also have specific severe obligations to meet with respect to the vessels in question and consequently owners can not afford to accept such reductions in the vessels' revenues.

Looking forward to your constructive reply.

Best regards,

A. Ioannidis
General Manager

[illegible] – for your [illegible]
– I'm sending this to Cardiff this afternoon.
(cashflow figures without guarantee!)
Tony

**Tony Fordyce**

**From:** "Tony Fordyce" <t_fordyce@imk.co.jp>
**To:** <t_fordyce@imk.co.jp>
**Sent:** Thursday, 5 September 2002 11:54 AM
**Attach:** cardiff2.tif; Cardiff vsls cashflow.xls
**Subject:** Fw: Your letter of 5th August

Dear Mr. Ioannidis,

I refer to your letter of 5th August 2002, to which Iwai-san has asked me to reply as follows:

1. It is easy for you to say, after the event, that you do not recognise any agreement made by Mr. Ziogas which was not specifically approved by yourselves. However, with respect, this is an argument you should settle between yourselves and Mr. Ziogas. We were dealing with him, on behalf of Ocean Trade, almost exclusively throughout these charters and it is unreasonable (not to mention incorrect legally) for you now to say, with retroactive effect, that you do not accept what he agreed on behalf of Ocean Trade. Until we received your letter of 24th July 2002 we were dealing with Mr. Ziogas on behalf of Ocean Trade in good faith.

I attach a copy of what was mutually agreed both at the end of December 2001 and subsequently.

Ocean Trade has received the benefit of this agreement for the last 9 months, and Mr. Ziogas assured us that Mr. Economou was personally advised of and gave his approval to these arrangements.

2. As far as we are concerned, we have already reached a mutually acceptable solution with Ocean Trade, and have been acting on it for the last 8 months (including some amendments made after it transpired that IPL could not continue to survive on the originally agreed basis).

3. a) This is correct, for the reason explained in paragraph 2 above.

b) The amount of commission has been increased, again for the reasons explained above. This is now IPL's only income from these vessels and is at the bare minimum to allow the company to survive. The total annual amount is in fact very considerably below US$200,000, not in excess of US$250,000, as you suggest. IPL is involved in extremely time-consuming discussions and negotiations with the Charterers on a daily basis. Since the vessels on charter to ECL are on charter at rates very much higher than the market, the Charterers are extremely demanding (so as to maximise the earnings of the vessels). The reefer market is also very time sensitive, and there is a

considerable amount of time spent dealing with TRC also. IPL staff visit the vessels whenever they call at Japan, in order to liaise with the Master and crew to ensure the best possible performance. Negotiations with the Charterers also result in very minimal periods of off-hire, as you will be able to see from past hire statements.

c) I do not agree. Ship managers always report to the party with whom they have a management agreement. In this case the management agreement is between Keymax as Managers and IPL as Owners. Since our offices are located in the same building, there will be no delay in communications between yourselves and Keymax through myself or IPL. This is the same system as has been in practice throughout all the bareboat charter parties we have had with you for the last 5/6 years.

d) Reduction in operating expenses
As I have said before, if you wish to request reductions in operating expenses, Keymax are very willing to listen. I have discussed the situation with Keymax in detail and they have not been able to find any areas which they can point out as potential savings, other than H&M insurance. The crews are Chinese on all 3 vessels (with Korean Master/C.Eng on Kowhai), and this is the most economic crew which we can find, without compromising vessel safety or asset value maintenance. Of course they could reduce spending on spares etc, but this is a false economy. Keymax are doing their best to keep costs to the absolute minimum level possible. For example, they are only charging US$6,000 monthly management fee, which is extremely low by industry standards. They are also doing their best to keep operating expenses at the present level until March 2003.

I have already given you the potential savings figures for H&M insurance. Unfortunately these are not as high as might be imagined, since insurance premia have risen across the board this year. Additionally, the present insurances only commenced in June this year, so Keymax would have to cancel these and take out new policies.

+++

As requested, I am attaching an approximate cash-flow for your 3 vessels, showing expected income and estimated expenditure until May 2004 (the end of the current Kowhai charter). This is not of course guaranteed, but represents a best-case scenario (although it does not include a refund from ECL of hire reductions for Ocean Reyna, which may or may not be possible). It does not take into account payment for the next dockings (as detailed on each sheet).

As we have mentioned on many occasions, we very much regret the current developments, which are entirely due to the lengthy and continuing poor

market. What we have now is a reasonable compromise for all parties, and is in any case better than the worst case scenario which would be brought about by IPL's bankruptcy.

Best regards
Tony Fordyce

**"Kowhai", "Ocean Leo" and "Ocean Reyna"**

**Understanding between IPL and Ocean Trade**

1. IPL has incurred considerable outstanding debts to Keymax and its associated company, MK Shipmanagement Co., Ltd., relating to unpaid management costs for these vessels. As of December 31st 2001 the amounts involved are as follows: "Ocean Reyna" US$140,894.80, "Ocean Leo" US$426,543.33 and "Kowhai" US$325,239.35 (in total referred to as the "Outstanding Debts").

2. IPL also owes an outstanding amount of about US$534,000 to various dockyards and other companies for docking and associated costs (the "Docking Costs") related to these vessels.

3. Since IPL is effectively insolvent, Ocean Trade is willing to accept liability for a portion of the Outstanding Debts and the total amount of the Docking Costs, provided arrangements are made and followed regarding receipt and distribution of the charter hires for the vessels, so that no further amounts, other than those referred to below, are deducted from hire by IPL and used for its own purposes.

4. IPL will arrange that payments of charter hires for the vessels are made to a bank account controlled by Keymax, whereafter Keymax will deduct management costs and instalment repayment of the Docking Costs and the Agreed Portion of Outstanding Debts (see below), and pay the remaining balance to a bank account or accounts to be nominated by Ocean Trade. Keymax will not be responsible for the amounts of hire received from Charterers, but IPL undertake not to make any further deductions from hire for their own purposes.

5. IPL have negotiated with Keymax that Keymax will agree to accept, as a full settlement of Keymax's claims against IPL, the following amounts:

   (a) 56% (US$500,000) of the Outstanding Debts (the "Agreed Portion"); and

   (b) 100% of the Docking Costs of US$534,000

   Payment is to be made at the rate of US$28,000 per month in 36 equal monthly payments of US$28,000 and one final payment of US$26,000, commencing in January 2002. Keymax will then pay these amounts to the relevant dockyards and other companies on behalf of IPL.

   Repayment of the Agreed Portion of the Outstanding Debts and the Docking Costs shall be amortised by the time of redelivery of the last of the Ocean Trade Vessels from their time-charters, but if any balance remains due to Keymax at the time of redelivery of the last vessel, the same shall be settled in cash at that time, failing which the whole amount of the Outstanding Debts will become payable.

6. Throughout the remaining period of the time-charters, the technical management of the vessels will remain the responsibility of IPL, under the terms of their management arrangements with Keymax.

7. Provided IPL make and follow the arrangements set out in Paragraph 4 above, Ocean Trade will pay to IPL the following amounts, to cover a portion of IPL's overheads:

| | |
|---|---|
| January/February 2002 | : US$70,000 per month |
| March 2002 | : US$60,000 |
| April 2002 | : US$40,000 |
| May/June 2002 | : US$30,000 per month |

Thereafter 2.5% commission on time-charter hire income.

Forward Shipping would continue to receive 1.25% commission on the bareboat hire amounts.

8. Provided that these arrangements (and any alterations that may be mutually agreed later) are followed, the parties to this understanding agree that they will not commence any litigation against the other party, so that IPL will continue in operation. IPL has received an undertaking from Keymax that provided it can receive the above Agreed Portion of the Outstanding Debts and the Docking Costs, Keymax will not make any future claim against Ocean Trade for the balance amounts.

This was finally agreed on 28th December 2001

+++

It was then subsequently agreed, in May 2002, that further final amounts would be paid to IPL for July and August, in order to ensure the continued survival of IPL, and that from August, IPL's only income from these vessels would be in the form of commission on the time-charter hire income, but increased to 3.5%.

76

**Tony Fordyce**

**From:** "mfsc" <mfsc@aias.gr>
**To:** "Tony Fordyce" <t_fordyce@lmk.co.jp>
**Sent:** Monday, September 09, 2002 7:48 PM
**Subject:** RE: General

Tony/Babis

Please see below my comments

-----Original Message-----
**From:** Tony Fordyce [mailto:t_fordyce@lmk.co.jp]
**Sent:** Monday, September 09, 2002 12:03 PM
**To:** mfsc
**Subject:** General

Babis/Tony

1. Cardiff
I'm working on a reply to Ioannidis last letter, but basically I'm just repeating what we've said before, and also picking holes in his argument (there are many of them; for example
a) he complains that they haven't been consulted about docking costs - but they knew (or should have known) when the Ocean Leo was going to dock earlier this year and didn't complain until now.
b) he says that you had the option to buy out Economou until the end of June (actually should be July, shouldn't it?)[mfsc] (June 30th) , but in fact I believe there were mutual options (isn't that right?). If only you had the option, how did they declare on July 24th that you were no longer involved.[mfsc] (I had option until June 30th and GE had option thereafter for 30 days. I understand that whoever has the option can make all decisions but even if this wasnot the case we were 50/50% shareholders and he was aware and approving the context of the understanding you sent him. But in any case as you are clearly stating it makes no difference)

I'll send you a draft later today or tomorrow.

2. Southern Odyssey/Yu Fuan
Awaiting your proposal (Saburo will be away tomorrow, so it may take a few days to get any feedback from Owners).
[mfsc]
I am flying to NY for one week on Friday. So I need to come close to finishing the EWMi deal this week and focus on DSP next week. From NY I will prepare my trip to Tokyo for last week of September,first of October.I will bring Claire Milonas for 2 days and I will stay total 5 business days.
I am pushing for a 7 vessels package all with Keymax management. We need to have some decent cashflow though and a blend of old and young vessels is necessary I would think the following package is appealing: S. Odyssey, Fu Yuan,Brother Sky, Ivory Bay (although they insist on a high $2.9m , do you have any suggestions for 91-92 built vessels?), Sampaguita, Aldebaran, chip carrier (or something of similar good cashflow)

For the S. Odyssey/Yu fuan I suggest the following:
MOA price: $13.75m
Address comm: $2.5m net to sellers $11.25m on which they pay 2% comm to Keymax/Pegasus for division
Time charter: Each vessel to Keymax for 3 years at $3,375/d less 2.5% and 50/50% profit split above.
Opex: Keymax budget $1,750/d/vessel without dd
Keymax investment: provided that EWMI deal closes keymax will participate with a subordinated to first mortgage only note for $800,000 repaid with 4% interest over 5 years which will be added to the opex monthly. If management of any vessel is terminated then note becomes due.

I trust the above is close to all parties targets and ties up management for long time.

3. Aldebaran
Awaiting news re opex (assuming that you are still interested in this vessel?).
 Yes we are interested but I am not pleased with SSY progress. can we go to visit Tokyo Marine when in Tokyo and push it along? I don't think SSY is direct.
Tokyo Marine may have another deal as well. It is important to develop a relationship with them and I trust for Keymax as well.
4. Mermaid Dream
I'm not sure if you have the time-charter description. Here it is, in case you don't:

"Mermaid Dream" Pan Flag built (Oshima) 1998
47,245 mtdw on 11.778m ssw; LOA/Bm: 185.73/30.95m
NK Class
GT/NT: 25,969/16,173
5 Ho/Ha; folding steel hatch covers
2,103,174/2,062,518 cuft gr/bl
4 x 25 mt cranes
Speed/cons (laden) abt 13.5 kn on abt 25 mt FO (380 CST) no MDO at sea
(except when entering/leaving port, manoeuvering and in heavy weather)
In port abt 2.1 mt FO working, 1.5 mt idle
TT strengths: 1: 20.9; 2/4: 16.0, 3: 25.8, 5: 21.0 mt/sqm
WWF ladders/CO2/ITF/Evaporator fitted
Crew: Indian Master/C-Eng, others Filipino
All details 'about'

The vessel does not have grabs.

Please do not circulate in any way. I understand that L&S will be talking to WBC, Elkem and T&S?
 Thank you but can I talk to L&S for these 3 charterers only or we should wait? I donot think we loose anything to develop the relationship with L &S. They are
great guys and I know them as much as SSY.
Regards

Subject: M/V Ocean Harmony arrest
From: "mfsc" <mfsc@aias.gr>
Date: Mon, 17 May 2004 16:49:40 +0300
To: <s_iwai@imk.co.jp>
CC: "'Tony Fordyce'" <t_fordyce@imk.co.jp>

最後に.

Saburo, Tony:

I hope tomorrow and in the next days everything goes well in SA and the court finds no connection between the registered owner of the Ocean Harmony and IPL.

Unfortunately it seems from some confusing comments that Tony made to me today that the essence of this unfortunate case , in particular with my role is not 100% clear and despite our many discussions with Saburo in Athens it did not register with Keymax. I will do that in writing here and I can sign a related agreement while in Tokyo in the next 10 days.

Ocean Trade signed clearly the 3 pages Master agreement with IPL on December 2001 and nothing more. I signed as 50% shareholder and Economou consented orally and in writing with his comments. Thereafter and for 2.5 years Drytank worked on the basis of such agreement which was acknowledged many times. Economou allegations that he had no copy of this agreement are contradictory and unsubstantiated. Even Milonas had this agreement and Economou was anxious to sell these vessels to a company to be owned by Milonas and myself and this was an important reason to agree to such agreement. He didnot care about anything else.

On April 2002 when in Tokyo , Kayahara-san signed an unrelated agreement with MFSC for the options on certain vessels. However, now Keymax-MFSC had established a new working relationship on which I focused since I had lost more than $2m in cash from Ocean Trade and my involvement in Ocean Trade ended on July 2002.

Starting October 2002 and for almost one year I worked to arrange the purchase of the 5 vessels as provided in the EWMI/Keymax agreement. Such agreement dated June 24th, 2003 was based on strictly commercial terms and had nothing to do with IPL. Other than the cash received in 2003 by Keymax, the eminent refinance of the vessels by EWMI will free substantial cash tiedup now with the Japanese banks as cash-collateral.

We all agree that Economou took advantage of certain imperfections of the documentations of the registered owners that many times I forwarned Tony and Saburo that may lead to problems but Keymax and Ipl took a very casual approach to the connection between IPL, an insolvent company (there is an unpaid judgement of $2m in favor of Allfirst, now Aegean Baltic Bank) and

Keymax. IPL insisted to keep making commissions and maintain the charters with ECL.

I know Economou very well. He knows that he cannot collect from IPL, so this is why the connection with Keymax is very important. Ten valuable days were lost with a claimant that tried to bully Keymax to accept liability and other important advantages that Keymax/IPL have in this litigation , most important being the control of the 3 bareboated vessels.While establishing a full litigation strategy is important, Keymax still doesnot focus on it , intimidated by the amount of the security. I volunteered from the beginning to fully assist you and suffer in the unlikely event that Keymax suffers losses from Economou. There are though points that we need to clarify between us:

1. The disclosure of the bareboat charter of the Ocean Harmony will help significantly the case.

2.. Any delays and costs in SA are for Keymax's account. Ocean Harmony's arrest is based on alleged connection with IPL and it is a defect on the vessel's clean title that Keymax and its directors personally guaranteed to us. We could take independent appearance in the court but at the request of Keymax didnot do so. keymax can add such losses in the total amount of looses from Economou and needs to take action against him for wrongful arrest.

3. I will fully support you as a witness in the London Arbitration and the IPL High Court case, which should be maintained. No settlement discussions with Economou without our approval. I strongly recommend to use the liens on the 3 vessels and the control of the cashflow from the Ocean Trade vessel to be placed in a special account as a war chest to be paying damages from Economou and legal fees. In order to agree to a solution of converting the two vessels to bareboat charters with Economou and waive your $2.5m liens, you need to get specific concessions ie agree limitation of security to no more than $4m ($6.5m- $2.5m) only in case you lose in SA

4. If Keymax loses in SA and cash security needs to be established, and thereafter London arbitration and High Court litigation including appeals are lost, EWMI will contribute 50% of all Keymax losses up to April 1st, 2004 (since IPL and Keymax donot wish to mitigate damages and redeliver vessels with liens of course), and EWMI expenses (including substantial legal fees already incurred and to continue incurring) but limited to $1m. After the sale of the Ocean Ellie (which despite our many discussions it is not yet placed on the priority it requires) EWMI will participate in the escrow cash collateral if Keymax has established such account.

5. Such EWMI participation is subject to the utmost cooperation of Keymax to fund the drydockings of the Ocean Daisy, Ocean Harmony and the repairs of the Ocean Ellie generator up to the sale of the Ocean Ellie and extent the maximum assistance for as quick as possible refinancing of the 4 EWMI vessels and the sale of the Ocean Ellie negotiating the lowest possible breakup fees to banks.

Keymax needs to extent finance of the EWMI operations to cover its bank obligations to the tune of a minimum monthly net cashflow of $30,000 which is its bank obligations. We estimate for May-October (6 months) this will amount to around $500,000 a minimal amount given the fact that we estimate that we have credit in our opex annual budgets of around $300-400,000. Despite our repeated requests and your promises official Cash disbursments have not been received for 11 months now. Of course, after the sale of the Ocean Ellie all outstandings will be settled immediately.

Please understand that we risk to lose the Daeyang charter. Do you realize that this is going to be a huge loss for us if the market declines?
We are fully supportive of you but we are not going to suffer because Mr. Economou's known to all bully techniques coeherse you to surrender to a bogous claim.
Please understand that our plan is the only realistic one that will bring Economou back to the negotiating table, while in the worst case you have a reasonable amount tied up ( as we will as well) in a case that you have excellent chances to win. So all you need to do is raise cash by selling the Century Forest or helping us to refinance the EWMI vessel you raise around $3m in cash!!

Otherwise the full rights of EWMI under the Master Agreement will be maintained in full. Mr Patkos who is copied will prepare an agreement reflecting the above, which we can sign in Tokyo next week.

I assume your continuing full disclosure of all legal steps especially in SA is established and your best endeavors are done to release the Ocean Harmony ASAP and establish damages against Drytank .

Thank you

Dr. Babis Ziogas

Maritime Financial Services Corporation
48, Patriarchou Ioakim Str., 10676 Athens, Greece
T: +30 210 7257090
F: +30 210 7257098
GSM: +30 6944 667090
WS: www.m-fs.com

---

This message (including attachments) may contain confidential and legally privileged information, prohibited from disclosure and unauthorized use. The information contained herein is intended for the named person or entity, and is protected by law. If you are not the intended recipient, you should disregard the information enclosed and you are hereby requested to destroy it. Any disclosure, copying, distribution, or taking of any action based on this communication is

M/V Ocean Harmony arrest

strictly prohibited. This message is not a solicitation, an offer or acceptance of any proposal in relation to any contract or transaction.

---

82

2004/05/24 8:4

4/4

**Tony Fordyce**

From: "mfsc" <mfsc@aias.gr>
To: <t_fordyce@imk.co.jp>
Sent: Monday, 17 December 2001 9:34 AM
Subject: IPL/Keymax/OceanTrade

Tony/Babis

As expected after the 2 years saga of dealing with IPL we received a last minute notice that they need a signing bonus of $300,000, which must all come from us. Of course Keymax know IPL's style so we understand they have refused to pay any money. On the positive side we have now a dialogue with Keymax.

However, Keymax and IPL need to understand that no-one can hide today in this world, not even in Afghanistan. If George Iwai thinks that bankruptcy can protect him he is miscalculating. IPL have clearly deviated money from our assigned hire to their own pockets and to their friends from whom Iwai-san and IPL have borrowed money (I hope not the tough guys!). We have not yet recognised any debts towards Keymax, not even the alleged dry-docking costs. To reach a realistic solution that the 3 parties will sign this week, EVERYONE has to compromise, not only Ocean Trade. With these thoughts in the mind of Kayahara-san and G.Iwai (please make sure they understand it will last for the next 10 years and may become very nasty), I will try to propose a constructive solution (always subject to agreement signed this week with Jan 2nd date):

It would be constructive to negotiate the 2 agreements on the basis of the full text since we are now having all cards on the table from all sides, so please revise the 2 agreements with the latest changes reflecting the full position of G. Iwai and Kayahara and send them by email to me today.

KEYMAX AGREEMENT
-----------------

1. Since we now have an increase of the dry-docking costs by $34,000 ( I hope the misrepresentations of IPL stop sometime) for a total cost of $534,000 we agree to pay 33.3% of this amount in 4 equal payments of $44,500 starting December 2001. The balance of $356,000 will be paid over 12 months thereafter of $29,666 each. o.k.

2. The $892,000 funds owed by IPL to Keymax, which we obviously paid through hire payments received for our vessels, but are now being asked to pay again because IPL took it out of our accounts (subject to the total agreement reached) to be settled for $500,000 (56%) paid in 50 equal payments starting in December 2001. With the Leo dry-docking coming up (which should be extended as long as possible and carried out the cheapest and fastest possible way) there is no room for acceleration this year or next.

3. We like to have the option to terminate management and back-to-back time charters. Obviously we have access to ECL and Tokyo Reefers and if we consider it is in our interests in a better market we can negotiate different deals with charters. Of course, in such case all outstandings to Keymax will be settled before management termination of last vessel. Also in our last proposed draft we insisted on a clause stating that Keymax will forfeit all still unpaid balances to them if they deviate any funds of our vessels for any reason.

4. Since we have a 25% fee for our marketing we believe it is fair to apply here and to have



management fee of $4,500. Also if we exercise the options we should have an additional 10% discount down to $4,050 if we have 6 or more vessels under management.

5.OPTIONS: O.Phoenix, O.Harmony as negotiated with Banks but at maximum at the given loan book values.

O.Daisy:Bank book value (please clarify if this includes only the Orix loan and prepare a schedule) plus $120,000 to Keymax;

O.Ellie:Bank Book value (prepare schedule) plus $350,000 to Keymax;

O.Sampaguita:Bank Book value (prepare schedule) plus $230,000 to Keymax; this option for 1 year while for other 4 vessels for 2 years.

IPL AGREEMENT

---

Very reluctantly we will agree to continue financing IPL for 6 more months with $25,000/month providing the transfer of the accounts and the signature of agreements takes place now. We don't want to know what other obligations IPL has, if IPL makes more money or not, if G. Iwai is chased by private lenders or not. Simply because we are sick and tired with IPL, we offer this last signature bonus. We would hope that Keymax who know the real picture better than us will assist him a little bit so that he signs over and Keymax collects from us $1,034,000 and if we exercise our options an additional $700,000 from the other vessels.

In exchange of such loan of $150,000 we want to receive an option for one year of the S. ODYSSEY at Yen675m paid 85% cash and balance with a 5 years secured loan and an option for the EXCEED 2 at $2.25m in cash plus $175k to Keymax and $75k to G.Iwai. Any of these two options can be given back for $100,000 at any time with 45 days notice.

What do you propose for security for our options? It would be a good idea to notify the banks since they will see that someone serious is working to pay them back. This may also open the door to negotiations to reduce their book values by say 5-10% to get rid of these loans from their books. We will do our best with the first chance to refinance all 10 vessels with European banks, leaving Keymax as the manager.

For this month we suggest the following:

Income received: $518,000(please provide breakdown)

Keymax monthly ($212,000)

Drydocking 1st/16 instalments ($44,500)

Keymax outstanding 1st/50 instalments ($10,000)

IPL 1st/6 instalments ($25,000)

Net $226,500

Reyna ($62,156) Received

Leo ($93,000) Please advise

Kowhai ($71,344) Please advise

Can you advise by return your acceptance and transfer details?

KOWHAI
--------

By fax I copied you with message received from reefers experts that Charterers know well. If the market is, say, US$0.475/cbft they need to pay 0.075 extra for a total of 0.55. We gave them discount of 10cents. At least they pay back 75% of that. Market will start climbing and they know it. We will be pleased to stay with them for many years at market level if we reach now a satisfactory agreement. Plus the vessel is now in excellent condition, as they told you.

When you are leaving for your holidays? Please explain to Kayahara and George Iwai that if they want peace for the next 10 years we have to work during the holidays this year (I am not joking; Economou just collected a claim from a bankrupt broker's insurance 10 years later and I just got security for a claim of mine 7 years ago). Of course we could sign this week and plan a productive trip to Tokyo in January to work on the options exercise and put all this behind us.

Best regards
Babis

IPL/KEYMAX/OCEANTRADE signed agreements

Subject: IPL/KEYMAX/OCEANTRADE signed agreements
Date: Mon, 31 Dec 2001 18:34:07 +0200
From: "mfsc" <mfsc@aias.gr>
To: <s_iwai@imk.co.jp>
CC: <t_fordyce@imk.co.jp>

Dear Mr. S.Iwai,

Thank you very much for the signed agreement by Kayahara-san which was well received today and your kind email.

I faxed back signed both agreements to your office.

I am looking forward working with you and Tony implemented these agreements.
I am waiting on Wednesday upon your opening the breakdown of hires received and payments to be made as per agreements.

Tony needs to prepare proper Addenda to the agreements with the information exchanged
upon his return.

On this point I would like to clarify that the management fee should be $6,000/mo/vessel
with a simple brokerage agreement drawn between Keymax and my personal company
POSEIDON SHIPHOLDINGS SA which will be collecting the $1,500/mo/vessel as agreed.
Same for any other business that we will conclude with Keymax as per the 25% of gross
fee agreed.Please prepare a simple brokerage agreement. Ocean Trade will remain a strictly shipowning company.

We are now working to finalize the buyout of Economou/Cardifff by end of January.
I will plan a trip to Tokyo immediately after finalization of the buyout pursuant my option.
I am very excited to work with the professional,dynamic team of Keymax and not only hope
but I am confident that 2002 would mark the beginning of a mutually productive and profitable relationship.

Best Regards, many thanks to all of you for your cooperation
and my best wishes for 2002 personally,your family and your business.

Babis Ziogas

1.:16 / KC (Max

86

02/01/10 16:10

Subject: Re: Implementation of the agreements.
Date: Mon, 07 Jan 2002 15:36:50 +0900
From: Saburo Iwai <s_iwai@imk.co.jp>
Organization: KEYMAX Maritime Co., Ltd.
To: mfsc <mfsc@aias.gr>
CC: t_fordyce@imk.co.jp

Dear Mr. Ziogas

Ref your email below, hereunder is my confirmation for some of your inquires:

1. We have effected the remittance of US$63,000 to Panaport Shipping and US$50,000 to Pillsburg Naviagtion from The Sanwa Bank today.
2. We can prepare a statement of 'Budget' vs 'Actual' on a quaterly basis. It would be easier for us if we can set 1st April as a starting day of fiscal year, though.
3. I will ask Tony to draft a simple Brokerage agreement with Pegasus for US$4,500 monthly payment to its designated bank account.

I will send my replies to the rest of your inquiries tomorrow after Tony comes back to the office.

Best regards.

S. Iwai

mfsc wrote:

> Dear Mr. S.Iwai/Tony
>
> Please notice the following:
>
> 1. It is convenient for us if you are sending every month on the 21st $79,000 to ING,
> on the 6th $50,000 to Allfirst for account of O.Reyna and the balance (in this month
> $63,000) on the 6th as well to Allfirst for account Kowhai. This way we can fund any
> cashflow deficits only on the loan of Kowhai.
> 2. How do you work with your customers reconciling budgeted vs actuals numbers?
> I suggest we do it quarterly. I can plan to visit you quarterly to discuss the accounts,
> review invoices and work with you on marketing as well.In February when days are less
> do you budget less opex? For unusual,unbudgeted expenses and insurance claims we need
> to be advised in advance.
> 3. I noticed your remarks on fees.Can you prepare a simple brokerage agreement between
> Keymax and Pegasus Shipholdings Corp. (this is the correct company not Poseidon, I mixed up
> the Gods of Olympus) to cover this and any future customers? Can you send me a list of
> services we can offer to Western customers with prices you need to see net to you such
> as manning, supervision of repairs,newbuildings,vessels inspections,riding gangs, spare parts?
> Of course we will discuss all these business in person but we can start preparatory
> work now.Are you preparing a site? This is critical for marketing to the West.
> 4. IPL undertook to notify ORIX and SMBC for the change in the control of the time-charter
> hires accounts. Can we have a copy of such notification?
> 5. Please send the $4,500 montly fee to Pegasus Shipholdings Corp. account No 0503344483
> CITIBANK NA ,Syngrou Avenue 54 ,Athens,Greece every month on the 21st with email confirmation
> so that I can follow it up.
>
> Best Regards
>
> Babis Ziogas

87

**Tony Fordyce**

**From:** "Tony Fordyce" <t_fordyce@imk.co.jp>
**To:** <mfs2000@mail.com>; <mfsc2000@hotmail.com>
**Sent:** Thursday, 10 January 2002 6:38 PM
**Subject:** Keymax

Babis/Tony

1. Saburo is working on Management Agreements. I will let you know as soon as they are ready; it may take a little time since we have many visitors at the start of the year, and he also has to visit other clients outside Tokyo.

2. I am working on the Commission Agreement. Should be able to let you have a draft tomorrow.

3. Ocean Leo will almost certainly have to dock some time early next month. PSC have identified a piping problem which will have to be rectificed during the docking and we cannot postpone this too much longer. It is not particularly expensive, but is required to be done soon. We will do the docking in Japan (especially since the yen is weak, the docking is quick and payment terms are good). Saburo conservatively estimates the docking cost at around US$180/220,000, the time at around 7 days, and payment will probably not have to start until the 4th quarter 2002.

4. Keymax will let you have a price list for their services in due course. At present they are comfortable offering manning and management, but can consider NB supervision, inspection etc on a 'case-by-case' basis. It will depend on available manpower, also if we can subcontract or obtain further capable staff. Spare parts also should not be a problem.

5. Hire payments will be made as required, and can be made as soon as incoming hires are received. There will be a deficit for January because of the Kowhai off-hire situation. I am discussing this with IPL and will let you know as soon as I have their response.

6. Keymax usually reconcile management budgets with actuals on an annual basis (see below), but can consider doing this quarterly if you prefer, or, for example, could give either party the option to call for reconciliation if the accounts are over or under budget by an agreed figure (say US$50,000).

7. Statements are prepared monthly for accounting purposes and you can receive copies accordingly. Keymax's financial year runs from April 1st, and they would prefer if their arrangement with you can work likewise. Accounts are made on an 'incurred basis' and adjustments for final figures or changes in currency exchange rates are made after settlement.

8. Receivable from Charterers: Keymax do not know what these are (if any, which I dount) and, to be honest, they don't want to know. They are not involved with the Charterers in any way and must rely on IPL for any information.

9. IPL notification to Orix etc of a change in control of the time-charter hire accounts - which ships are you referring to?

10. Finally, Keymax/MK Shipmanagement are preparing a Website (in English and Japanese), but it will be a couple of months before it is up and running.

Best regards

88

**Tony Fordyce**

From: "mfsc" <mfsc@aias.gr>
To: <t_fordyce@imk.co.jp>
Sent: Monday, 14 January 2002 8:29 AM
Attach: OT Keymax MasterFinal4 Agreement.doc; OT Keymax Final Agreement.doc
Subject: Keymax various matters

Tony/Babis

Following our telephone discussions and your last email I comment as follows:

1. Awaiting the final management Agreements.
2. Commission agreement is fine. So, please have it signed and send it over.
3. Noted upcoming O. Leo dry-docking. Please do the best to minimise cost and offhire. Keep us posted for time and place of dry-docking.
4. We can discuss all that during my visit in Tokyo in February.
5. Kowhai offhire is a big problem. Let us work a compromise among IPL/Keymax/OT.

6-7. Please make these changes in the management contracts.

8. Receivables are an important issue. Please notice that is an important part of the agreements to pass them over to OT. If Charterers do not pay we have something to ask back when market improves. We have not seen any other addenda to the c/ps after our visit to Tokyo last February.
9. I am referring to the banks that receive the Kowhai, O. Reyna and O. Leo hires.
10. Please keep us updated with any new marketing material.
11. I attach to this message the breakdown of the Keymax agreement to 2 parts. It does not change anything and Economou is aware of the change. I want to have the maximum flexibility to be able to exercise the options and not to be restricted to Ocean Trade which will be myself and Spiros Milonas.

Please attend to all documents ASAP since we need them to close the refinancing with Milonas, which should take place within January.

Best regards
Babis