UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
OCEAN TRADE S.A.; PANAPORT SHIPPING S.A.;     07 CIV 7762 (LAP)
PILLSBURG NAVIGATION S.A.; and, STERLING
NAVIGATION S.A.,

                     Plaintiffs,

    -against-

CHARALAMBOS ZIOGAS a/k/a BABIS ZIOGAS a/k/a
BABIS O. ZIOGAS, an individual; MARITIME
FINANCIAL SERVICE CORP. n/k/a MFS
SHIPMANAGEMENT CORP.; PEGASUS
SHIPHOLDINGS CORP.; EAST WEST MARITIME
INVESTMENT LTD.; DAISY SHIPPING LTD.; ELLIE
SHIPPING LTD.; HARMONY SHIPPING LTD.; OCEAN
PHOENIX SHIPPING LTD.; ASIAN FRIENDSHIP
SHIPPING LTD; ASIAN UNITY SHIPPING LTD.; and,
OLYMPIAN GODDESS SHIPPING LTD.,

                   Defendants.
------------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS COMPLAINT
## AND TO VACATE MARITIME ATTACHMENT

 

BROWN GAVALAS & FROMM LLP
Attorney for Defendants
355 Lexington Avenue, 4th Floor
New York, New York 10017
(212) 983-8500

Of Counsel:
PETER SKOUFALOS

## TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................................ii

TABLE OF AUTHORITIES ...................................................................iii

INTRODUCTION ....................................................................................1

PRELIMINARY STATEMENT REGARDING
PLAINTIFFS' BURDEN UNDER RULE E(4)(f) ....................................2

STATEMENT OF FACTS .......................................................................4

ARGUMENT............................................................................................6

POINT I – THE COMPLAINT FAILS TO ALLEGE A
MARITIME CAUSE OF ACTION AND, THEREFORE,
CANNOT SUPPORT A RULE B ATTACHMENT.................................6

A.  The Complaint fails to state a claim for breach of maritime contract...........7

B.  The Complaint fails to state a maritime tort claim.....................................11

POINT II – THE COMPLAINT FAILS TO PLEAD ALTER
EGO LIABILITY WITH SUFFICIENT PARTICULARITY...........................14

POINT III – PLAINTIFFS HAVE NOT ALLEGED
"FRAUD" WITH SUFFICIENT PARTICULARITY
UNDER FED. R. CIV. P. 9(b)...............................................................18

CONCLUSION........................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                    **PAGE**

*A. Coker & Co. v. Nat'l Shipping Agency Corp.*,
   1999 U.S. Dist. LEXIS 7442 (E.D. La. 1999) ............................................................18

*American Home Assurance Co. v. Merck & Co., Inc.*,
   329 F. Supp. 2d 436 (S.D.N.Y. 2004)..........................................................................6

*American Renaissance Lines, Inc. v. Saxis Steamship Co.*,
   502 F.2d 674 (2d Cir. 1974)........................................................................................16

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.*,
   460 F.3d 434 (2d Cir. 2006..........................................................................................6

*Aston Agro-Indus. AG v. Star Grain Ltd.*,
   2006 U.S. Dist. LEXIS 91636 (S.D.N.Y. Dec. 20, 2006) ............................................8

*Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*,
   698 F.2d 196 (2d Cir. 1992) ........................................................................................8

*Atwood Navigation, Inc. v. M/V RIZAL*,
   1989 U.S. Dist. LEXIS 1828 (E.D. Pa. 1989) ...........................................................15

*Bay Casino, LLC v. M/V ROYAL EMPRESS*,
   5 F. Supp. 2d 113 (E.D.N.Y. 1998) ............................................................................3

*Brocsonic Co., Ltd. v. M/V "MATHILDE MAERSK"*,
   120 F. Supp. 2d 372 (S.D.N.Y. 2000) .........................................................................8

*Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*,
   117 F.3d 655 (2d Cir. 1997).......................................................................................19

*Chill v. General Electric Co.*,
   101 F.3d 253 (2d Cir. 1996).......................................................................................18

*Compagnie Francaise De Navigation a Vapeur v. Bonnasse*,
   19 F.2d 777 (2d Cir. 1927) ........................................................................................11

*Dieulemar Compagnia Di Navigazione ApA v. Dabkomar Bulk Carriers Ltd.*,
   2005 U.S. Dist. LEXIS 40783 (S.D.N.Y. 2006).....................................................7, 18

*Dolco Investments, Ltd. v. Moonriver Dev., Ltd.*,
   2007 U.S. Dist. LEXIS 31101 (S.D.N.Y. 2007) ........................................................15

*Economou v. Bates,*
222 F. Supp. 988 (S.D.N.Y. 1963) .................................................. 10-11

*Eitzen Sealift A/S v. Cementos Andirios Dominicanos, S.A.,*
2005 U.S. Dist. LEXIS 19876 (S.D.N.Y. Sept. 9, 2005) ................................3

*Executive Jet Aviation, Inc. v. City of Cleveland,*
409 U.S. 249 (1972) .................................................................... 13-14

*Exxon Corp. v. Central Gulf Lines, Inc.,*
500 U.S. 603 (1991) ...................................................................... 7-8

*Fathom Expeditions, Inc. v. M/T GAVRION,*
402 F. Supp. 390 (M.D. Fla. 1975) ......................................................11

*Fednav, Ltd. v. Isoramar S.A.,*
925 F.2d 601 (2d Cir. 1991) ...............................................................7

*Feitshans v. Kahn,*
2007 U.S. Dist. LEXIS 26038 (S.D.N.Y. 2007) ..........................................16

*Fireman's Fund Am. Ins. Co. v. Boston Harbor Marina,*
285 F. Supp. 36 (D. Mass. 1968) .........................................................12

*Foremost Ins. Co. v. Richardson,*
457 U.S. 668 (1982) ......................................................................14

*Freeman v. Complex Computing Co., Inc.,*
119 F.3d 1044 (2d Cir. 1997) .............................................................16

*Greenwich Marine, Inc. v. S.S. Alexandra,*
339 F.2d 901 (2d Cir. 1965) ...............................................................3

*Int'l Marine Consultants, Inc. v. Capitan A. Karavias,*
1985 U.S. Dist. LEXIS 19272 (S.D.N.Y. 1985) ...................................... 15-16

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,*
513 U.S. 527 (1995) .................................................................. 11-13

*Kennedy v. H&M Landing, Inc.,*
529 F.2d 987 (9th Cir. 1976) ..............................................................5

*Kreatsoulas v. Freights of LEVANT PRIDE,*
838 F. Supp. 147 (S.D.N.Y. 1993) .........................................................6

*Kuehne & Nagel v. Geosource, Inc.*,
    874 F.2d 283 (5th Cir. 1989) ....................................................................12

*Linea Naviera de Cabotaje, C.A. v. Mar Caribe de Navigacion, C.A.*,
    169 F. Supp. 2d 1341 (M.D. Fl. 2001) ...............................................4, 18

*Luce v. Edelstein*,
    802 F.2d 49 (2d. Cir. 1986)..............................................................19

*Maritima Petroleo e Engenharia LTDA v. Ocean Rig 2 AS*,
    78 F. Supp. 162 (S.D.N.Y. 1999) ..................................................... 7, 12

*O'Brien v. Nat'l Prop. Analysts Partners*,
    936 F.2d 674 (2d Cir. 1991)..............................................................18

*P.R. Ports Auth. V. Barge Katy-B*,
    427 F.3d 93 (1st Cir. 2005)..............................................................15

*Ramirez v. Butler*,
    319 F. Supp. 2d 1034 (N.D. Cal. 2004) ...............................................14

*Rea v. The ECLIPSE*,
    135 U.S. 599 (1890) ........................................................................9

*The RED WING*,
    10 F.2d 389 (S.D. Cal. 1925)..............................................................11

*Salazar v. M/V ATLANTIC SUN*
    881 F.2d 73 (3d Cir. 1989) .............................................................4, 18

*Sea Transport Contractors, Ltd. v. Industries Chemiques Du Senegal*,
    411 F. Supp. 2d 386 (S.D.N.Y. 2006)....................................................3

*Seaplus Line Co. v. Bulkhandling Handymax AS*,
    409 F. Supp. 2d 316 (S.D.N.Y. 2005) ...................................................3

*Shipping Financial Services Corp. v. Drakos*,
    140 F.3d 129 (2d Cir. 1998)................................................................6

*Sisson v. Ruby*,
    497 U.S. 358 (1990)....................................................................6, 14

*Status Int'l S.A. v. M&D Maritime Ltd.*,
    994 F. Supp. 182 (S.D.N.Y. 1998) .......................................................7

*Stevedoring Servs of Am. V. Ancora Transp.*,
   59 F.3d 879 (9th Cir. 1995) ........................................................................15

*Stolt-Nielsen SA v. Celanese AG*,
   430 F.3d 567 (2d Cir. 2005) ..........................................................................7

*Texaco Expl. and Prod., Inc. v. AmClyde Eng. Prods Co., Inc.*,
   448 F.3d 760 (5th Cir. 2006) ......................................................................13

*Transatlantic Marine Claims Agency Inc. v. Ace Shipping Corp.*,
   109 F.3d 105 (2d Cir. 1997) ..........................................................................7

*Ullises Shipping Corp. v. FAL Shipping Co. Ltd.*,
   415 F. Supp. 2d 318 (S.D.N.Y. 2006) ..................................................3, 15

*United States v. Funds Held ex rel. Wetterer*,
   210 F.3d 96 (2d Cir. 2000)...........................................................................16

*United Transp. & Lighterage Co. v. N.Y. & Baltimore Transp. Line*,
   185 F. 386 (2d Cir. 1911)............................................................................10

*Vera, Inc. v. TUG DAKOTA*,
   769 F. Supp. 451 (E.D.N.Y. 1991) ............................................................10

*Ward v. Thompson*,
   63 U.S. 330 (1859)................................................................................... 9-10

*W.E. Hedger Transp. Corp. v. Ira S. Bushey & Sons*,
   155 F.2d 321 (2d Cir. 1946).........................................................................10

*Wexner v. First Manhattan Co.*,
   902 F.2d 169 (2d Cir. 1990)........................................................................19

*Winter Storm Shipping Ltd. v. TPI*,
   310 F.3d 263 (2d Cir. 2002) ..........................................................................6

## RULES, STATUTES, TREATISES

FED. R. CIV. P. 9..................................................................................... 18-19

Supplemental Rule B ............................................................................ *passim.*

Supplemental Rule E............................................................................. *passim.*

Local Admiralty Rule E ................................................................................ 2

23 U.S.C. § 1333 ...............................................................................................6

T.J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW (4th ed. 2004).........................8, 12

BLACK'S LAW DICTIONARY (8th ed. 2004) ..............................................................17

BROWN GAVALAS & FROMM LLP
Attorney for Defendants
355 Lexington Avenue, 4th Floor
New York, New York 10017
(212) 983-8500

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
OCEAN TRADE S.A.; PANAPORT SHIPPING              07 Civ. 7762 (LAP)
S.A.; PILLSBURG NAVIGATION S.A.; and,
STERLING NAVIGATION S.A.,

                    Plaintiffs,              **DEFENDANTS'
MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO
DISMISS COMPLAINT AND TO
VACATE MARITIME
ATTACHMENT**

     -against-

CHARALAMBOS ZIOGAS a/k/a BABIS
ZIOGAS a/k/a BABIS O. ZIOGAS, an individual;
MARITIME FINANCIAL SERVICE CORP. n/k/a
MFS SHIPMANAGEMENT CORP.; PEGASUS
SHIPHOLDINGS CORP.; EAST WEST
MARITIME INVESTMENT LTD.; DAISY
SHIPPING LTD.; ELLIE SHIPPING LTD.;
HARMONY SHIPPING LTD.; OCEAN
PHOENIX SHIPPING LTD.; ASIAN
FRIENDSHIP SHIPPING LTD; ASIAN UNITY
SHIPPING LTD.; and, OLYMPIAN GODDESS
SHIPPING LTD.,

                    Defendants.
-----------------------------------------------------------X

## INTRODUCTION

    This memorandum of law is submitted on behalf of all Defendants in support of their

motion to vacate maritime attachment and dismiss the Complaint, pursuant to Rule E(4)(f) of the

Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil

Procedure.

    Defendants seek an order:

(i)     vacating the Court's *ex parte* Order authorizing maritime attachment, dated September 5, 2007;

(ii)    directing the immediate release of all funds attached pursuant to said order;

(iii)   barring further attachments of Defendants' property by Plaintiffs; and

(iv)    dismissing the Complaint for lack of subject matter jurisdiction.

Defendants seek a hearing in accordance with Local Admiralty Rule E.1, which provides for an "adversary hearing" under Supplemental Rule E(4)(f) "within three Court days unless otherwise ordered."

In addition to this memorandum of law, Defendants submit the Declaration of Mr. Charalambos Ziogas (hereinafter "Ziogas Decl.") and the Affidavit of Peter Skoufalos, Esq. (hereinafter "Skoufalos Aff.") in support of Defendants' motion to vacate the attachment and to dismiss the Complaint.


## PRELIMINARY STATEMENT REGARDING
## PLAINTIFFS' BURDEN UNDER RULE E(4)(f)


Once property is attached under Rule B, "a plaintiff shall be required to show why the . . . attachment should not be vacated or other relief granted consistent with these rules." Supplemental Rule E(4)(f)[1]. Local Admiralty Rule E.1 provides that such a hearing shall be held within three (3) court days, unless otherwise ordered." At all times during the Rule E(4)(f) hearing, the burden remains on the plaintiff to show why the attachment should not be vacated.

Here, the relief sought by Defendants is warranted on multiple grounds. First, the Complaint fails to state a maritime claim – the most basic prerequisite for a Rule B attachment.

---

[1] Citations to "Supplemental Rule __" or "Supp. R. __" refer to the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

2

Second, the Complaint fails to plead sufficient facts to sustain a claim against the alleged alter egos. In fact, the Defendants' property has been restrained solely on Plaintiffs' generalized allegations of alter ego liability. Third, the Complaint fails to plead sufficient facts to sustain a claim of "fraud" under the Federal Rules of Civil Procedure.

Supplemental Rule E(4)(f) provides that "any person claiming an interest in [the attached property] shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the . . . attachment should not be vacated . . . ." At this post-attachment hearing, the defendant can attack the sufficiency of the "complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings." Supp. R. E(4)(f) Advisory Committee Note (1985 amendment).

Plaintiff, as the party obtaining the attachment, "has the burden of showing that the attachment should not be vacated" at the hearing. *Seaplus Line Co. Ltd. v. Bulkhandling Handymax AS*, 409 F. Supp. 2d 316, 318 (S.D.N.Y. 2005); *Bay Casino, LLC v. MN ROYAL EMPRESS*, 5 F. Supp. 2d 113, 125 (E.D.N.Y. 1998); *Ullises Shipping Corp. v. FAL Shipping Co. Ltd.*, 415 F. Supp. 2d 318 (S.D.N.Y. 2006).

Furthermore, a district court has discretion to review the relative equities of the parties in determining whether to uphold a maritime attachment. *Greenwich Marine, Inc. v. SS Alexandra*, 339 F.2d 901, 905 (2d Cir. 1965); *Eitzen Sealift A/S v. Cementos Andinos Dominicanos, SA*, 2005 U.S. Dist. LEXIS 19876 (S.D.N.Y. 2005). Under this inherent power, a district court may vacate an attachment upon a showing of any improper practice or a manifest want of equity on the part of the plaintiff. *Sea Transp. Contractors, Ltd. v. Indus. Chem. du Senegal*, 411 F. Supp. 2d 386, 391 (S.D.N.Y. 2006).

3

Rule E itself does not specify what form the post-attachment hearing must follow, and the nature and scope of the hearing depend upon the issues in controversy. *Salazar v. M/V ATLANTIC SUN,* 881 F.2d 73, 79 (3d Cir. 1989); *Linea Naviera de Cabotaje, C.A. v. Mar Caribe de Navigacion, C.A.,* 169 F. Supp. 2d 1341, 1357 (M.D. Fla. 2001) ("Rule E does not restrict review [at the post attachment hearing] to the adequacy of the allegations in the complaint, nor does it echo the standards of the initial attachment that conditions appear to exist; rather Rule E requires plaintiff . . . to show why the attachment should not be vacated").

Here, Plaintiffs' claims are facially non-maritime and thus do not support the maritime jurisdiction required for a Rule B attachment. Moreover, the restraint of Defendants' property is based on overly vague and conclusive allegations of alter ego liability which are insufficient to extend Rule B attachment over putative alter egos.

## STATEMENT OF FACTS

The Court need go no further than the facts alleged in the Complaint to conclude that admiralty subject matter jurisdiction is lacking in this case. The Complaint, despite its 140-paragraph girth, alleges nothing more than the breach of an agreement between two investors—Charalambos Ziogas ("Ziogas"), a defendant in the present case, and George Economou, another Greek national.[2] Mr. Ziogas's Declaration in support of this motion to dismiss, while disputing all the substantive allegations of the Complaint, agrees that, at its core, the Complaint relates to his agreement with Mr. Economou dating back to 1996, when the two individuals agreed to invest together in various shipping ventures. [Ziogas Decl. ¶ 6, 18]. As discussed below, the

---

[2] The Complaint names ten corporate Defendants and Mr. Ziogas, individually.

allegations of the Complaint, no matter how the Plaintiffs' attempt to re-state them, cannot support maritime jurisdiction.

For example, at paragraph 1, the Complaint alleges that it relates to a "joint venture contractual relationship and for the fiduciary duties which were owed by the Defendant CHARALAMBOS ZIOGAS under that relationship" to Mr. Economou and his controlled companies.[3]  Compl. ¶1.  The ensuing 139 paragraphs of the Complaint all relate back to the Ziogas – Economou investment agreement.

The Plaintiffs have also sought to attack assets of the corporate Defendant in other jurisdictions [Ziogas Decl. ¶17].  For example, in July 2007, Plaintiffs arrested the M/V ASIAN HOPE on grounds that the vessel owners were putative alter egos of Mr. Ziogas.  However, on November 13, 2007, the South African courts rejected the "associated ship" arrest and released the vessel from further detention.  Plaintiffs' request for leave to appeal this decision was later denied. [Ziogas Decl. 14, 15]

By its own terms, the Complaint does not allege contractual privity with any of the corporate Defendants, including the defendant Daisy Shipping Ltd. ("Daisy Shipping"), the only defendant whose property has been attached by the Plaintiffs thus far.[4]  [Ziogas Decl. ¶ 9].  Rather, the Complaint alleges merely that the corporate Defendants have "concomitant liability" as alleged "alter-egos of and instrumentalities of" Mr. Ziogas.  *See, e.g.,* Compl. ¶14.  Mr. Ziogas disputes these conclusory assertions and states that the corporate Defendants are separate and

---

[3] Paragraph 1 of the Complaint liberally use the term "maritime" to describe the Economou-Ziogas investment agreement.  However, conclusory allegations of subject matter jurisdiction are obviously not entitled to any deference. *See Kennedy v. H&M Landing, Inc.*, 529 F.2d 987, 988 (9th Cir. 1976) (noting that "[c]alling a contract a maritime contract does not make it one.").

[4] Plaintiffs seek to attach in excess of $107 million.  To date, Plaintiffs have restrained $215,718.75 in the form of an electronic fund transfer that was intended for Daisy Shipping. These funds remain in the custody of the garnishee bank.

distinct entities formed in various jurisdictions between 2002 and 2003. [Ziogas Decl. ¶ 3]. As in the case of the jurisdictional allegations, the alter ego allegations, standing alone, are insufficient to permit an attachment of the corporate Defendants' property.

**ARGUMENT**

**POINT I**

**THE COMPLAINT FAILS TO ALLEGE A
MARITIME CAUSE OF ACTION AND, THEREFORE,
CANNOT SUPPORT A RULE B ATTACHMENT**

28 U.S.C. §1333(1) gives federal courts subject matter jurisdiction over "[a]ny civil cases of admiralty or maritime jurisdiction." Maritime jurisdiction was created to further the "fundamental interest" of protecting maritime commerce, and "[a]ny court evaluating the existence of such jurisdiction must consider 'whether the subject matter of the dispute is so attenuated from the business of maritime commerce that it does not implicate the concerns underlying . . . maritime jurisdiction.'" *Am. Home Ass. Co. v. Merck & Co., Inc.*, 329 F. Supp. 2d 436, 440 (S.D.N.Y. 2004) (citing *Sisson v. Ruby*, 497 U.S. 358, 367 (1990)).

An attachment order under Supplemental Rule B is obtained *ex parte*, and requires a valid *prima facie* admiralty claim, a defendant absent from the district, and defendant's property within the district. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pte. Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006). Absent any of these elements, the attachment must fail. *Id.*; *Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263, 268 (2d Cir. 2002).

Furthermore, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Financial Services Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998); *see also Kreatsoulas v. Freights of*

6

*LEVANT PRIDE*, 838 F. Supp. 147, 149 (S.D.N.Y. 1993) (declining to draw "argumentative inferences favorable to the party asserting jurisdiction"). Indeed, because maritime claims can be easily alleged, courts have observed that the requirements of Rule B should not be satisfied by a plaintiff's merely stating a maritime claim upon which relief could be granted, finding that such conclusory pleading is too low a standard. *Status Int'l S.A. v. M&D Maritime Ltd.*, 994 F. Supp. 182, 186 (S.D.N.Y. 1998); *see Deiulemar Compagnia Di Navigazione ApA v. Dabkomar Bulk Carriers Ltd.*, 2005 U.S. Dist. LEXIS 40783, at * 11 (S.D.N.Y. 2006).

Claims giving rise to maritime jurisdiction can sound in either contract or tort, and the inquiries for whether a contract or tort is "maritime" are different. *See Fednav, Ltd. v. Isoramar, S.A.*, 925 F.2d 599, 601 (2d Cir. 1991); *Maritima Petroleo e Engenharia Ltda. v. Ocean Rig 2 AS,* 78 F. Supp. 2d 162, 166 (S.D.N.Y. 1999).

The Complaint fails to plead a maritime claim either for tort or breach of contract. Thus, the Rule B attachment must be vacated and the Complaint dismissed for lack of subject matter jurisdiction.

A.    **The Complaint fails to state a claim for breach of maritime contract:**

While no precise formula determines whether a contract is "maritime," courts look to the "subject matter of the . . . contract" and the "services performed under the contract." *Exxon Corp. v. Central Gulf Lines, Inc.,* 500 U.S. 603, 612 (1991). "The general rule is that admiralty jurisdiction arises only when the subject-matter of the contract is 'purely' or 'wholly maritime in nature.'" *Transatlantic Marine Claims Agency Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 109 (2d Cir. 1997).

Traditionally, a maritime contract "relates to a ship in its use as such, or to commerce or to navigation on navigable waters, or to transportation by sea or to maritime employment." *Stolt-Nielsen SA v. Celanese AG,* 430 F.3d 567, 572 (2d Cir. 2005). Admiralty jurisdiction, therefore, attaches to contract disputes only if the contract concerns or refers to maritime services or maritime transactions. *Brocsonic Co., Ltd. v. M/V "MATHILDE MAERSK",* 120 F. Supp. 2d 372 (S.D.N.Y. 2000); *see also Aston Agro-Indus. AG v. Star Grain Ltd.,* 2006 U.S. Dist. LEXIS 91636, at **7-9 (S.D.N.Y. Dec. 20, 2006) (noting that "contracts are not maritime contracts because their primary objective was not the transportation of goods by sea.").

In *Exxon Corp. v. Central Gulf Lines, Inc.,* the Supreme Court noted that "[t]he trend in modern admiralty case law . . . is to focus the jurisdictional inquiry upon whether the nature of the transaction was maritime." 500 U.S. at 612. The Court also reiterated that the "fundamental interest giving rise to maritime jurisdiction is the protection of maritime commerce." *Id.* at 608. It has thus been recognized that "a federal court must initially determine whether the subject matter of the dispute is so attenuated from the business of maritime commerce that it does not implicate the concerns underlying admiralty and maritime jurisdiction." *Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,* 968 F.2d 196, 200 (2d Cir. 1992). *See also* T.J. Schoenbaum, Admiralty and Maritime Law §3-10 at 131 (4th ed. 2004) ("subject matter . . . must be directly and intimately related to the operation of a vessel and navigation; it is not enough that the contract relate in some preliminary (shoreside) manner to maritime affairs.").

The Complaint in the present action does not meet this test. The agreements that are the subject of the Complaint are far too attenuated from maritime commerce to qualify as maritime contracts. The transactions alleged in the Complaint relate essentially to an accounting between two former business partners, interpretation of their investment agreement, and a dispute over

vessel purchase options. These transactions do not have the necessary connection to maritime commerce and lack a direct and substantial link to a vessel's operations, to navigation on navigable waters, or to a vessel's management afloat.

For example, Plaintiffs allege that the joint venture agreement required Mr. Ziogas to develop business opportunities in shipping in exchange for access to the offices of Cardiff Marine Inc., a corporate vehicle of Economou. Compl. ¶ 19. The Complaint also alleges that Mr. Ziogas "breached his fiduciary duties and obligations as an agent, manager and de facto director of OCEAN TRADE" by misleading Plaintiffs with respect to the existence of a signed "Keymax Master Agreement" (an agreement that would allegedly give Plaintiffs purchase options for six vessels) (*Id.* ¶ 100); and the alleged taking by Mr. Ziogas of various options to purchase vessels (*Id.* ¶ 105).

The Complaint characterizes the agreements in a variety of ways in an attempt to fit the "maritime" mold. At paragraph 1, the Complaint alleges a "joint venture contractual relationship" and "fiduciary duties" arising therefrom. At paragraph 21, Plaintiffs allege a "cooperative/joint venture agreement" in which Mr. Ziogas was to procure commercial opportunities in shipping for the joint venture. At paragraph 28, Plaintiffs allege that the parties agreed that Mr. Ziogas was to manage the day-to-day activities of the joint venture investment vehicle. Whichever way Plaintiffs characterize the agreements, they do not state a claim for breach of a maritime contract. The agreements do not relate to maritime commerce and do not implicate the policy considerations that underlie admiralty jurisdiction.

The United States Supreme Court has long recognized that disputes between investors— even if their investments concern ships—do not fall within federal maritime jurisdiction. *Ward v. Thompson*, 63 U.S. 330 (1859); *see also Rea v. The ECLIPSE*, 135 U.S. 599, 608 (1890)

9

(noting that, where the contract does not touch "rights and duties appertaining to commerce and navigation," courts of admiralty will not exercise jurisdiction in what is otherwise an accounting dispute).[5]

In *W.E. Hedger Transp. Corp. v. Ira S. Bushey & Sons*, the Second Circuit reiterated the long-standing rule that "[a] court of admiralty will not entertain a suit for an accounting between co-owners of a vessel, or between maritime adventurers, or between principal and agent, and so on." 155 F.2d 321, 323 (2d Cir. 1946), *cert. denied* 329 U.S. 735 (1946); *see also United Transp. & Lighterage Co. v. N.Y. & Baltimore Transp.* Line, 185 F. 386, 390 (2d Cir. 1911) (holding that a claim against a general manager for breach of fiduciary obligations "is not maritime in nature."). Similarly, in *Vera, Inc. v. TUG DAKOTA*, 769 F. Supp 451, 457 (E.D.N.Y. 1991), one partner sued another partner for breach of an oral joint venture agreement relating to the purchase and operation of a tug boat. In a holding that applies equally to the present Complaint, the court concluded that there is no maritime jurisdiction where "the principal relief sought by . . . a co-venturer . . . is an accounting." *Id.*

In *Economou v. Bates*, 222 F. Supp. 988 (S.D.N.Y. 1963), the joint venture contract at issue was deemed non-maritime and the action was dismissed. The contract involved an agreement to purchase and operate a vessel, with both parties contributing "certain monies" to the venture. The plaintiff in that case also alleged that it had been deprived of an opportunity to acquire a fifty per cent stake in the vessel. Judge Weinfeld found that the court lacked admiralty jurisdiction over the dispute:

---

[5] The contract in *Ward* is similar to the contract described in the present Complaint. For example, in *Ward*, one of the co-venturers contributed a vessel while the other co-venturer contributed his "care, skill and experience." 63 U.S. at 333. In the present Complaint, Plaintiffs allege that Economou put up the financing and other resources to maintain the joint venture, while Ziogas contributed to the day-to-day management of the venture. Compl. ¶¶19, 25, 28, 40.

> "Since the underlying transaction sued upon is one of joint venture or partnership and the principal relief sought is an accounting of profits arising out of the enterprise, it is not maritime and is beyond admiralty jurisdiction."

*Id.* at 991.

The joint venture agreement in *Economou* is very similar to the agreement at issue in the present Complaint. For example, at paragraph 81, *inter alia*, Plaintiffs claim that they and Economou were entitled to an ownership interest in certain vessels covered by an options agreement in the so-called Keymax Master Agreement. Even if such an agreement existed, it is essentially an agreement to acquire a vessel, and the mere reference to maritime activities does not render the agreement a maritime contract. *Id.* at 990; *see also Compagnie Francaise De Navigation a Vapeur v. Bonnasse,* 19 F.2d 777, 779 (2d Cir. 1927) (agreement to invest in a vessel does not give rise to a separately enforceable maritime obligation); *The RED WING*, 10 F.2d 389, 389 (S.D. Cal. 1925) (dispute over partnership terms not maritime even if main asset of partnership is a vessel); *Fathom Expeditions, Inc. v. M/T GAVRION*, 402 F. Supp. 390, 396 (M.D. Fla. 1975) (claim for a joint venture to own and operate a vessel, and for accounting related to such operation, is non-maritime).

**B.**     **The Complaint fails to state a maritime tort claim:**

The Complaint also fails to allege facts sufficient to establish a maritime tort.

To be deemed "maritime," a tort must satisfy both a location, or "situs", test, and a "connection" test. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995). The first prong requires that the tort occur on (or in some cases, near) navigable waters. The second prong requires a substantive connection between the acts giving rise to the tort and maritime commerce. A failure to meet either prong precludes maritime jurisdiction.

Under the situs test, the court must determine that either the tort occurred on navigable waters, or the injury suffered on land was caused by a vessel on navigable waters. *Id.* at 534. If the alleged "damage was caused by strictly land-based actors and actions," there is no basis for admiralty jurisdiction. *Fireman's Fund Am. Ins. Co. v. Boston Harbor Marina*, 285 F. Supp. 36, 39 (D. Mass. 1968), *aff'd in part, remanded in part on other grounds*, 406 F.2d 917, 919 (1st Cir. 1969).

The location test is not abated because the alleged tort is intentional. "Intentional torts, such as fraud, misrepresentation and fraudulent inducement to contract, 'must have an effect on navigable waters to be within admiralty jurisdiction.'" *Maritima Petroleo e Engenharia Ltda.*, 78 F. Supp. 2d at 171 (citing 1 SCHOENBAUM §3-5 at 79). In *Kuehne & Nagel v. Geosource, Inc.*, 874 F.2d 283 (5th Cir. 1989), plaintiff alleged fraudulent inducement and misrepresentation in connection with a contract for the shipment of cargo. The court of appeals reversed a finding of admiralty jurisdiction, holding that the plaintiff's claims failed to satisfy the situs requirements for maritime tort jurisdiction.

Judge Scheindlin also addressed the situs test in rejecting maritime jurisdiction in *Maritima Petroleo e Engenharia Ltda.*:

> "Because torts fall within maritime jurisdiction only if they occur or have effects on navigable water, and there is no evidence that any element of the alleged fraud was committed anywhere close to navigable water, or had any effect on water, plaintiff's tort claim is dismissed for lack of maritime jurisdiction."

78 F. Supp. 2d at 172.

Plaintiffs' first claim in the present action alleges that Mr. Ziogas withheld options to purchase vessels owned by Inter Pacific Lines Co. Ltd. by secretly keeping and exercising them on his own behalf, and later contracted to sell the vessels for a profit. Compl. ¶¶ 18, 24. Plaintiffs also allege that Mr. Ziogas purchased three additional vessels with the equity he

obtained by exercising these purchase options. *Id.* ¶ 24. Plaintiffs' other claim is based on the allegation that Mr. Ziogas defrauded them by diverting "commissions" into the account of a company allegedly controlled by Mr. Ziogas. Compl. ¶¶ 28-29.

These claims do not meet the location test for maritime tort jurisdiction. None of the actions alleged to have been taken by Mr. Ziogas—i.e., the alleged taking and exercise of vessel purchase options or alleged diversion of funds—occurred on navigable waters. Moreover, none of the injuries allegedly suffered by Plaintiffs was caused by a vessel on navigable waters. Failure to satisfy this critical location test alone warrants dismissal of Plaintiffs' tort claims.

The facts likewise do not show a substantive "connection" between the claimed wrong and maritime commerce. In order to satisfy this prong of the maritime tort jurisdictional test, the court must find (i) that the incident had a potentially disruptive impact on maritime commerce <u>and</u> (ii) that the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity. *See Jerome B. Grubart, Inc.*, 513 U.S. at 534.

The determination of whether an incident has a sufficient impact on maritime commerce is made by assessing the general features of the type of incident involved. *Texaco Expl. and Prod., Inc. v. AmClyde Engineered Prods Co., Inc.*, 448 F.3d 760, 770 (5th Cir. 2006). For example, in *Executive Jet Aviation, Inc. v. City of Cleveland*, the Supreme Court found that an airplane crashing into navigable waters had no connection to "traditional maritime activity involving navigation and commerce on navigable waters." 409 U.S. 249, 268 (1972).

In the present case, none of the allegedly fraudulent actions had a potentially disruptive impact on maritime commerce. The alleged taking and wrongful exercise of purchase options; contracting to sell vessels obtained by exercising purchase options; and the alleged diversion of

funds do not have a direct and disruptive impact on maritime commerce of the sort justifying maritime jurisdiction.

In the second part of the connection test, the court determines whether the general character of the activity giving rise to the incident is substantially related to traditional maritime activity. *Ramirez v. Butler*, 319 F. Supp. 2d 1034, 1038 (N.D. Cal. 2004); *see Executive Jet Aviation*, 409 U.S. at 268. *See also Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 673-74 (1982) (extending *Executive Jet* to a purely maritime claim to require that the tort have a significant relationship to traditional maritime activity). Again, the actual effect and particular facts are irrelevant. *Sisson*, 497 U.S. at 364.

The Complaint fails in this approach as well. Taking and exercising purchase options, contracting to sell vessels obtained by exercising purchase options, and diverting funds do not bear a substantial relationship to traditional maritime activity. Therefore, in addition to failing the location test, Plaintiffs do not meet the requirements for the connection test.

## POINT II

### THE COMPLAINT FAILS TO PLEAD ALTER EGO LIABILITY WITH SUFFICIENT PARTICULARITY

Plaintiffs' failure to plead a maritime contract or maritime tort require alone requires dismissal of the Complaint and vacatur of the attachment. The attachment should also be immediately vacated because it is based on insufficient pleadings of alter ego liability.

By its terms, Supplemental Rule E requires a higher standard of pleading for maritime claims than usual notice pleading. This higher standard requires particularized allegations of alter ego status. "This heightened pleading standard is not some pettifogging technicality meant to trap the unwary, but, rather a legal rule designed to counterbalance the unique and drastic

14

remedies that are available in *in rem* admiralty proceedings." *P.R. Ports Auth. v. Barge Katy-B*, 427 F.3d 93, 105 (1st Cir. 2005).

Therefore, the claims against the corporate Defendants cannot be sustained without a showing of specific facts demonstrating the type of domination and control sufficient to pierce the corporate veil. *See, generally*, *Dolco Investments, Ltd. v. Moonriver Dev., Ltd.*, 2007 U.S. Dist. LEXIS 31101, *28 (S.D.N.Y. 2007). In *Dolco*, the plaintiff failed "to meet this burden because it has not included any factual allegations" of dominion and control "[o]ther than the conclusory allegation of domination [and an allegation] that GML paid Moonriver's debts to Dolco 'from time to time' . . . [M]ore is required." *Id.*; *Stevedoring Servs of Am. v. Ancora Transp., N.V.*, 59 F.3d 879, 883 (9th Cir. 1995) (denying alter ego liability where the alter ego was not a party to the contract, the funds were exclusively owned by the alleged alter ego, and plaintiff "offered little more than bare assertions" of alter ego status); *Ullises Shipping Corp. v. FAL Shipping Co.*, 2006 U.S. Dist. LEXIS 2283, *19 (S.D.N.Y. 2006) ( denying alter ego status because plaintiff failed to "present any evidence that the [] defendants use one another as alter egos to perpetrate a fraud. . . . It is not sufficient that [] defendants share common ownership. Nor is it sufficient that [the individual defendant] does not observe some of the formalities of separate corporate existence."); *Atwood Navigation, Inc. v. M/V RIZAL*, 1989 U.S. Dist. LEXIS 1828, *4 (E.D. Pa. 1989) (vacating attachment under Supp. R. E(4)(f) where plaintiff – without providing factual support – "suggests that, in due time, it will show that the court should 'pierce the corporate veil' to reach defendant"); *Int'l Marine Consultants, Inc. v. Captain A. Karavias*, 1985 U.S. Dist. LEXIS 19272, *14 (S.D.N.Y. 1985) (refusing to pierce the corporate veil because "plaintiff's allegation that defendant used these corporations to insulate himself from liability is unsubstantiated.").

Further, the corporate Defendants are entitled to a presumption of corporate separateness. *American Renaissance Lines, Inc. v. Saxis Steamship Co.*, 502 F.2d 674, 677 (2d Cir. 1974); *see also Int'l Marine Consultants, Inc.*, 1985 U.S. Dist. LEXIS 19272 at \*14 ("[T]he law is well settled that a corporation is a separate entity from its shareholders even though the business may have been incorporated for the very purpose of escaping personal liability."); *Freeman v. Complex Computing Co., Inc.*, 119 F.3d 1044, 1052 (2d Cir. 1997) (presumption of corporate independence and limited shareholder liability encourages business development). Because the avoidance of personal liability is a legitimate purpose of the corporate form, plaintiffs seeking to pierce the corporate veil bear a heavy burden in asking a court to disregard that form. *Feitshans v. Kahn*, 2007 U.S. Dist. LEXIS 26038, \*12-13 (S.D.N.Y. 2007) (*citing United States v. Funds Held ex rel. Wetterer*, 210 F.3d 96, 106 (2d Cir. 2000)).

Under this case law, the Complaint in this matter is deficient because it is based on the same conclusory allegations and bare assertions that have resulted in dismissal in many other putative alter ego cases. At paragraphs 11 and 12, the Complaint alleges that "each of the corporate defendants lacks any true and distinct corporate existence" apart from Mr. Ziogas. [*Contra* Ziogas Decl. ¶ 3]. At paragraph 14, the Complaint takes the same broad brush approach in alleging that corporate Defendants are the "alter-egos of and instrumentalities of" Mr. Ziogas.

This pattern of generalized and conclusory allegations is repeated throughout the Complaint. For example, at paragraph 103, Plaintiffs allege only that Mr. Ziogas was "acting through his several corporate owning shell corporations." Elsewhere, the Complaint refers to the corporate Defendants as "corporate-shell defendants" (Compl. ¶121); as lacking "any true corporate existence" (Compl. ¶108); and as "corporate owning shell entities" (Compl. ¶109).

16

The heart of Plaintiffs' alter ego allegations against the corporate Defendants can be found in paragraph 14, the only part of the Complaint where Plaintiffs make any effort to meet particularized pleading requirements. However, here, too, the Complaint is deficient in that Plaintiffs have simply provided a general laundry list of alter ego factors without alleging specific facts applicable to each corporate Defendant.[6] Such allegations are insufficiently particular and the Complaint should be dismissed as to the corporate Defendants.

It bears repeating that Plaintiffs do not allege a direct claim for breach of contract against any of the corporate Defendants, nor do Plaintiffs claim that any of the corporate Defendants owed "fiduciary obligations" to the Plaintiffs or committed a fraud directly on the Plaintiffs. [See Ziogas Decl. ¶ 9]. Nevertheless, Plaintiffs have obtained a Rule B attachment order not only against Mr. Ziogas (with whom the Complaint does allege a contract), but also against the corporate Defendants. Plaintiffs are thus trying to impose the contractual obligations of Mr. Ziogas on all the corporate Defendants in order to use Rule B to restrain their property. Given the extraordinary sum claimed – in excess of $107 million – Plaintiffs' actions bear very close scrutiny.

In a Rule E(4)(f) hearing, a plaintiff asserting a claim challenging the presumption of corporate separateness must present enough evidence to carry its burden of persuading the court that there are reasonable grounds for piercing the corporate veil.[7] This requirement is even more

---

[6] By way of example, paragraph 14 alleges broadly that the corporate defendants were "controlled from the same offices." Comp. ¶14.

[7] Rule E uses the term "prima facie" case, but the courts have used the terms "reasonable grounds" and "probable cause" interchangeably when referring to the burden of proof a plaintiff must carry for an alter-ego allegation at a Rule E hearing. While none of the cases explicitly define what it means to have "reasonable grounds" or "probable cause", BLACK'S LAW DICTIONARY (8th ed. 2004) defines probable cause as "having more evidence for than against" and, at the very least, requires that there is a "substantial chance" that the proposition is true.

compelling where, as here, Plaintiffs are seeking to restrain property of the corporate Defendants before the merits of Plaintiffs' claim have even been considered. *Linea Naviera de Cabotaje, C.A.*, 169 F. Supp. 2d at 1359; *see also, Salazar*, 881 F.2d at 79-90 (requiring reasonable grounds); *A. Coker & Co. v. Nat'l Shipping Agency Corp.*, 1999 U.S. Dist. LEXIS 7442, at *2 (E.D. La. 1999) ("At a post-arrest hearing, the plaintiff has the burden to establish *probable cause* for the arrest."); *Dieulemar*, 2005 U.S. Dist. LEXIS 40783, at *8 (plaintiff "must present *enough evidence* to convince the court that there are *reasonable grounds* for piercing the corporate veil." (emphasis added)).

The Complaint here merely offers conclusory allegations that all the corporate Defendants are alter egos of Mr. Ziogas. No facts are outlined with the specificity required to sustain the drastic relief afforded by Rule B against a non-party to the underlying contract. The *ex parte* seizure of defendant Daisy Shipping's property (or, potentially, of any other corporate Defendant) cannot be upheld on this record.

**POINT III**

**PLAINTIFFS HAVE NOT ALLEGED "FRAUD" WITH
SUFFICIENT PARTICULARITY UNDER FED R. CIV. P. 9(b)**

As set forth above, Plaintiff's allegations of "fraud" cannot sustain maritime tort jurisdiction. Moreover, the "fraud" allegations of the Complaint are also deficient in that they fail to satisfy Fed. R. Civ. P 9(b).

Rule 9(b) is designed to protect a defendant by providing it with fair notice of plaintiff's claim and protecting the defendant from improvident charges of wrong-doing. *O'Brien v. Nat'l Prop. Analysts Partners,* 936 F.2d 674, 676 (2d Cir. 1991). "Therefore, the actual fraudulent statements, or conduct and the fraud alleged must be stated with particularity . . . ." *Chill v.*

18

*General Electric Co.*, 101 F.3d 263, 267 (2d Cir. 1996). Allegations of fraud cannot ordinarily be based upon "information and belief", except as to matters peculiarly within the opposing party's knowledge. *Luce v. Edelstein*, 802 F.2d 49, 54 n.1 (2d Cir. 1986). Further, even as to matters peculiarly within the knowledge of the opposing party, a plaintiff alleging "fraud" has a duty to provide a statement of the facts upon which that belief is founded. *See Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.,* 117 F.3d 655, 664 (2d Cir. 1997). Here, in contrast, Plaintiffs' entire Complaint is pled "upon information and belief."

Even fraud allegations permitted upon information and belief do not constitute a license to base fraud claims on speculation. The complaint must still adduce specific facts supporting a strong inference of fraud, or else it will not even satisfy a relaxed pleading standard. *Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (2d Cir. 1990).

Plaintiffs here do not allege a *single* fact on which their allegations of fraud are based other than the conclusory claim that Mr. Ziogas:

> was and still is in complete and total managerial control of the corporate defendants identified in the caption, the latter of which lack true corporate independence and over which ZIOGAS maintains dominion and control and are utilized as vehicles through which he conducts business without due regard to corporate formalities or corporate separateness.

Compl. ¶ 13. Plaintiffs' conclusory claims are insufficient, and must be dismissed under Rule 9(b). *See, e.g., Luce v. Edelstein,* 802 F.2d at 54-55.

## CONCLUSION

Defendants' motion to vacate the Court's Order authorizing maritime attachment should in all respects be granted and all property of Defendants that has been attached to date should be immediately released and the Complaint dismissed for lack of subject matter jurisdiction.

Dated: New York, New York
       February 25, 2008

                                    BROWN GAVALAS & FROMM LLP
                                    Attorneys for Defendants

                                    Peter Skoufalos (PS-0105)
                                    355 Lexington Avenue
                                    New York, NY 10017
                                    (212) 983-8500

Of Counsel:
PETER SKOUFALOS

20