BROWN GAVALAS & FROMM LLP
Attorney for Defendants
355 Lexington Avenue, 4th Floor
New York, New York 10017
(212) 983-8500

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

OCEAN TRADE S.A.; PANAPORT SHIPPING S.A.;     07 CIV 7762 (LAP)
PILLSBURG NAVIGATION S.A.; and, STERLING
NAVIGATION S.A.

                                         Plaintiffs,

            -against-

CHARALAMBOS ZIOGAS a/k/a BABIS ZIOGAS a/k/a
BABIS 0. ZIOGAS, an individual; MARITIME
FINANCIAL SERVICE CORP. n/k/a MFS
SHIPMANAGEMENT CORP.; PEGASUS
SHIPHOLDINGS CORP.; EAST WEST MARITIME
INVESTMENT LTD.; DAISY SHIPPING LTD.; ELLIE
SHIPPING LTD.; HARMONY SHIPPING LTD.;
OCEAN PHOENIX SHIPPING LTD.; ASIAN
FRIENDSHIP SHIPPING LTD; ASIAN UNITY
SHIPPING LTD.; and, OLYMPIAN GODDESS
SHIPPING LTD.;

                                         Defendants.

-------------------------------------------------------------------X

### DECLARATION OF CHARALAMBOS ZIOGAS IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT AND VACATE MARITIME ATTACHMENT

I, CHARALAMBOS ZIOGAS, pursuant to Section 1746 of Title 28 of

the United States Code, hereby declare and say the following under penalty of

perjury:

1. I am a Greek citizen, domiciled and residing in Greece.

1



2. I make this declaration on my own behalf as an individually named defendant, in support of my motion to vacate the *ex parte* order of attachment dated September 5, 2007, which authorized the plaintiffs to restrain property of the defendants up to an amount in excess of $107 million.

3. I also submit this declaration on behalf of all other defendants, and in my capacity as a corporate director of the corporate defendants Harmony Shipping, Ltd. ("Harmony"), Daisy Shipping, Ltd. ("Daisy"), Ocean Phoenix Shipping, Ltd. ("Ocean Phoenix"), Ellie Shipping, Ltd. ("Ellie"), MFS Ship Management Corp. ("MFS"), and East West Maritime Investments Ltd. ("EWMI"). All of these corporations are separate and distinct entities formed in various jurisdictions between 2002 and 2003.

4. In addition to vacating the order of attachment, all defendants seek dismissal of the present action on jurisdictional and other grounds.

5. The facts to which I attest in this declaration are, unless otherwise stated, within my own knowledge. To the extent that matters in this declaration are not within my personal knowledge, they are based on information supplied to me in documents I have reviewed.

### The Economou Agreement and Plaintiffs' Effort To Entangle The Corporate Defendants

6. Although plaintiffs' complaint consists largely of 140 self-serving paragraphs of bare contention, it can be readily seen that the thrust of the allegations relate to a former business partnership I had with George Economou ("Economou"), a Greek shipping investor whom I believe is a Greek citizen and maintains permanent residency in Greece (See, for example, the complaint at paras. 4, 15, 16, 21).

7. According to the complaint, this business partnership arose more than a decade ago in Greece in April 1996 (complaint para. 21).

8. Economou now claims breaches by me, individually, of a "joint venture contractual relationship" and of "fiduciary duties" arising therefrom and allegedly owed to Economou and the plaintiffs (complaint para. 1).

9. The complaint does not allege a "contractual relationship" with any corporate defendant.

10. Nevertheless, on the basis of broad and unsubstantiated (and flatly incorrect) allegations of alter ego liability, plaintiffs have launched a multi-jurisdictional effort within the past eight months to restrain, seize or attach vessels and other property owned by the corporate defendants. I will describe these other court actions in greater detail below.

2



11. In the present action, the plaintiffs have cast an even wider net in trying to attach property—primarily electronic wire transfers—of all defendants on the basis of vague and flimsy allegations that these corporate defendants are my "alter egos".

12. All these court actions reveal a common tactic: Plaintiffs are seeking to entangle multiple courts in multiple jurisdictions into what is essentially a local, decade-old dispute between two Greek former business partners. That business dispute, irrespective of its merits (the substance of which I emphatically dispute), neither involves the corporate defendants nor is maritime in nature in the sense that it involves the operation of vessels at sea.

### Attachment in this Court and Other Actions Filed by Plaintiffs

13. Even though plaintiffs have presented only the flimsiest allegations in going after the property of alleged alter egos, these allegations have had real consequences.

14. For example, plaintiffs arrested and caused the detention of the vessel ASIAN HOPE in South Africa in July, 2007. The M/V ASIAN HOPE is owned by Asian Hope Shipping Limited, which appeared in South Africa and challenged the vessel's arrest.

15. Although plaintiffs claimed in that action that the vessel should be arrested in essence because Asian Hope Shipping was my putative alter ego (or "associated ship" in the parlance of South African law), the South African court rejected this contention and released the vessel from the arrest on November 13, 2007. Plaintiffs' leave to appeal this decision was denied by the South African court just this month.

16. In addition, plaintiffs restrained an electronic fund transfer on September 11, 2007 in the amount of $215,718.75 as those funds were passing through an intermediary bank, ABN-AMRO Bank, in New York. These funds were sent by a non-party, Novel Commodities S.A., and were intended for the defendant Daisy. These funds had not reached Daisy at the time of the restraint by ABN-AMRO Bank, and remain with that bank.

17. Beside the two actions described above, plaintiffs have also commenced court actions in Gibraltar; Hong Kong; United Kingdom; Canada; and Australia. All of these actions, in addition to the action in this Honorable Court, are intended to restrain or seize property of the defendants, including vessels owned by several of the corporate defendants. Other actions filed by plaintiffs include:

a. An *in rem* action in the Supreme Court of Gibraltar filed by OTSA, on September 3, 2007 in which plaintiffs seek the arrest of the vessel M/V OCEAN DAISY.

b. An *in rem* action in the High Court of Singapore in which plaintiffs seek the arrest of the vessel M/V OCEAN PHOENIX—owned by the corporate defendant Ocean Phoenix.

c. An *in rem* action in the High Court of Justice, Queen's Bench Division, in the United Kingdom seeking the arrest by plaintiff OTSA of the vessels M/V OCEAN DAISY, M/V OCEAN ELLIE, and M/V OCEAN HARMONY—owned respectively by several of the corporate defendants.

d. An *in rem* action filed by plaintiff OTSA in the Federal Court in Vancouver, British Columbia seeking the arrest of the vessels M/V OCEAN DAISY, M/V OCEAN ELLIE, M/V OCEAN PHOENIX and M/V OCEAN HARMONY.

e. An *in rem* filed by plaintiff OTSA in the Court of First Instance of the High Court of Hong Kong on July 4, 2007 seeking the arrest of the M/V OCEAN DAISY, M/V OCEAN ELLIE, M?V OCEAN PHOENIX and M/V OCEAN HARMONY.

### The Agreements Alleged in the Complaint

18. A close reading of plaintiffs' complaint reveals that it is more-or-less a demand for an accounting between two investors and business partners. It does not relate to agreements concerned with the operations of a particular vessel or vessels. The authorities set out in the accompanying memorandum of law, I believe, support my belief that my agreement with Economou cannot properly be characterized as a maritime contract.

19. The complaint, in fact, describes Economou's and my agreement as a cooperative joint venture arrangement [complaint at para. 21]; an agreement to procure new business opportunities [complaint at para. 21]; and an agreement to manage the joint venture [complaint at para. 28]. This list of the various characterizations given by plaintiffs to Economou's and my business relationship is not exhaustive.

20. The complaint also references several other agreements that, according to plaintiffs, have bearing on the parties' dispute. These other agreements include the Keymax Master Agreement [Complaint at para. 55]; agreements to offer purchase options on vessels [Complaint at para.75]; the EWMI Master Agreement [Complaint at para. 97]; and memoranda of agreement for the purchase of vessels [Complaint at para. 103].

## Greek Court Proceedings

21. It is clear from plaintiffs' complaint that Greece has, by far, the closest connection to the parties' dispute. Virtually all the actions alleged in the complaint took place in Greece and both Mr. Economou and I are Greek citizens and residents.

22. Consequently, I commenced an action in Greece, in the Piraeus Multimember Court of First Instance against Mr. Economou, individually, and against Ocean Trade S.A., a plaintiff in the action before this Honorable Court. That action was filed on August 7, 2007, and seeks, in part, a declaration of rights between the parties in respect to some of the same contracts which are the subject of plaintiffs' complaint in the action before this Honorable Court.

23. In conclusion, plaintiffs' complaint is nothing more than a set of contrived allegations whose sole purpose is to invoke this Honorable Court's maritime jurisdiction so that plaintiffs can avail themselves of the drastic remedy of pre-judgment attachment. Moreover, this effort to convert what is nothing more that a dispute between investors into a "maritime" dispute is even more egregious when viewed in the context of plaintiffs' effort to bring in multiple additional parties on the basis of bare and unsupported alter ego allegations.

I declare under penalty of perjury of the laws of the United States of

America that the foregoing is true and correct.

Dated: Athens, Greece
        February 22, 2008

_____
Charalambos Ziogas

5