320-07PJG/GMV

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OCEAN TRADE S.A.; et al., <br><br>    Plaintiffs <br><br> - against - <br><br> CHARALAMBOS ZIOGAS a/k/a BABIS ZIOGAS a/k/a BABIS O. ZIOGAS, an individual, et al. <br><br>    Defendants. | 07 Civ. 7762 (LAP) <br><br> **DECLARATION OF** <br> **NICHOLAS JEREMY SHEPHERD** |

I, NICHOLAS JEREMY SHEPHERD declare as follows:

1. I am a partner at the law firm of Ince & Co. located at International House, 1 St. Katharine's Way, London E1, England. My practice spans a wide range of contentious and non-contentious work, mainly in the shipping and offshore industries, including charter party cases, casualty work, marine insurance, sale & purchase, shipbuilding, and ship arrest and attachment.

2. The facts set forth in this declaration are based upon my personal knowledge, as I serve as counsel for the Plaintiff Ocean Trade S.A. ("Ocean Trade") and Plaintiffs Panaport Shipping S.A., Pillsburg Navigation S.A., and Sterling Navigation S.A., the individual ship-owning subsidiaries of Ocean Trade (collectively "Ocean Trade Owners") (Ocean Trade and Ocean Trade Owners are collectively referred to as "Plaintiffs" herein) in ongoing and related proceedings filed on behalf of Plaintiffs arising out of the underlying dispute with Mr. Charalambos Ziogas (a/k/a Babis Ziogas) and the corporate defendants named herein (the "Corporate Defendants"). (For ease of reference, Mr. Ziogas and the Corporate Defendants are sometimes collectively referred to as "Defendants" herein).



3.  Ince & Co serves as the lead solicitors for Plaintiffs in connection with the underlying dispute and is responsible for co-ordinating the lawsuits that have been filed against Defendants in different jurisdictions, as discussed herein at paragraphs 14 to 23.

4.  I understand that Defendants have filed a motion to vacate the attachment of funds in the captioned New York lawsuit and to dismiss that suit. I have reviewed the submissions filed in respect of that application, in particular, the Declaration of Mr. Ziogas and the Memorandum of Law which Defendants have submitted in support of their application.

5.  In this respect, I am aware that Defendants are claiming that the attachment should be vacated and the complaint dismissed as to the Corporate Defendants on the basis that there are insufficient allegations to support their liability for the breaches of duty and frauds committed by Mr. Ziogas. Defendants essentially claim that there are insufficient allegations supporting an alter ego relationship between them and Mr. Ziogas.

6.  As outlined more fully below, our office has undertaken and commissioned investigations with respect to the relationship and corporate structure of the Corporate Defendants, and in contrast to Mr. Ziogas' suggestion in his Declaration, there is overwhelming evidence demonstrating the overlap between, and control by Mr. Ziogas of the Corporate Defendant, and demonstrates that Mr. Ziogas used the Corporate Defendants as the entities through which he perpetrated his breaches of duty and fraud which underlie the current dispute.

7.  The primary purpose of this declaration is to summarize the results of the investigations, but I also comment on the other lawsuits which have been filed in other jurisdictions. However, before addressing either of those two areas, I shall provide a very brief overview of the entities and vessels involved so that my comments are in context.

1



**Brief Factual Summary**

8. The facts and circumstances surrounding the underlying dispute are set forth in detail in the Verified Complaint and Declaration of George Economou, and as such, I will not repeat them.

9. As a point of reference, however, the named plaintiffs and defendants consist of the following as described in Mr. Economou's Declaration and the Verified Complaint:

   a. Plaintiffs "Ocean Trade" and the "Ocean Trade Owners": Plaintiff Ocean Trade S.A. is a Liberian corporation engaged in maritime business. The remaining three plaintiffs, the "Ocean Trade Owners" or "Owners", are wholly-owned Panamanian subsidiaries of Ocean Trade and are the single ship-owning entities who owned the Ocean Trade Vessels (described below).

   b. Defendant Mr. Ziogas is an individual who was self-described as the "Managing Director of Ocean Trade". He handled the day-to-day operation and management of Ocean Trade and the Ocean Trade Owners from 1996 until July 2002.

   c. Defendant MFS Shipmanagement Corp. is the current name of a ship management company established by Mr. Ziogas that conducts its business from offices located on the 6th floor of 24 Kanari St., in Athens, Greece. The company was previously called Maritime Financial Service Corp. ("MFS"). Until various dates in the second half of 2007 MFS Shipmanagement Corp. was listed as the manager of the Option and Equity Vessels (described below).

   Although not named as a defendant, Mr. Ziogas also had another company which he called Maritime Financial Holdings Services Corp. ("MFHSC"). MFHSC is referred to, for example, in Exhibit 2 to the Verified Complaint at pages 3-7.

   d. Defendant East West Maritime Investments Ltd. ("EWMI") is another company which is operated out of the same address at 24 Kanari Street in Athens. As explained below, MFS, the company formed by Mr. Ziogas, was the 100% shareholder in EWMI when the benefit of the purchase options was transferred to EWMI. (*See* Verified Complaint Ex. 2 at p. 132).

   e. Defendants Daisy Shipping Ltd. ("Daisy Shipping"), Ellie Shipping Ltd. ("Ellie Shipping"), Harmony Shipping Ltd. ("Harmony Shipping"), and Ocean Phoenix Shipping Ltd. ("Ocean Phoenix Shipping") were the single ship-owning entities who became the bareboat charterers and later the registered owners of the Option Vessels (described below) when the options were exercised by Mr. Ziogas. These



Defendants were wholly-owned subsidiaries of EWMI at the time the options were exercised. (*See* Verified Complaint Ex. 2 at pp. 132-186). Mr Ziogas and MFS's in-house lawyer Ms Ekaterina Christellou have sworn Affidavits in the South African ASIAN HOPE arrest proceedings (discussed below) stating that these Defendants remained wholly owned subsidiaries of EWMI until 9/10 July 2007. According to such evidence, which Plaintiffs' dispute, EWMI underwent a corporate restructuring on 9/10 July 2007 under which Mr Ziogas became the exclusive 100% beneficial owner of those four Corporate Defendants through his company Meco Trading Limited.

f. Defendants Asian Friendship Shipping, Asian Unity Shipping, and Olympian Goddess Shipping were the registered Owners of the Equity Vessels (described below). Again, Mr Ziogas and Ms Christellou have sworn Affidavits in the South African ASIAN HOPE arrest proceedings stating that these Defendants remained wholly owned subsidiaries of EWMI until 9/10 July 2007. Under the alleged corporate restructuring, it is said that Mr Evripidis Georgiadis, a cousin of Mr Ziogas, became the exclusive 100% beneficial owner of those three Corporate Defendants through his company Chamway Investment Limited.

10. I also note that the underlying dispute involves what I would describe as different categories of vessels. These categories consist of the following:

a. The "Ocean Trade Vessels": These vessels were owned by the Ocean Trade Owners and were the subject of the long-term charter parties with a Japanese charterer, IPL. As explained in the Declaration of Mr. Economou, Mr. Ziogas was the person charged with the management and day-to-day operation of these long-term charter parties on behalf of the owners of these vessels – the Plaintiff Ocean Trade Owners. The vessels concerned were called OCEAN REYNA, OCEAN LEO and KOWHAI. The charterers of these vessels failed to pay hire to the Owners, which led to the purchase options being granted of Ocean Trade as compensation for IPL's failure to pay hire.

b. The "Option Vessels": These are the six vessels which Ocean Trade was granted the option to purchase in the December 31, 2001 Keymax Master Agreement. The options were to serve as compensation for unpaid hire due to the Owners on the Ocean Trade Vessels. Unbeknownst to Ocean Trade, Mr. Ziogas had the agreement providing for the purchase options changed so that his company, MFHSC, was named as the beneficiary of the options in place of Ocean Trade. (See Verified Complaint Ex. 2 at p. 50).

There were six Option Vessels named in the Keymax Master Agreement, namely OCEAN PHOENIX, OCEAN HARMONY, OCEAN ELLIE, OCEAN DAISY, OCEAN SAMPAGUITA and SOUTHERN ODYSSEY. The purchase option in respect of OCEAN SAMPAGUITA had to be exercised within 12 months of

3



December 31, 2001 and was not so exercised. The purchase option in respect of SOUTHERN ODYSSEY was only a limited right to purchase the vessel from her owners (who were not IPL or Keymax) at the best available price. That option was never exercised.

Mr. Ziogas, through his companies MFS and EWMI, exercised the purchase options on the four remaining Option Vessels (namely OCEAN PHOENIX, OCEAN HARMONY, OCEAN ELLIE, and OCEAN DAISY) in June 2003. The exercise of the purchase options was effected through bareboat charter contracts between Keymax subsidiaries, as owners, and the four Corporate Defendants named at paragraph 9 (e) above, as charterers, that contained clauses obliging the charterers to purchase the vessels at the conclusion of the bareboat charters at the purchase prices set in 2001 in the Keymax Master Agreement. (*See* Verified Complaint Ex. 2 at p. 132).

As noted above, the bareboat charterers who became the registered owners of the four Option Vessels were wholly-owned subsidiaries of EWMI and include Defendants Daisy Shipping, Ellie Shipping, Harmony Shipping and Ocean Phoenix Shipping (*See* Verified Complaint Ex. 2 at p. 132).

c. The "Equity Vessels": These were the three vessels purchased by Mr. Ziogas after he purchased the Option Vessels. He was able to purchase these vessels because he used the equity he was able to obtain on the Option Vessels since he bought them in 2005 at the prices set in 2001.

The owners of the Equity Vessels are Defendants Asian Friendship Shipping Ltd., Asian Unity Shipping Ltd., and Olympian Goddess Shipping.

11. It is Plaintiffs' case that each of the Corporate Defendants MFS, EWMI, Daisy Shipping, Ellie Shipping, Harmony Shipping and Ocean Phoenix Shipping committed various acts as part of the fraudulent scheme to deprive Ocean Trade of the purchase options granted to them under the Keymax Master Agreement. Such acts included (i) MFS and EWMI being signatories to and performing their obligations under the EWMI Master Agreement dated June 24, 2003 and the various addenda thereto; and (ii) pursuant to that agreement the Defendants Daisy Shipping, Ellie Shipping, Harmony Shipping and Ocean Phoenix Shipping entered into bareboat charter contracts with Keymax subsidiaries that enabled them to exercise the purchase options, which they duly did by signing MOA contracts dated July 6, 2005 (OCEAN

4



PHOENIX), October 24, 2005 (OCEAN ELLIE and OCEAN DAISY), and October 25, 2005 (OCEAN HARMONY) for the purchase of the ships, and taking delivery of the vessels in/about August & November 2005 pursuant to those contracts.

12. At the time the companies performed the above acts Mr Ziogas was, as explained at paragraphs 28 to 31 below the controlling mind of the Corporate Defendants MFS, EWMI, Daisy Shipping, Ellie Shipping, Harmony Shipping and Ocean Phoenix Shipping. Thus under any legal regime that might be applicable to this case (whether it to be English law, Greek law or Japanese law), the companies are deemed to have the same knowledge as Mr Ziogas. Since the companies were the vehicles through which Mr Ziogas implemented and executed the fraudulent scheme, it follows that the companies are individually liable for the fraudulent and tortuous acts committed by them. In short, when Mr Ziogas made the arrangements for the exercise of the purchase options that he had stolen from Ocean Trade, he used companies that he controlled to exercise those purchase options, and therefore such companies are jointly liable with Mr Ziogas for the acts committed by them.

13. With this general background, I turn now to my comments about the other lawsuit and the results of our investigations.

**Other Lawsuits**

14. As explained above, I would like to explain the nature of the different court actions filed by Plaintiffs in other jurisdictions, which actions are listed in Mr. Ziogas' Declaration.

15. Specifically, at paragraphs 14-15 of his Declaration, Mr. Ziogas references an action which was filed in South Africa to arrest the M/V ASIAN HOPE, which was owned by Asian Hope Shipping Ltd. The type of arrest sought is known as a "associate" ship arrest and



was based on an allegation that the owning company of M/V ASIAN HOPE was owned or controlled by the same interests that owned and controlled Defendants Daisy Shipping, Ellie Shipping, Harmony Shipping and Ocean Phoenix Shipping when those companies committed the relevant tortuous acts.

16. During those proceedings, it was admitted that until 9/10 July 2007 all the shares in all nine shipowning companies in the MFS fleet (including Defendants Daisy Shipping, Ellie Shipping, Harmony Shipping and Ocean Phoenix Shipping) were owned by EWMI. Thus there was common control and ownership up to that date. However, in Affidavit evidence from Mr Ziogas and Ms Christellou that was not submitted until October 1, 2007, some 72 days after the ASIAN HOPE was arrested on July 22, 2007, it was claimed that EWMI had engaged in a corporate restructuring on 9/10 July 2007 after receiving notice of Ocean Trade's claim. It was said that the effect of the alleged corporate restructuring was that a company owned by Ms Christellou was the sole beneficial owner of all the shares of Asian Hope Shipping Ltd from 9/10 July 2007. I will not detail all of the submissions and the arguments made by both sides in response to that evidence, except to note that the defendants submitted what they alleged were minutes from the meeting on July, 9 2007 of the EWMI shareholders and that those alleged minutes recorded that Mr. Ziogas "shall retain ownership of the sale proceeds of the four "option" vessels" and that "Meco Trading Limited shall be effectively the registered shareholder of the said companies/vessels". As explained above, Mr Ziogas was stated to be the sole beneficial owner of Meco Trading.

17. As Mr. Ziogas' states in his declaration, the South African Court released the ASIAN HOPE from arrest, and Ocean Trade's request for leave to appeal that decision was denied by Mr Justice Kruger. Ocean Trade have applied for permission to appeal to the Supreme

6



Court of Appeal. It is part of Ocean Trade's appeal that the Judge misdirected himself, particularly having regard to the fact that he decided that Ocean Trade had successfully discharged the onus of establishing a prima facie case that Mr Ziogas and his companies had committed fraud.

18. Significantly, the South African Court's ruling was to the effect that the Judge was not satisfied on the balance of probabilities that Ocean Trade had discharged the onus of proving association. In essence, the Judge found that the case for "associate" ship arrest was not proven to the required standard under South African law. The judgment does not establish res judicata on the issue of whether EWMI and/or Mr. Ziogas were in truth the owner/controller of the ASIAN HOPE when the arrest order was made on July 20, 2007.

19. At paragraph 17, Mr. Ziogas states that Ocean Trade have instituted *in rem* actions against the vessels involved in this dispute in Gibraltar, Singapore, the United Kingdom, Canada, and Hong Kong. Ocean Trade have indeed instituted *in rem* actions against M/V OCEAN DAISY and M/V OCEAN HARMONY in those jurisdictions and three other jurisdictions (and also against the M/V OCEAN ELLIE in Singapore, the United Kingdom, and Hong Kong). Contrary to the picture which Mr. Ziogas attempts to paint, none of the vessels has been arrested in those proceedings because they have not entered the relevant jurisdictions since the in rem writs were issued.

20. The in rem proceedings were issued in various common law jurisdictions that follow English law and allow parties to commence actions in rem against a ship. The reason for doing so is that the issuance of the action in rem creates a statutory right of arrest that survives a subsequent transfer of ownership. However, the in rem proceedings cannot be pursued unless and until the res (*i.e.* the ship) enters the relevant jurisdiction.



21. Finally, although not referred to in Mr. Ziogas' Declaration, I should mention that Ocean Trade recently arrested the M/V TAIGA, which was formerly the M/V OCEAN DAISY, one of the "Option Vessels" involved in the current action, at Ravenna, Italy. The arrest of the TAIGA was sought on the basis that Mr. Ziogas remains in truth the owner of that vessel, and/or that a transfer of ownership from Daisy Shipping to Taiga Shipping SA effected on September 28, 2007 during a laden voyage from China to Cameroon was a sham transaction that could be revoked or set aside under Greek law and English law.

22. Taiga Shipping applied to have the arrested order lifted and filed an application stating that one Mrs Souzana Manaka, a Greek lawyer practicing at a law firm in Piraeus, was the owner of all the shares of Taiga Shipping. I know Mrs Souzana Manaka and spoke with her. During that conversation she told me that she held the shares as proxy for another person. The MOA sale contract from the Defendant Daisy Shipping to Taiga Shipping produced to the Italian Court was undated and had significant amendments from the usual terms for the sale & purchase of a secondhand ship.

23. Unfortunately for Plaintiffs, the Italian Court ruled that in the context of the type of proceeding involved, namely a summary investigation where formal examination of the defendants are not contemplated, there was insufficient evidence at that preliminary stage to maintain the arrest of the TAIGA. The Italian Court also made certain findings about the remedies available under English law that are simply wrong. Again, the ruling of the Italian Court was not res judicata on the issues and essentially was a ruling that in the context of those summary proceedings the case was not proven to the required standard.

NJS

**Investigations Conducted or Commissioned by Our Office.**

24. As explained above, Ince & Co has conducted and commissioned investigations into the relationships of Mr. Ziogas and the corporate defendants.

25. We learned that there is very little public information available about the Corporate Defendants. They are all bearer share companies incorporated in the Marshall Islands where there is no public registry and therefore no details of shareholders and directors.

26. We were nonetheless able to discover the following information:

*A. Information obtained about MFS Shipmanagement.*

27. As explained above and in the Declaration of Mr. Economou, Mr. Ziogas established his own office under the name of Maritime Financial Services Corp. ("MFS") which was later changed to MFS Shipmanagement, the named defendant.

28. I note that according to the Master Agreement submitted at pages 132-145 of Exhibit 2, Mr. Ziogas was the controlling shareholder of MFS in June 2003, and he was to remain the controlling shareholder throughout the duration of that agreement.

29. We also learned from company searches conducted at the Greek Ministry of Mercantile Marine the following:

   a. MFS was incorporated under the laws of the Marshal Islands in 2003 under the name of "Maritime Financial Services Corporation" and obtained permission in 2005 from the Greek Authorities to open and operate an office in Greece. (*See* also Ex. 2 at p. 199).

   b. The address of MFS in Greece was 24 Kanari Street, Athens.

   c. According to Minutes dated 20 June 2004 signed by Mr. Ziogas on behalf of MFS, MFS' directors were Mr. Ziogas and Efthimia Ziogas (his sister).

   d. On 19 January 2005, MFS was renamed "MFS Shipmanagement Corp.", which is the current name.

   e. MFS Shipmanagement Corp. has the same address at 24 Kanari St. in Athens.

NJS

  f. According to Minutes dated 4 September 2006, Efthimia Ziogas resigned as director of MFS Shipmanagement and so Mr. Ziogas became the sole director of the company.

30. Mr. Ziogas is also listed as the Managing Director of Defendant MFS Shipmanagement as per the Greek-Cypriot Maritime Guide entry for 2008.

**B. *Information obtained about EWMI and the single-ship owning defendants.***

31. As explained above, Defendants Daisy Shipping, Ellie Shipping, Harmony Shipping and Ocean Phoenix Shipping were the single-shipowning entities through which Mr. Ziogas exercised the purchase options on the Option Vessels. According to a Master Agreement signed by Mr. Ziogas, these defendants were wholly-owned subsidiaries of Defendant EWMI who was in turn a wholly-owned subsidiary of MFS, and Mr Ziogas was the controlling shareholder of MFS. (Verified Complaint Ex. 2 at pp. 132 – 186).

32. We also learned certain facts from a search of the mortgage records which are publicly available at the Marshall Islands Ship Registry.

33. As the mortgage records are quite voluminous, copies of them were not submitted with the Verified Complaint and are not attached to this declaration. However, the facts revealed by the mortgage records were summarized in a chart submitted as part of Exhibit 2 to the Verified Complaint at pp. 200-211, which I adopt herein.

34. The mortgage records revealed cross-collateralization and cross-pledging between and among the Corporate Defendants, including the following:

35. The option to purchase the M/V OCEAN DAISY was exercised through Defendant Daisy Shipping. The First Preferred Ship Mortgage documents in favour of ABN

10



Amro Bank relating to this vessel were signed by Mr. Ziogas for and on behalf of Daisy Shipping.

36. The option to purchase the M/V OCEAN PHOENIX was exercised through Defendant Ocean Phoenix Shipping. The First Preferred Ship Mortgage documents in favour of ABN Amro Bank relating to this vessel was signed by Mr. Ziogas for and on behalf of Ocean Phoenix Shipping.

37. A loan agreement dated 22 August 2005 by which Defendants Daisy Shipping and Ocean Phoenix Shipping obtained financing from ABN Amro Bank of up to US $16.5 million was signed by Mr. Ziogas for and on behalf of Daisy Shipping and also for and on behalf of Ocean Phoenix Shipping.

38. The corporate guarantor of the $16.5 million loan obtained by Daisy Shipping and Ocean Phoenix Shipping from ABN Amro Bank was Defendant EWMI.

39. The loan agreement provided that notices to the Borrowers (*i.e.* Daisy Shipping and Ocean Phoenix Shipping) and the Guarantors (*i.e.* EWMI) were to be sent to Mr. Ziogas.

40. A later loan agreement dated 29 January 2007 by which Defendant Ocean Phoenix Shipping obtained financing from Bremer Landesbank of up to US $15 million was signed by Mr. Ziogas for and on behalf of Ocean Phoenix Shipping.

41. The corporate guarantor of the $15 million loan obtained by Ocean Phoenix Shipping from Bremer Landesbank was Defendant EWMI.

42. The loan agreement provided that notices to the Borrower (*i.e.* Ocean Phoenix Shipping) and the Guarantor (*i.e.* EWMI) were to be sent to Mr. Ziogas at MFS.

43. The option to purchase the M/V OCEAN ELLIE was exercised through Defendant Ellie Shipping. The First Preferred Ship Mortgage documents in favour of HSH

Nordbank relating to the OCEAN ELLIE were signed by Ms. Christellou, MFS's in-house lawyer. As noted at paragraphs 48 to 52 below, the underlying loan agreement was signed by Mr Ziogas, the corporate guarantor was the Defendant EWMI and the personal guarantor of the loan was Mr Ziogas.

44. The option to purchase the M/V OCEAN HARMONY was exercised through Defendant Harmony Shipping. It is not known to Plaintiffs who signed the First Preferred Ship Mortgage documents in favour of HSH Nordbank relating to the OCEAN HARMONY. As noted at paragraphs 48 to 52 below, the underlying loan agreement was signed by Mr Ziogas, the corporate guarantor was the Defendant EWMI and the personal guarantor of the loan was Mr Ziogas.

45. The ASIAN FRIENDSHIP, one of the Equity Vessels, was purchased through Defendant Asian Friendship Shipping. The First Preferred Mortgage documents relating to the ASIAN FRIENSHIP were signed by Mr. Ziogas. As noted at paragraphs 48 to 52 below, the underlying loan agreement was signed by Mr Ziogas, the corporate guarantor was the Defendant EWMI and the personal guarantor of the loan was Mr Ziogas.

46. The OLYMPIAN GODDESS, another one of the Equity Vessels, was purchased through Defendant Olympian Goddess Shipping. The First Preferred Mortgage documents relating to the OLYMPIAN GODDESS were signed by Ms. Christellou. As noted at paragraphs 48 to 52 below, the underlying loan agreement was signed by Mr Ziogas, the corporate guarantor was the Defendant EWMI and the personal guarantor of the loan was Mr Ziogas.

47. The SIDER UNITY, another one of the Equity Vessels, was purchased through Defendant Asian Unity Shipping. The First Preferred Mortgage documents relating to the SIDER UNITY were signed by Ms. Christellou. As noted at paragraphs 48 to 52 below, the underlying

12



loan agreement was signed by Mr Ziogas, the corporate guarantor was the Defendant EWMI and the personal guarantor of the loan was Mr Ziogas.

48. Very significantly, Defendants Ellie Shipping, Harmony Shipping, Olympian Goddess Shipping, Asian Friendship Shipping, and Asian Unity Shipping were able to obtain financing, collectively, of up to US $67.73 million through a loan agreement with HSH Nordbank.

49. Mr. Ziogas signed the loan agreement for and on behalf of each of Defendants Ellie Shipping, Harmony Shipping, Olympian Goddess Shipping, Asian Friendship Shipping, and Asian Unity Shipping Ltd. In particular, on the "Execution Pages" of the loan agreement, Mr. Ziogas signed 5 times on behalf of the "Borrowers" being the five defendants.

50. EWMI is the "Guarantor" of the US $67.73 million loan.

51. All notices to the Borrowers (*i.e.* the corporate defendants) were to be sent to MFS Shipmanagement, Mr. Ziogas' company located at 24 Kanari St. in Athens.

52. In addition, the personal guarantor of the $67.73 million loan obtained by Ellie Shipping, Harmony Shipping, Olympian Goddess Shipping, Asian Friendship Shipping and Asian Unity Shipping from HSH Nordbank was Mr Ziogas.

53. An International Swaps and Derivatives Association Inc. ("ISDA") Master Agreement (a form of financing) was also executed between two banks on the one hand and Defendants Ellie Shipping Harmony Shipping, and Olympian Goddess Shipping, on the other. The ISDA Agreement was signed by Mr. Ziogas on behalf of all three defendants.

54. Notices under this ISDA Agreement were to be sent to Defendants Ellie Shipping Harmony Shipping, and Olympian Goddess Shipping to MFS, Mr. Ziogas' company located at 24 Kanari St. in Athens.



55. A different ISDA Master Agreement was also executed in November 2006 between Defendants Ellie Shipping, Harmony Shipping, Olympian Goddess Shipping, Asian Friendship Shipping, and Asian Unity Shipping on the one hand, and HSH Nordbank. This document was signed by Ekaterina Christellou for and on behalf of all of the borrowers. The schedule to this Master Agreement states that notices and communications to the "Borrowers" were to be sent to Mr. Ziogas' MFS Shipmanagement Corp., located at 24 Kanari St. in Athens.

56. To sum up, the information which we were able to obtain shows that Mr. Ziogas used the Corporate Defendants to effectuate the fraud and breaches which underlie Plaintiffs' claim and that there is sufficient overlap and intertwined financial dealings between and among the Corporate Defendants to show their alter ego relationship. Further efforts to investigate their relationships, however, are hampered by the fact that they are Marshall Islands corporations where there is no requirement for corporate records to be filed at a public registry and the fact that other relevant information would lie exclusively in the hands of the Defendants. Hence it is respectfully submitted that the Plaintiffs should be given leave to take discovery of the Defendants to further reveal the overlap and control exercised by Mr Ziogas of the Corporate Defendants.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Dated: March 31, 2008
London, England.

NICHOLAS JEREMY SHEPHERD

14